IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| WYNDHAM VACATION RESORTS, INC., ) ) ) Plaintiff, ) ) v. ) ) TOA, LLC d/b/a THE OWNERS' ) ADVOCATE, ) DAVID HUMPHREY ) a/k/a SCOTT DAVIDSON, ) KURT W. BARTLETT, ) and KAY METKO, ) ) Defendants. ) | No. _____ Judge_____ |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

This is an action by Plaintiff, Wyndham Vacation Resorts, Inc. ("Wyndham"), resulting from the conduct of the Defendants in stealing the trade secrets of Wyndham, exploiting said trade secrets to the detriment of Wyndham, engaging in the unauthorized practice of law in a ongoing effort to defame Wyndham and intentionally interfering with Wyndham's contractual relationships and business expectancies. Wyndham submits this Verified Complaint for Injunctive Relief and Damages against Defendants TOA, LLC d/b/a The Owners' Advocate ("TOA"), David Humphrey ("Humphrey"), Scott Davidson ("Davidson"), Kurt W. Bartlett ("Bartlett") and Kay (Kate) Metko ("Metko" and collectively referred to as the "Defendants") and in support thereof states as follows:

### PARTIES

1. Wyndham is a Delaware corporation whose principal place of business is 8427 South Park Circle, Orlando, Florida 32819. Wyndham markets and sells vacation ownership

1

N DAL1 707942 v3
2903712-000009 9/25/2009
Case 3:09-cv-00899   Document 1   Filed 09/28/09   Page 1 of 20 PageID #: 1

interests, provides property management services to property owners' associations, and develops and acquires vacation ownership resorts.

2. Upon information and belief, TOA d/b/a The Owners' Advocate, is a California limited liability company with its principal place of business at 7984 Coley Davis Road, Suite 101, Nashville, Tennessee 37221. TOA may be served with process through Humphrey, who upon information and belief is the sole member of TOA, at his residence at 5318 Tidwell Hollow Road, Nashville, Tennessee 37218.

3. Upon information and belief, Humphrey is a citizen and resident of Davidson County, Tennessee who resides at 5318 Tidwell Hollow Road, Nashville, Tennessee 37218.

4. Upon information and belief, Davidson is an alias of Humphrey. Davidson may be served with process through Humphrey, at his residence at 5318 Tidwell Hollow Road, Nashville, Tennessee 37218.

5. Upon information and belief, Bartlett is a citizen and resident of Davidson County. Upon information and belief, Bartlett holds himself out as the Legal Affairs Manager for TOA and may be served through his employer as 7984 Coley Davis Road, Suite 101, Nashville, Tennessee 37221. Bartlett is an agent/employee of TOA and Humphrey and to the extent that Bartlett has engaged in any wrongdoing, TOA and Humphrey are liable under the doctrine of *respondeat superior*.

6. Upon information and belief, Metko is a citizen and resident of Williamson County, Tennessee who resides at 879 Dortch Lane, Nolensville, Tennessee 37135. At all times relevant to this litigation, Metko was an agent/employee of TOA and Humphrey and to the extent that Metko has engaged in any wrongdoing, TOA and Humphrey are liable under the doctrine of *respondeat superior*.

## JURISDICTION AND VENUE

7. Complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00, giving this Court jurisdiction pursuant to 28 U.S.C. §1332.

8. Venue of this action in this Court is proper under 28 U.S.C. § 1391(a).

## FACTS

### A. Wyndham Vacation Resorts, Inc.

9. Wyndham Vacation Resorts, Inc. develops, finances, manages and sells timeshare properties; it is the world's largest vacation timeshare company, as measured by the number of vacation ownership resorts, individual vacation ownership units and owners of vacation ownership interests. Wyndham and its affiliated resort companies currently have approximately 515,000 owner families around the world.

10. A large percentage of Wyndham's business is repeat business from timeshare owners, including existing owners' purchase of upgrades and owner referrals. Therefore, customer relations and goodwill are vital to Wyndham's success.

### B. Wyndham's Trade Secrets and Confidential Information

11. In connection with its business, Wyndham has expended substantial time, labor, and money to research and develop skills, methods, techniques, plans, programs, processes, data, forms, and policies which, singularly and collectively, constitute trade secrets and confidential information of Wyndham. These trade secrets and confidential information include, but are not limited to, owner lists, owner contacts, and other owner information, sales and marketing methods, strategies, practices and information, financial information, cost and pricing information, and confidential employee information. Wyndham requires that all trade secrets

3

and confidential materials and copies thereof be returned upon the termination of employment of any of its employees.

