IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| WYNDHAM VACATION RESORTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 09-00899 |
| TOA, LLC d/b/a THE OWNERS' ADVOCATE, DAVID HUMPHREY a/k/a SCOTT DAVIDSON, KURT W. BARTLETT, and KAY METKO, | ) ) ) ) ) ) ) ) | Judge Haynes |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF REQUEST FOR PRELIMINARY INJUNCTION

Plaintiff, Wyndham Vacation Resorts, Inc. ("Wyndham"), files this brief in support of its request for a preliminary injunction against Defendants TOA, LLC d/b/a The Owners' Advocate ("TOA"), David Humphrey ("Humphrey"), Scott Davidson ("Davidson"), Kurt W. Bartlett ("Bartlett") and Kay (Kate) Metko ("Metko" and collectively referred to as the "Defendants"). In further support of its request, Wyndham states as follows:

### I. INTRODUCTION

Wyndham filed its Complaint against Defendants on September 28, 2009. That same day, Wyndham requested the issuance of a temporary restraining order against Defendants, which the Court granted. Wyndham now requests pursuant to Rule 65(b)(3) of the Federal Rules of Civil Procedure that the provisions of the temporary restraining order be extended into a preliminary injunction substantially in the form of the Preliminary Injunction attached hereto as Exhibit A and that Defendants be temporarily enjoined from:

1

1. Continuing any misappropriation of trade secrets and confidential information in violation of Tennessee's Uniform Trade Secrets Act and Defendants' contracts with Wyndham;

2. Using or disclosing any trade secrets, confidential information, or proprietary information of Wyndham;

3. Continuing to publish false and defamatory statements regarding Wyndham and its business practices via the internet site www.theownersdvocate.com or any other internet site utilized by Defendants; and

4. Attempting to delete, modify, alter, or otherwise destroy, intentionally, inadvertently or automatically, any potentially relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., Blackberry or similar), personal computers, or any other devices capable of storing electronic information belonging to any and all of the identified likely custodians or any other person not specifically identified by Wyndham.

## II. FACTS

### A. The Parties

Wyndham is a Delaware corporation which markets and sells vacation ownership interests, provides property management services to property owners' associations, and develops and acquires vacation ownership resorts. TOA d/b/a The Owners' Advocate is a California limited liability company with its principal place of business in Nashville, Tennessee. TOA represents itself to be a consumer advocacy group that assists people in terminating their contractual agreements with Wyndham without cause. Humphrey is a citizen and resident of

Davidson County, Tennessee and is the owner of TOA. Davidson is believed to be an alias of Humphrey.

Bartlett is a citizen and resident of Davidson County, Tennessee and holds himself out as the Legal Affairs Manager for TOA. Bartlett is also a law school student at the Nashville School of Law. Metko is a citizen and resident of Williamson County, Tennessee and acted as an agent/employee of TOA and Humphrey.

### B. Wyndham's Confidential, Proprietary Information and Trade Secrets

Wyndham Vacation Resorts, Inc. develops, finances, manages and sells timeshare properties; it is the world's largest vacation timeshare company, as measured by the number of vacation ownership resorts, individual vacation ownership units and owners of vacation ownership interests. Wyndham and its affiliated resort companies currently have approximately 515,000 owner families around the world. A large percentage of Wyndham's business is repeat business from timeshare owners, including existing owners' purchase of upgrades and owner referrals. Therefore, customer relations and goodwill are vital to Wyndham's success.

In connection with its business, Wyndham has expended substantial time, labor, and money to research and develop skills, methods, techniques, plans, programs, processes, data, forms, and policies which, singularly and collectively, constitute trade secrets and confidential information of Wyndham. These trade secrets and confidential information include, but are not limited to, owner lists, owner contacts, and other owner information, sales and marketing methods, strategies, practices and information, financial information, cost and pricing information, and confidential employee information. Wyndham requires that all trade secrets and confidential materials and copies thereof be returned upon the termination of employment of any of its employees.