12. In particular, Wyndham spends a significant amount of time and resources developing and maintaining its owner base, and it emphasizes owner relations and customer service.

13. All of these trade secrets and confidential information are used in Wyndham's operations and provide it with advantages, or the opportunity to gain advantages, over those who do not know of or use such trade secrets and confidential information.

14. These trade secrets and confidential information are neither available to nor known by the general public or competitors. Wyndham has taken substantial measures and exercised much due diligence to prevent its trade secrets and confidential information from being available to persons other than those selected by Wyndham and obligated, either under contract or by virtue of their fiduciary duty to Wyndham or an affiliate, to have access to this information on a confidential basis in order to further its business.

C. **Humphrey's Employment with Wyndham**

15. Humphrey was employed at Wyndham's Nashville resort as a timeshare salesperson from May 2007 until February 14, 2008. In his capacity as a salesperson, Humphrey had access to and gained knowledge of Wyndham's confidential, proprietary information related to its business.

16. Wyndham trained Humphrey extensively regarding its Sales Compliance Policies. Wyndham developed the Sales Compliance Policies to provide sales representatives with an understanding of its expectations, policies and procedures applicable to all sales and marketing representations. Because the timeshare sales industry is heavily-regulated, Wyndham stresses

the importance of adhering to these policies at all times. When he was hired, Wyndham supplied Humphrey with a copy of its Sales Compliance Policy Manual ("Manual"), which identifies specific permitted and prohibited sales representations. The Manual warns employees that Wyndham's success is reflected in the integrity of the company, its products, employees, and strong customer relationships, and that Wyndham expects all employees to demonstrate the highest standards of honesty and integrity to maintain those relationships. Therefore, misrepresentations about Wyndham's products or services or the benefits of timeshare ownership are strictly prohibited.

17. Additionally, Humphrey agreed to abide by the Business Principles of Wyndham's ultimate parent company, Wyndham Worldwide, Corporation ("Business Principles") which are applicable to employees of all subsidiaries and affiliates of Wyndham Worldwide, Corporation, including Wyndham. The Business Principles, among other things, states that employees must take precautions to protect against the unlawful and inappropriate use or disclosure of Wyndham's proprietary information during employment and thereafter; the description of confidential information in the Business Principles includes, by way of example: client lists (including phone numbers and postal and e-mail addresses) and/or client or customer contact information; marketing and pricing plans, cost structures or strategies; and, compilations which contain or otherwise reflect business information. A true and correct copy of Humphrey's acknowledgement of receipt of and agreement to abide by Wyndham Worldwide's Business Principles is attached as Exhibit A.

18. By reason of his employment with Wyndham, Humphrey became familiar with, and had access to, certain proprietary and confidential information, including but not limited to, owner lists, owner contacts, and other owner information, marketing and sales methods,

strategies, polices, practices and information, cost and pricing information, financial records, computer records, and employee records. Humphrey developed relationships with Wyndham's timeshare owners and employees that were important in furthering the goodwill and reputation of Wyndham. All of the foregoing information and business records are owned by Wyndham and treated by Wyndham as proprietary and confidential information, which could only be acquired or learned through employment at Wyndham.

19. On February 14, 2008, Humphrey was terminated from Wyndham for forging signatures on timeshare contracts.

### D. Humphrey's Creation of TOA and Subsequent Conduct

20. Upon his termination from Wyndham, Humphrey, initially using the alias of Davidson and later using his own name, formed TOA. According to information contained on its website, in exchange for a fee, TOA claims to "assist" individuals with the cancellation of their timeshare contracts and facilitate a full refund of the money the individuals have paid for the timeshare under the terms of their timeshare contract.

21. Using the confidential, proprietary information he obtained while an employee of Wyndham, Humphrey, in both his individual capacity thru TOA and by using the alias "Scott Davidson," began contacting parties to timeshare contracts with Wyndham, encouraging individuals to breach such contracts, and assisting individuals in their efforts to terminate timeshare contracts with Wyndham and obtain refunds of funds paid to Wyndham under the terms of such timeshare contracts.

22. On or about September 14, 2009, an unidentified employee of TOA entered Wyndham's timeshare property located in Nashville, Tennessee and placed brochures

6

N DAL1 707942 v3
2903712-000009 9/25/2009
Case 3:09-cv-00899   Document 1   Filed 09/28/09   Page 6 of 20 PageID #: 6

advertising TOA under the doors of the individual units. A true and correct copy of the brochure distributed by TOA on Wyndham's property is attached hereto as <u>Exhibit B</u>.