3

In particular, Wyndham spends a significant amount of time and resources developing and maintaining its owner base, and it emphasizes owner relations and customer service. All of these trade secrets and confidential information are used in Wyndham's operations and provide it with advantages, or the opportunity to gain advantages, over those who do not know of or use such trade secrets and confidential information. These trade secrets and confidential information are neither available to nor known by the general public or competitors. Wyndham has taken substantial measures and exercised much due diligence to prevent its trade secrets and confidential information from being available to persons other than those selected by Wyndham and obligated, either under contract or by virtue of their fiduciary duty to Wyndham or an affiliate, to have access to this information on a confidential basis in order to further its business.

C. **Humphrey's Employment with Wyndham**

Humphrey was employed at Wyndham's Nashville resort as a timeshare salesperson from May 2007 until February 14, 2008. In his capacity as a salesperson, Humphrey had access to and gained knowledge of Wyndham's confidential, proprietary information related to its business.

Wyndham trained Humphrey extensively regarding its Sales Compliance Policies. Wyndham developed the Sales Compliance Policies to provide sales representatives with an understanding of its expectations, policies and procedures applicable to all sales and marketing representations. Because the timeshare sales industry is heavily-regulated, Wyndham stresses the importance of adhering to these policies at all times. When he was hired, Wyndham supplied Humphrey with a copy of its Sales Compliance Policy Manual ("Manual"), which identifies specific permitted and prohibited sales representations. The Manual warns employees that Wyndham's success is reflected in the integrity of the company, its products, employees, and strong customer relationships, and that Wyndham expects all employees to demonstrate the

highest standards of honesty and integrity to maintain those relationships. Therefore, misrepresentations about Wyndham's products or services or the benefits of timeshare ownership are strictly prohibited.

Additionally, Humphrey agreed to abide by the Business Principles of Wyndham's ultimate parent company, Wyndham Worldwide, Corporation ("Business Principles") which are applicable to employees of all subsidiaries and affiliates of Wyndham Worldwide, Corporation, including Wyndham. The Business Principles, among other things, states that employees must take precautions to protect against the unlawful and inappropriate use or disclosure of Wyndham's proprietary information during employment and thereafter; the description of confidential information in the Business Principles includes, by way of example: client lists (including phone numbers and postal and e-mail addresses) and/or client or customer contact information; marketing and pricing plans, cost structures or strategies; and, compilations which contain or otherwise reflect business information. A true and correct copy of Humphrey's acknowledgement of receipt of and agreement to abide by Wyndham Worldwide's Business Principles is attached to the Complaint as Exhibit A.

By reason of his employment with Wyndham, Humphrey became familiar with, and had access to, certain proprietary and confidential information, including but not limited to, owner lists, owner contacts, and other owner information, marketing and sales methods, strategies, polices, practices and information, cost and pricing information, financial records, computer records, and employee records. Humphrey developed relationships with Wyndham's timeshare owners and employees that were important in furthering the goodwill and reputation of Wyndham. All of the foregoing information and business records are owned by Wyndham and

treated by Wyndham as proprietary and confidential information, which could only be acquired or learned through employment at Wyndham.

On February 14, 2008, Humphrey was terminated from Wyndham for forging signatures on timeshare contracts.

### D. Humphrey's Creation of TOA and Subsequent Conduct

Upon his termination from Wyndham, Humphrey, initially using the alias of Scott Davidson and later using his own name, formed TOA. According to information contained on its website, in exchange for a fee, TOA claims to "assist" individuals with the cancellation of their timeshare contracts and facilitate a full refund of the money the individuals have paid for the timeshare under the terms of their timeshare contract.

Using the confidential, proprietary information he obtained while an employee of Wyndham, Humphrey, in both his individual capacity thru TOA and by using the alias "Scott Davidson," began contacting parties to timeshare contracts with Wyndham, encouraging individuals to breach such contracts, and assisting individuals in their efforts to terminate timeshare contracts with Wyndham and obtain refunds of funds paid to Wyndham under the terms of such timeshare contracts.

On or about September 14, 2009, an unidentified employee of TOA entered Wyndham's timeshare property located in Nashville, Tennessee and placed brochures advertising TOA under the doors of the individual units. A true and correct copy of the brochure distributed by TOA on Wyndham's property is attached to the Complaint as <u>Exhibit B</u>.