23. TOA's website contains numerous references to Wyndham and uses the Wyndham name and trademark without Wyndham's authorization or consent. The TOA website contains statements regarding Wyndham's business practices which are false, misleading and defamatory.

### E. Metko's Employment with Wyndham

24. Metko is also a former employee at Wyndham's Nashville office. Metko was first employed under the terms of a Salesperson Agreement dated March 14, 2006. A true and correct copy of the Salesperson Agreement is attached hereto as <u>Exhibit C</u>. In her capacity as a salesperson for Wyndham, Metko had access to and gained knowledge of Wyndham's confidential, proprietary information related to its business. Later, Metko held positions in the marketing department of Wyndham's Nashville office and also worked as a Quality Service Manager ("QSM") with responsibility for conducting closings of timeshare agreements. In her role as a QSM, Metko had access to and gained knowledge of additional confidential, proprietary information of Wyndham. Metko's employment with Wyndham was terminated on January 8, 2009.

25. Following her termination from Wyndham, Metko became employed by TOA. In violation of the terms of the Salesperson Agreement, Metko has used and continues to use the confidential, proprietary information she was privy to as an employee of Wyndham to further the business of TOA and to the detriment of Wyndham.

### F. Conduct of Employee of TOA Kurt Bartlett

26. On or about September 4, 2009, a lawsuit was filed against Wyndham and a former employee of Wyndham, Melissa Sisneros ("Sisneros"), in the Circuit Court for Sevier County, Tennessee (the "Sevier County Action"). In the Sevier County Action, the plaintiffs, Richard and Ardeth Fischer, seek to terminate a timeshare contract with Wyndham.

27. Following the filing of the Sevier County Action, Sisneros was contacted by Bartlett, who held himself out as the "Legal Affairs Manager" for TOA. A true and correct copy of the correspondence received by Sisneros from Bartlett (the "Bartlett Correspondence") is attached hereto as Exhibit D. In the Bartlett Correspondence, Bartlett tells Sisneros that TOA wants her to "assist" in "speaking against the resort" in the Sevier County Action and that if she does so, TOA "would be willing to speak to the plaintiffs" about having Sisneros "dropped as a defendant."

28. Neither Humphrey nor Bartlett is licensed to practice law in the State of Tennessee or any other jurisdiction.

### CAUSES OF ACTION

### Count I: Violation of the Tennessee Uniform Trade Secrets Act – Humphrey and Metko

29. Wyndham incorporates by reference each and every allegation set forth in paragraphs 1 through 28 above, as though fully set forth herein.

30. Under the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code Ann. § 47-25-1701, *et seq.*, and common law, this Court may enjoin the actual or threatened misappropriation of Wyndham's trade secrets as well as award money damages.

8

31. Wyndham's confidential and proprietary information, including information relating to the sale and marketing of timeshares, are protected as trade secrets under TUTSA, because:

    a) Wyndham uses this information, which is included in a compilation, in order to conduct business;

    b) Wyndham's confidential information derives significant independent economic value from not being publicly known and from not being generally known in Wyndham's trade or business;

    c) Wyndham's confidential information cannot be readily ascertained or derived from publicly available information; and

    d) Wyndham takes reasonable efforts to maintain the confidentiality and secrecy of its confidential information including entering into confidential agreements with its employees and limiting access to that information.

32. The trade secrets were communicated to Humphrey and Metko while each was employed in a position of trust and confidence with Wyndham.

33. Wyndham has not provided Humphrey or Metko with its express or implied consent to utilize Wyndham's confidential and proprietary information.

34. Humphrey and Metko have intentionally used Wyndham's trade secrets for various improper purposes, including soliciting Wyndham's customers and attempting to induce these customers to breach contractual agreements with Wyndham.

35. Additionally, Humphrey and Metko have intentionally used Wyndham's trade secrets for other improper purposes, including operating the TOA website, www.theownersadovcate.com, which is used to further Defendants' improper purpose of

9

N DAL1 707942 v3
2903712-000009 9/25/2009

defaming Wyndham, soliciting Wyndham's potential customers and interfering with Wyndham's business expectancies.