TOA's website contains numerous references to Wyndham and uses the Wyndham name and trademark without Wyndham's authorization or consent. The TOA website contains statements regarding Wyndham's business practices which are false, misleading and defamatory.

6

### E. Metko's Employment with Wyndham

Metko is also a former employee at Wyndham's Nashville office. Metko was first employed under the terms of a Salesperson Agreement dated March 14, 2006. A true and correct copy of the Salesperson Agreement is attached to the Complaint as <u>Exhibit C</u>. In her capacity as a salesperson for Wyndham, Metko had access to and gained knowledge of Wyndham's confidential, proprietary information related to its business. Later, Metko held positions in the marketing department of Wyndham's Nashville office and also worked as a Quality Service Manager ("QSM") with responsibility for conducting closings of timeshare agreements. In her role as a QSM, Metko had access to and gained knowledge of additional confidential, proprietary information of Wyndham. Metko's employment with Wyndham was terminated on January 8, 2009.

Following her termination from Wyndham, Metko became employed by TOA. In violation of the terms of the Salesperson Agreement, Metko has used and continues to use the confidential, proprietary information she was privy to as an employee of Wyndham to further the business of TOA and to the detriment of Wyndham.

### F. Conduct of Employee of TOA Kurt Bartlett

On or about September 4, 2009, a lawsuit was filed against Wyndham and a former employee of Wyndham, Melissa Sisneros ("Sisneros"), in the Circuit Court for Sevier County, Tennessee (the "Sevier County Action"). In the Sevier County Action, the plaintiffs, Richard and Ardeth Fischer, seek to terminate a timeshare contract with Wyndham.

Following the filing of the Sevier County Action, Sisneros was contacted by Bartlett, who held himself out as the "Legal Affairs Manager" for TOA. A true and correct copy of the correspondence received by Sisneros from Bartlett (the "Bartlett Correspondence") is attached to

the Complaint as Exhibit D. In the Bartlett Correspondence, Bartlett tells Sisneros that TOA wants her to "assist" in "speaking against the resort" in the Sevier County Action and that if she does so, TOA "would be willing to speak to the plaintiffs" about having Sisneros "dropped as a defendant."

Neither Humphrey nor Bartlett is licensed to practice law in the State of Tennessee or any other jurisdiction.

### III. LEGAL STANDARD FOR ISSUANCE OF PRELIMINARY INJUNCTION

The factors a court must consider in deciding whether to grant a preliminary injunction in Tennessee are:

> (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*International Security Management Group, Inc. v. Sawyer*, 2006 WL 1638537, *7 (M.D. Tenn. Jun. 6, 2006) (quoting *United States v. Edward Rose & Sons,* 384 F.3d 258, 261 (6th Cir. 2004)). The foregoing four factors are to be balanced, and not prerequisites to be met. *Edward*, 384 F.3d at 261. Thus, a court may issue preliminary injunctive relief even where a moving party does not establish each of the four factors, as long as those that it does establish weigh in favor of such relief. *See Six Clinics Holding Corp., III v. Cafcomp Systems, Inc.*, 119 F.3d 393, 400-02 (6th Cir. 1997) (even where movant has not established strong probability of success, preliminary injunction may be appropriate where movant "has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation"). Each of the factors for issuing a preliminary injunction weigh in favor of Wyndham, especially because it has a strong likelihood of success on the merits and, therefore, it is entitled to injunctive relief against Defendants.

8

## III. ARGUMENT

### A. Wyndham Is Entitled To A Preliminary Injunction Because It Is Likely To Succeed On The Merits Of Its Claims

Wyndham asserts six claims against Defendants: violation of the Tennessee Uniform Trade Secrets Act ("TUTSA"), Tenn. Code § 47-25-1701, *et seq.*, unauthorized practice of law against Humphrey and Bartlett, intentional interference with business relations, libel, misappropriation, trespass, civil conspiracy and breach of contract by Metko.