36. Wyndham has suffered damages as a result of the misappropriation of trade secrets by Humphrey and Metko.

37. The misappropriation of Wyndham's trade secrets by Humphrey and Metko was willful and malicious.

38. Wyndham has no adequate remedy at law for Defendants' actions since the damages that Wyndham has suffered as a result of the use and divulgence of its trade secret information as well as the loss of its business expectancies are incapable of exact proof.

39. Defendants will continue to use and misappropriate Wyndham's trade secrets and cause irreparable harm unless Defendants are preliminary and permanently enjoined from such conduct. Accordingly, a preliminary and permanent injunction enjoining Defendants from continuing their actions is a necessary remedy if Wyndham is to obtain meaningful relief.

40. Wyndham will likely succeed on the merits for the reasons set forth herein.

41. Any hardship accruing to Defendants would not unreasonably outweigh the benefit to Wyndham.

42. As a direct, proximate, and foreseeable result of Defendants' actions, Wyndham has suffered damages in an amount to be proven at trial. Wyndham is also entitled to an award of exemplary damages pursuant to Tenn. Code Ann. § 47-25-1704(b) and reasonable attorneys' fees pursuant to Tenn. Code Ann. § 47-25-1705(3).

### Count II: Unauthorized Practice of Law - Humphrey

43. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 42 above, as though fully set forth herein.

44. Humphrey acts as an advocate in a representative capacity for "customers" of TOA who have been induced to breach their contract with Wyndham.

45. Humphrey offers opinions on legal matters to "customers" of TOA who have been induced to breach their contract with Wyndham.

46. Humphrey writes letters on behalf of "customers" of TOA in an attempt to negotiate a legal release from their contractual obligations.

47. Upon information and belief, Humphrey is not licensed to practice law in the State of Tennessee or any other jurisdiction.

48. In violation of Tenn. Code Ann. § 23-3-103, Humphrey has engaged in the unauthorized practice of law.

49. The unauthorized practice of law may rightfully be enjoined as a public nuisance. Additionally, Wyndham has no adequate remedy at law for Humphrey's actions since the damages that Wyndham has suffered as a result of Humphrey's unauthorized practice of law are incapable of exact proof.

50. Humphrey has demonstrated that he will continue to engage in the unauthorized practice of law and cause irreparable harm unless he is preliminary and permanently enjoined from such conduct. Accordingly, a preliminary and permanent injunction enjoining Humphrey from the unauthorized practice of law is a necessary remedy if Wyndham is to obtain meaningful relief.

51. Wyndham will likely succeed on the merits for the reasons set forth herein.

52. Any hardship accruing to Humphrey would not unreasonably outweigh the benefit to Wyndham in enjoining Humphrey from defrauding the citizens of Tennessee that are likely to be confused by Humphrey's representations of legal acumen.

53. As a direct, proximate, and foreseeable result of Humphrey's actions, Wyndham has suffered damages in an amount to be proven at trial. Wyndham is also entitled to an award of treble damages pursuant to Tenn. Code Ann. § 23-3-103(b).

### Count III: Unauthorized Practice of Law - Bartlett

54. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 53 above, as though fully set forth herein.

55. Bartlett holds himself out as the "Legal Affairs Coordinator" for TOA.

56. In the Bartlett Correspondence, Bartlett attempted to obtain testimony from a defendant to a lawsuit in exchange for that defendant's testimony against Wyndham.

57. Upon information and belief, Bartlett is not licensed to practice law in the State of Tennessee or any other jurisdiction.

58. In violation of Tenn. Code Ann. § 23-3-103, Bartlett has engaged in the unauthorized practice of law.

59. The unauthorized practice of law may rightfully be enjoined as a public nuisance. Additionally, Wyndham has no adequate remedy at law for Bartlett's actions since the damages that Wyndham has suffered as a result of Bartlett's unauthorized practice of law are incapable of exact proof.

60. Bartlett has demonstrated that he will continue to engage in the unauthorized practice of law and cause irreparable harm unless he is preliminary and permanently enjoined from such conduct. Accordingly, a preliminary and permanent injunction enjoining Bartlett from the unauthorized practice of law is a necessary remedy if Wyndham is to obtain meaningful relief.

61. Wyndham will likely succeed on the merits for the reasons set forth herein.

62. Any hardship accruing to Bartlett would not unreasonably outweigh the benefit to Wyndham in enjoining Bartlett from defrauding the citizens of Tennessee that are likely to be confused by Bartlett's representations of legal acumen.

63. As a direct, proximate, and foreseeable result of Bartlett's actions, Wyndham has suffered damages in an amount to be proven at trial. Wyndham is also entitled to an award of treble damages pursuant to Tenn. Code Ann. § 23-3-103(b).