Wyndham's request for injunctive relief is tied primarily to its claims for violation of the TUTSA and breach of contract by Metko. Wyndham is likely to succeed on the merits of its claims against Defendants because the evidence will establish that while they were employees of Wyndham, Humphrey and Metko had extensive access to Wyndham's trade secrets and confidential, proprietary information. The evidence will further demonstrate that Humphrey had an opportunity to remove confidential, proprietary information from the premises of Wyndham's sales office both prior to and following his termination from Wyndham. Finally, Wyndham will present evidence that Humphrey and have used the trade secrets and confidential, proprietary information of Wyndham to Wyndham's detriment. Metko's use of Wyndham's trade secrets and confidential, proprietary information is both a violation of the TUTSA and a breach of her Salesperson Agreement with Wyndham.

Under the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.*, and common law, this Court may enjoin the actual or threatened misappropriation of Wyndham's trade secrets as well as award money damages. *See United Rentals (North America), Inc. v. Keizer*, 355 F.3d 399 (6th Cir. 2004) (applying Michigan Uniform Trade Secrets Act); *Patio Enclosures, Inc. v. Herbst*, 39 Fed.Appx. 964 (6th Cir. 2002) (applying Ohio Uniform Trade Secret Act). The four elements under Tennessee law for misappropriation of a trade secret are:

9

(1) the existence of a trade secret; (2) communication of the trade secret to the defendant while in a position of trust and confidence; (3) defendant's use of the communicated information; and (4) resulting detriment to the plaintiff. *Stratienko v. Cordis Corp.*, 429 F.3d 592 (6th Cir. 2005).

A trade secret is "any formula, process, pattern, device or compilation of information that is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not use it." *Wright Medical Technology, Inc. v. Grisoni*, 135 S.W.3d 561, 588 (Tenn. Ct. App. 2001) (citing *Hickory Specialties, Inc. v. B & L Laboratories, Inc.*, 592 S.W.2d 583, 586 (Tenn. Ct. App. 1979). Confidential information is closely analogous to a trade secret and warrants similar protection. *Grisoni*, 135 S.W.3d at 588 (citing *Vantage Technology, LLC, v. Cross*, 17 S.W.3d 637, 645 (Tenn. Ct. App. 1999). Wyndham's processes related to the sale and marketing of timeshares are, therefore, protected as trade secrets under TUTSA. Wyndham uses this information, which is included in a compilation, in order to conduct business, the confidential information derives significant independent economic value from not being publicly known and from not being generally known in Wyndham's trade or business, the confidential information cannot be readily ascertained or derived from publicly available information, and Wyndham has taken reasonable steps to maintain the confidentiality and secrecy of its confidential information including entering into confidential agreements with its employees and limiting access to that information. *See Venture Express, Inc. v. Zilly*, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998) (describing the factors relevant to determining if information constitutes a trade secret).

Defendants are likely to claim that the information is readily available through other sources, however, this argument rings hollow. The Court in *Grisoni* was clear that "information which was acquired by the defendant through the confidential relationship may be protected even

10

if the information potentially could have been obtained through independent research." *Grisoni*, 135 S.W.3d at 589 (citation omitted). The Court continued that "this is particularly true where acquisition of the information through independent research would be difficult, costly, or time consuming." *Id*. (citing *Essex Group, Inc. v. Southwire Co.*, 501 S.E.2d 501, 504 (Ga. 1998).

Communication of the confidential information to the Humphrey and Metko can be presumed, since both were employees of Wyndham and were trained by Wyndham on its systems and processes. There is no evidence to suggest Humphrey, Metko or any other Defendant had any prior experience in the timeshare industry. The information cannot be said to be a part of the general skill and knowledge of the former employees since the information is specific to a business, confidential, and would be useful primarily to a direct competitor of the former employer, it is likely not part of the former employee's general skill, knowledge and experience and is subject to protection as confidential information. *Grisoni*, 135 S.W.3d at 589-90. Even if the employee and employer do not execute an agreement not to compete, the employee is still bound by the general duty not to disclose confidential information or trade secrets belonging to the former employer. *Id*. Violation of this duty gives rise to a cause of action in the employer to obtain relief against the former employee. *Id*.