### Count IV: Intentional Interference with Business Relations – All Defendants

64. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 63 above, as though fully set forth herein.

65. Wyndham had existing contractual relationships with third parties that were affected as a result of Defendants' actions.

65. Wyndham also had valid business expectancies with third parties that were affected as a result of Defendants' actions.

66. Defendants had actual and/or constructive knowledge of these relationships and expectancies.

67. Defendants' willful actions to help parties with whom Wyndham has valid contractual agreement breach said agreements constitutes intentional interference with existing contracts with third parties.

68. Defendants' statements that Wyndham has engaged in improper conduct with regard to its timeshare contracts and recommending that parties breach their timeshare contracts with Wyndham also constitute interference with certain business expectancies that were known or reasonably could be known to Defendants.

13

69. Wyndham has suffered damages as a result of Defendants' intentional interference with business relations.

70. The interference with Wyndham's business relationships by Defendants was willful and malicious.

### Count V: Libel – Humphrey, Davidson, TOA

71. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 70 above, as though fully set forth herein.

72. The statements regarding Wyndham and Wyndham's business practices on TOA's website are false and defamatory.

73. The statements on TOA's website concern the business practices of Wyndham.

74. The statements on TOA's website have been published to third parties that are likely to understand that they refer to Wyndham.

75. These defamatory statements have damaged Wyndham's business reputation.

76. The continued publication of false and defamatory statements may rightfully be enjoined. Additionally, Wyndham has no adequate remedy at law for Defendants' actions since the damages that Wyndham has suffered as a result of Defendants' false and defamatory statements are incapable of exact proof.

77. Defendants have demonstrated that they will continue to publish false and defamatory statements regarding Wyndham in an effort to damage Wyndham and cause irreparable harm unless Defendants are preliminary and permanently enjoined from such conduct. Accordingly, a preliminary and permanent injunction enjoining Defendants from further publication of these false and defamatory statements through Defendants' website(s) or

14

any other medium that Defendants utilize to communicate false and defamatory statements regarding Wyndham is a necessary remedy if Wyndham is to obtain meaningful relief.

78. Wyndham will likely succeed on the merits for the reasons set forth herein.

79. Any hardship accruing to Defendants would not unreasonably outweigh the benefit to Wyndham in enjoining Defendants from publishing false and defamatory statements regarding Wyndham.

## Count VI: Misappropriation – Humphrey, Davidson, Metko and TOA

80. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 79 above, as though fully set forth herein.

81. Defendants utilize Wyndham's name and likeness on its website www.theownersadvocate.com.

82. Wyndham has not provided Defendants with its express or implied consent to utilize Wyndham's name or likeness.

83. Defendants have misappropriated Wyndham's name and likeness without authorization for Defendants own commercial advantage.

84. The continued misappropriate of Wyndham's name and likeness for Defendants' commercial advantage may rightfully be enjoined as Wyndham has no adequate remedy at law for Defendants' actions since the damages that Wyndham has suffered as a result of Defendants' misappropriation are incapable of exact proof.

85. Defendants have demonstrated that they will continue to misappropriate Wyndham's name and likeness for Defendants' own commercial advantage and cause irreparable harm unless Defendants are preliminary and permanently enjoined from such conduct. Accordingly, a preliminary and permanent injunction enjoining Defendants from

15

N DAL1 707942 v3
2903712-000009 9/25/2009

further misappropriation of Wyndham's name and likeness through Defendants' website(s) or any other medium that Defendants utilize to communicate statements regarding Wyndham is a necessary remedy if Wyndham is to obtain meaningful relief.

86. Wyndham will likely succeed on the merits for the reasons set forth herein.

87. Any hardship accruing to Defendants would not unreasonably outweigh the benefit to Wyndham in enjoining Defendants from misappropriating Wyndham's name and likeness.

## Count VII: Trespass

88. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 87 above, as though fully set forth herein.

89. Defendants entered Wyndham's property in order to distribute brochures to parties with whom Wyndham has a contractual relationship.

90. Defendants intended to enter upon Wyndham's property in order to distribute the brochures.

91. Defendants have trespassed upon Wyndham's property and as a result, Wyndham has been damaged.

92. At the time of entry upon the property, Defendants knew that their entry was without the permission, whether express or implied, of Wyndham and such entry would require Defendants to trespass upon Wyndham's property.