Under these circumstances, where the strength of a plaintiff's likelihood of success on the merits is so strong, this first factor weighs heavily in favor of the issuance of a preliminary injunction. *See Six Clinics Holding Corp.*, 119 F.3d at 400-02. As a result, the first prerequisite for injunctive relief is satisfied, and an injunction must issue.

**B.     Wyndham Satisfies the Remaining Factors for Issuance of an Injunction**

After establishing the high chance of success on the merits, the remaining factors are easily satisfied. Trade secret cases and non-compete matters are often entitled to a presumption of irreparable harm since "an intention to make imminent or continued use of a trade secret or to

11

N DAL1 710379 v1
2903712-000009 10/07/2009
Case 3:09-cv-00899    Document 13    Filed 10/08/09    Page 11 of 14 PageID #: 80

disclose it . . . will almost certainly show immediate irreparable harm." *Campbell Soup Co. v. ConAgra, Inc*., 977 F.2d 86, 92-93 (3d Cir. 1992); *see also North Atlantic Instruments, inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999) (holding that the loss of trade secrets cannot be measured in money damages). Although this Court has not had occasion to comment on the matter in applying Tennessee law, it has followed this logic in other matters. *See Xerox Corp. v. O'Dowd*, 2006 WL 3053408, *10 (M.D. Tenn. 2006) (holding under New York law, irreparable harm is presumed where a trade secret has been misappropriated) (citing *Lumex, Inc. v. Highsmith*, 919 F.Supp. 624, 628 (E.D.N.Y.1996)). The rational is that "a trade secret once lost is, of course, lost forever[,]" and the loss is not measurable in monetary damages. *O'Dowd*, 2006 WL 3053408, *10 (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984)). Thus, Wyndham can clearly demonstrate that it will be irreparably harmed without the issuance of the injunction.

Lastly, Defendants will not be harmed by the injunction nor would the injunction be contrary to the public interest. The reason in both instances is largely the same: there is no protectable interest to engage in the theft of trade secrets. Wyndham is unable to find any authority for the proposition that a party has a protectable right to engage in illegal activity. Thus, all factors counsel in favor of granting the injunction.

## IV. <u>CONCLUSION</u>

For the reasons set forth herein, Wyndham is entitled to a preliminary injunction substantially in the form of <u>Exhibit A</u> attached hereto enjoining Defendants from:

1. Continuing any misappropriation of trade secrets and confidential information in violation of Tennessee's Uniform Trade Secrets Act and Defendants' contracts with Wyndham;

2. Using or disclosing any trade secrets, confidential information, or proprietary information of Wyndham;

3. Continuing to publish false and defamatory statements regarding Wyndham and its business practices via the internet site www.theownersdvocate.com or any other internet site utilized by Defendants; and

4. Attempting to delete, modify, alter, or otherwise destroy, intentionally, inadvertently or automatically, any potentially relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., Blackberry or similar), personal computers, or any other devices capable of storing electronic information belonging to any and all of the identified likely custodians or any other person not specifically identified by Wyndham.

Respectfully submitted,

/s/ Courtney H. Gilmer
Courtney H. Gilmer (BPR No. 22131)
William A. Lewis (BPR No. 27377)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600

**Attorneys for Wyndham Vacation Resorts, Inc.**

## CERTIFICATE OF SERVICE

      I hereby certify that on the 8th day of October, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail, first-class postage prepaid. Parties may access this filing through the Court's electronic filing system.

      TOA d/b/a The Owners' Advocate
      7984 Coley Davis Road
      Nashville, TN 37221

      David Humphrey
      7984 Coley Davis Road
      Nashville, TN 37221

      Scott Davidson c/o David Humphrey
      7984 Coley Davis Road
      Nashville, TN 37221

      Kay Metko
      879 Dortch Lane
      Nolensville, TN 37135

      Kurt Bartlett
      127 Rural Ave.
      Nashville, TN 37209

      /s/ Courtney H. Gilmer
      Courtney H. Gilmer