93. Thus, Defendants' actions were intentional, malicious and/or reckless and Wyndham is entitled to punitive damages arising from such conduct.

## Count VIII: Civil Conspiracy

N DAL1 707942 v3
2903712-000009 9/25/2009

94. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 93 above, as though fully set forth herein.

95. In misappropriating Wyndham's trade secrets, TOA, Humphrey and Metko have a common design and purpose of interfering with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

96. TOA, Humphrey and Metko also have a common design and purpose to defame Wyndham in furtherance of their common design and purpose of interfering with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreement.

97. The Defendants have acted in concert with an unlawful purpose and with unlawful means to interfere with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

98. Defendants took overt acts in furtherance of their unlawful conspiracy to interfere with Wyndham's business relations and inducing Wyndham's customers to breach their contractual agreements.

99. Wyndham was damaged as a result of Defendants' unlawful conspiracy by, without limitation, a loss of profits and goodwill.

### Count IX: Breach of Contract - Metko

100. Wyndham incorporates by reference each and every allegations set forth in paragraphs 1 through 99 above, as though fully set forth herein.

101. Metko was employed by Wyndham pursuant to a Salesperson Agreement. Metko has breached the Salesperson Agreement by using confidential and proprietary information she obtained as an employee of Wyndham and disclosing such information to third parties to the detriment of Wyndham.

17

102. Wyndham has suffered damages as a result of Metko's breach of the Salesperson Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Wyndham requests:

1. That this Court issue a Temporary Restraining Order and, after a hearing, Preliminary Injunction restraining and enjoining Defendants or their agents and/or employees:

   a. From continuing Defendants' misappropriation of Wyndham's trade secrets and confidential information in violation of Tennessee's Uniform Trade Secrets Act;

   b. From using or disclosing any trade secrets, confidential information, or proprietary information of Wyndham for any purpose;

   c. From further unauthorized practice of law in an effort to induce any party to breach its contractual agreement with Wyndham;

   d. From further publication of false and defamatory statements regarding Wyndham and its business practices; and

   e. From further misappropriate of Wyndham's name and likeness for Defendants' commercial advantage.

2. That after trial of this cause, a permanent injunction be entered against Defendants enjoining the conduct set forth above.

3. That this Court issue an order requiring Defendants to immediately turn over to Wyndham any writing, document, recording and/or electronic data that contains or relates to in any way the trade secret, confidential information or proprietary information obtained from Wyndham.

18

N DAL1 707942 v3
2903712-000009 9/25/2009

4. That Wyndham be awarded all of its actual damages caused by the Defendants wrongful acts, including lost profits, and that Wyndham be awarded it attorneys fees.

5. That Wyndham be awarded compensatory damages, punitive damages and attorneys' fees.

6. That Wyndham be given such other equitable and legal relief as is just and proper under the circumstances.

**THIS IS THE FIRST APPLICATION FOR EXTRAORDINARY RELIEF IN THESE PROCEEDINGS.**

Respectfully submitted,

*Courtney H. Gilmer*

Courtney H. Gilmer (BPR No. 22131)
William A. Lewis (BPR No. 27377)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600

**Attorneys for Wyndham Vacation Resorts, Inc.**

# VERIFICATION

I, John Davis Labelle, after first being duly sworn, do hereby make oath and affirm that I am a Vice President of Sales and Marketing for Wyndham Vacation Resorts, Inc.; that the claims made in the Verified Complaint are just; that the facts set forth in the Verified Complaint are true and correct of my own knowledge or the knowledge available to Wyndham Vacation Resorts, Inc., through its investigation and the books and records of Wyndham Vacation Resorts, Inc., as stated, except those made as on information and belief, which are correct to the best of my knowledge, information and belief.

_____
John Davis Labelle

STATE OF TENNESSEE    )
                      )
COUNTY OF DAVIDSON    )

Before me, the undersigned authority, a Notary Public in and for said County and State, personally appeared John Davis Labelle, with whom I am personally acquainted or proven to me on the basis of satisfactory evidence, and who acknowledged that he executed the foregoing in his capacity as Vice President of Sales and Marketing of Wyndham Vacation Resorts, Inc., that he is authorized to execute this instrument in that capacity, and that he did so for the purposes and considerations therein expressed and without undue influence or coercion from any other party.

SWORN TO AND SUBSCRIBED this 25th day of September, 2009.

_____
NOTARY PUBLIC

My Commission Expires: 11/14/09



My Commission Expires NOV. 14, 2009