# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

2010 JAN 29  AM 9:47

U.S. _____ COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| WYNDHAM VACATION RESORTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 09-00899 |
| ) | |
| TOA, LLC d/b/a THE OWNERS' ) | Judge Haynes |
| ADVOCATE, ) | |
| DAVID HUMPHREY ) | |
| a/k/a SCOTT DAVIDSON, ) | |
| KURT W. BARTLETT, ) | |
| and KAY METKO, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT DAVID HUMPHREY'S MEMORANDUM OF LAW
## IN SUPPORT OF HIS MOTION TO DISMISS COUNTS ONE, TWO, FOUR, FIVE, SIX, SEVEN AND EIGHT OF WYNDHAM VACATION RESORTS, INC.'S COMPLAINT

David Humphrey ("Defendant" or "Humphrey"), Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), respectfully submits this Memorandum of Law in Support of His Motion to Dismiss Counts One, Two, Four, Five, Six, Seven and Eight of Wyndham Vacation Resorts, Inc.'s Verified Complaint for failure to state a claim upon which relief can be granted, or in the alternative, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), as to these counts. As set forth below, Plaintiff has woefully failed to meet its pleading burden and, thus, the Court should grant Humphrey's Motion to Dismiss and dismiss the Complaint with prejudice. This case is set for trial on December 14, 2010.

In support of Humphrey's motion to dismiss, Humphrey respectfully states as follows:

## I.    JURISDICTION

Plaintiff, a Delaware Corporation whose principal place of business is in Florida, brings this action against TOA, LLC d/b/a The Owners' Advocate ("TOA"), a California Limited Liability Company with its principal place of business in Tennessee; David Humphrey a/k/a Scott Davidson ("Humphrey"), a resident of Tennessee; Kurt W. Bartlett ("Bartlett"), a resident of Tennessee; and Kay Metko ("Metko"), a resident of Tennessee. The amount in controversy is stated to exceed $75,000, exclusive of interest and costs. Accordingly, this Court has original, diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332.

## II.    APPLICABLE LAW

A district court exercising diversity jurisdiction must apply to all substantive issues the law of the state in which the district court sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Federal law governs the disposition of the procedural issues. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

## III.    OVERVIEW

The facts in this section are either undisputed or are facts on which Plaintiff cannot present evidence creating a genuine issue. They are not presented to the court as a basis for the Court's decision on this motion, however, but only to provide the Court with the background events giving rise to the litigation.

Defendant began working for Wyndham Vacation Resorts, Inc. as a salesperson in May, 2007. He continued to work there until his employment was terminated in February, 2008, for reasons which are disputed between Plaintiff and Defendant. When Defendant ultimately left the Plaintiff's premises, he was allowed to retain information on the

approximately 65 clients he handled as a salesperson. This client information was stored on Defendant's personal computer, as was customary for all Wyndham sales employees, and at no time was this information requested to be returned to Plaintiff upon his departure, or after. Defendant has never contacted any one of these clients after Humphrey's employment with Plaintiff ended and has never used this client information for his benefit.

In May of 2008, Defendant started the business, The Owners' Advocate, (TOA, LLC), a consumer based, self-help organization that provides products and services, at the direction of its customers, specifically relating to articulating instances of alleged fraud and misrepresentation that take place during timeshare presentations. The business of TOA was not targeted toward any one particular timeshare company and was made available to potential customers through Defendant's website, theownersadvocate.com. The website was, and is, the only method for potential customers to reach the business. At no time has Defendant Humphrey ever directly contacted, or directly solicited, any client of Plaintiff Wyndham, or otherwise.

## IV.    ARGUMENT

### A.    Legal Standard.

#### RULE 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a cognizable claim has been pleaded in the complaint. *See Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Where there are no factual issues raised by the Rule 12 motion, and the claim can be disposed of on the face of the complaint, discovery is not needed, and it is appropriate for the court to dismiss the claim.

3

*See Flaim v. Medical College of Ohio*, 418 F.3d 629, 643-44 (6th Cir. 2005). A motion to dismiss should be granted only if the plaintiff can prove no set of facts which would entitle the plaintiff to relief. "Although a motion to dismiss should be granted only if the plaintiff can prove no set of facts which would entitle her to relief, [the] court should not assume facts that were not plead." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006). Moreover, "[t]he court need not accept legal conclusions or unwarranted factual inferences as true." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 930 (6th Cir. 2006). A motion to dismiss for failure to state a claim is likely to be granted where a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (2d ed. 1990) (cited with approval in *Thomas v. Publishers Clearing House, Inc.*, No. 00-3948, 2002 WL 193935 (6th Cir. Feb. 5, 2002)). The standard for reviewing a Rule 12(b)(6) dismissal is that the factual allegations in the complaint must be regarded as true, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), and "the claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *French v. First Union Securities, Inc.*, 209 F. Supp.2d 818, 823 (M.D. Tenn. 2002) (Nixon, J.).

### *TWOMBLY*

Additionally, to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993). As the Supreme Court more recently held

4

in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 9, 2 L.Ed.2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, it's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.* at 1965 n. 3. After *Twombly*, it is no longer sufficient to allege mere elements of a cause of action; instead, "a complaint must allege facts suggestive of [the proscribed] conduct." *Id.* at 1965.

### IQBAL

Under Federal Rule of Civil Procedure 8(a)(2), a pleader must contain a short and plain statement of the claim showing that the pleader is entitled to relief. A pleading that fails to meet the burdens imposed by Rule 8(a)(2) should be dismissed upon a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Supreme Court of the United States recently described the standard by which federal courts are to determine such a motion to dismiss as follows:

> [T]he pleading standard *Rule 8* announced does not require detailed factual allegations, but it *demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.* A pleading that offers labels and conclusions or a formulaic

5

recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it renders naked assertion[s] devoid of further factual enhancement.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks more than a sheer possibility that a defendant has acted unlawfully. *Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.*

*Ashcroft v. Iqbal*, 556 U.S.___, 129 S. Ct. 1937, 1949 (2009) (emphasis added; internal

citations and corresponding quotation marks omitted).

In holding that the above standard, previously articulated in the antitrust context in

*Bell Atlantic Corp. v. Twombly*, is applicable to all civil actions, the Supreme Court further

explained the principles underlying *Twombly*:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.* Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, *only a complaint that states a plausible claim for relief survives a motion to dismiss.* Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But *where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."* Fed. R. Civ. P. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth. *While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft*, 129 S. Ct. at 1950 (emphasis added; internal citations to *Twombly* and corresponding quotation marks omitted).

In sum, the Sixth Circuit's articulation of this standard of review for 12(b)(6) motions in *League of United Latin American Citizens v. Bredeson*, 500 F.3d 523, 527 (6th Cir. 2007) and *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 502 (6th Cir. 2007), has stated the following:

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and *determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face. Thus, although the factual allegations in a complaint need not be detailed, they must do more than create speculation or suspicion or suspicion of a legally cognizable cause of action; they must show entitlement to relief.*

*Gallagher v. E.W. Scripps, Co.*, No. 08-2153-STA, 2009 WL 1505649 slip op. at *5 (W.D. Tenn. May, 28, 2009) (dismissing all claims filed by plaintiffs) (internal quotation marks omitted; emphasis added).

More than bare assertions of legal conclusions or personal opinions are required to satisfy federal notice pleading requirements. While facts in the complaint are ordinarily regarded as true for purposes of determining sufficiency of the pleading, mere conclusions of the pleader are not accepted as true. *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir. 1971); *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir. 1956). Moreover, a complaint must contain either direct or inferential allegations respecting all the material elements to

7

sustain a recovery under some viable legal theory. *See Scheid* at 437; *see also Smith v. WTVF Channel 5 News*, No. 3:08-0761, 2009 WL 1322566 at *1 (M.D. Tenn. May 11, 2009) (dismissing plaintiff's complaint for failure to state a claim for which relief can be granted because it consisted almost entirely of conclusions; failed to plead facts answering the basic questions of who, what, where and when; and failed to allege any of defendant's actions caused the plaintiff to suffer any actual injury that would be compensable at law).

As set more fully below, Plaintiff's complaint in this action consists almost entirely of conclusions and does not contain enough facts to state a claim to relief that is plausible on its face for any of the relief prayed for or any other monetary relief, including reasonable attorney, filing and court cost fees. Accordingly, this Court should grant Humphrey's Motion to Dismiss and dismiss the Plaintiff's complaint with prejudice.

### RULE 12(c)

A district court applies to its determination of a Rule 12(c) motion for judgment on the pleadings the same standard applicable to Rule 12(b)(6) motions. *JPMorgan Chase Bank N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The court takes as true all "well-pleaded material allegations" of the complaint and may grant the motion only if the moving party "is nevertheless clearly entitled to judgment." *Id.* The court is not required to accept as true "legal conclusions or unwarranted factual inferences." *Id.* at 581-82. A Rule 12(c) motion must be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* at 582. If the district court fail[s] to exclude, evidence outside the pleadings, the motion is converted to a Rule 56 motion for summary judgment. *Sensations Inc. v. City of Grand Rapids*, 526 F.3d 291, 296 (6th Cir.

2008) (quoting *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006)).

**B.  Count One of the Complaint for violations of the Tennessee Uniform Trade Secrets Act should be dismissed because it fails to show a valid trade secret or a protectable business interest in Tennessee and lacks any merit.**

Wyndham Vacation Resorts, Inc. has alleged a violation of Tenn. Code Ann. § 47-25-1702 *et seq.*, The Tennessee Uniform Trade Secrets Act ("TUTSA"), by claiming that Humphrey has used Wyndham's "trade secrets" in operating the business of TOA. It has not been alleged that Humphrey violated any contract of non-disclosure, non-compete agreement or that he violated any confidential relationship as a former employee of the Plaintiff.

*The information allegedly obtained by Humphrey was not a trade secret.*

The TUTSA defines a trade secret as follows:

> "Trade secret" means information, without regard to form, including, but not limited to, technical, non-technical or financial data, a formula, pattern, compilation, program, devise, method, technique, process, or plan that;
>
> (a) derives independent economic value, actual or potential, from not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
>
> (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

This court and the courts of Tennessee have previously recognized that an employer "has a protectable business interest in it customer base." *Amerigas Propane Inc. v. Crook*, 844 F. Supp. 379, (M.D. Tenn. 1993); *Central Adjustment Bureau v. Ingram*, 678 S.W.2d 28, 35 (Tenn. 1984); *Thompson, Breeding, Dunn, Creswell & Sparks v. Bowlin* 765 S.W.2d 743,

9

745 (Tenn. Ct. App. 1988). Other legitimate business interests include trade or business secrets or other confidential information. *See Hasty v. Rent-A-Driver, Inc.,* 671 S.W.2d 471, 473 (Tenn. 1984). Courts have also recognized as protectable an employer's investment in training and educating its employees. *Id.* Accordingly, courts have come to consider, among other things, whether an employer has granted the employee access to the employer's trade or business secrets or other confidential information. *See Vantage Technology, LLC v. Cross,* 17 S.W.3d 637, 644 (Tenn. Ct. App. 2000).

The information Wyndham claims to be trade secrets are: "owner lists, owner contacts, and other owner information, sales and marketing methods, strategies, practices and information, financial information, cost and pricing information, and confidential employee information." (Compl. ¶ 11.) This information was readily ascertainable to employees and to the general public and no reasonable effort was made by Wyndham to maintain the secrecy of that information. Among other things, the Plaintiff alleges Humphrey had access to vast customer lists, information relating to their contract terms and processes for rescinding client contracts. Humphrey has stated and freely admits that he did have access to the approximately 65 clients he personally handled, but has always denied that he had access to any other information, specifically as this information was never available to him as a salesperson.

In determining whether matter is protectable as a trade secret, courts often examine the method by which the defendant acquired the information such as by stealing it or copying it. *Computer Assocs. Int'l Inc. v. Bryan,* 784 F. Supp. 982, 987 (E.D.N.Y. 1992). Humphrey did not steal or copy client lists or information regarding contract terms. His only act was to continue to maintain his customer list on his personal computer as was

10

customary for salespersons to do. Humphrey knew the timeshare market, knew the pricing structure and knew the customers and contract terms from his time and experience working as a salesperson in the timeshare industry.

In *Venture Express, Inc. v. Zilly*, 973 S.W.2d 602, 606 (Tenn. Ct. App. 1998), the Tennessee Court of Appeals examined what constituted a trade secret and held that the following information is *not* a trade secret: "(1) remembered information as to business practices; (2) the special needs of and business habits of certain customers; and (3) the employees personality and relationship which he has established with certain customers." Humphrey had knowledge of the customers, the business practices including prices, and needs of certain customers. This information falls within the exclusion to trade secret information. The Tennessee courts have considered other factors in determining trade secrets. They are: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the of the information; (4) the value of the information to the business and to its competitors; (5) the amount of money or effort expended by the business in developing the information; and (6) the ease of difficulty with which the information could properly be acquired or duplicated. *See North Atlantic Instruments Inc., v. Haber*, 188 F.3d 43, 44 C.A. 2 (N.Y. 1999); also, *Stangenberg v. Allied Distr. & Building Service Co. Inc.*, WL 7618 at 6 (Tenn. Ct. App. July 9, 1986)(citing Restatement of Torts § 757)(1939). Wyndham did not protect information about the sales techniques of timeshares, its customers, or its contract terms. Wyndham did not prohibit its customers from disclosing the terms of the contracts they had and those customers willingly volunteered this information to Humphrey and agents of TOA. Based

11

on the openness of these transactions, it is only logical that these contract terms were shared between Wyndham clients and agents of TOA, including Humphrey.

Wyndham made no secret of the price it charged its customers and the terms of the timeshare contract. As required by law, the contract terms were presented to each customer upon closing and were printed with clear and concise language. Humphrey was required to keep his customer list stored on his personal computer and at no time had access to those customers he did not service. Upon Humphrey's termination, he was at no time asked to return any Wyndham property he may have had in his possession. In fact, he was prohibited from removing anything from his cubicle and any and all property or information obtained by Humphrey after his termination was delivered to him, off Wyndham property, personally by Wyndham's then Director of Sales, Bart Bowe. There is no evidence that he used any of this information in obtaining customers and, more importantly, the information would have had no beneficial value to him because such information was readily available from the prospective clients that contacted him requesting his services. As a matter of law, free enterprise and free trade in the open market does not create liability for receiving or disclosing the information alleged in this case.

Since Wyndham cannot prove the essential elements of its claim and the complaint fails to state a claim for violations of the Tennessee Uniform Trade Secrets Act, as a matter of law, or, alternatively, the face of the complaint establishes that Humphrey is entitled to a judgment on this claim.

Therefore, Humphrey moves this Court to dismiss the claim for violations of the Tennessee Uniform Trade Secrets Act pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**C.** **Count Two of the Complaint should be dismissed because the Plaintiff lacks authority or standing to bring an action for the unauthorized practice of law.**

Wyndham Vacation Resorts, Inc.'s second claim alleges that Humphrey, through his website and business, The Owners' Advocate, has engaged in the unauthorized practice of law.[1] Wyndham has not – and cannot – state[d] a claim for relief. The applicable statute, Tenn. Code Ann. § 23-3-103 (the "statute"), grants the authority to bring an action against a person engaged in the unauthorized practice of law to the Tennessee Attorney General and Reporter. Tenn. Code Ann. § 23-3-10(c)(1). The statute has also granted a private right of action only to those who paid money to an unauthorized practitioner for services rendered, and it required that the action be brought within two years of payment. Tenn. Code Ann. § 23-3-103(b) (2005); *accord Akins v. Edmondson*, 207 S.W.3d 300, 308 (Tenn. Ct. App. 2006). Accordingly, the statute did not grant a right of action to a person or corporation, such as Wyndham, who did not pay money for services to an unauthorized practitioner.[2] Moreover, the limitation of a private cause of action to those who paid money for legal services is consistent with the statutes purpose: "to protect the public from incompetent persons offering their services for consideration." *In re Clemmons*, 151 B.R. 860, 863 (Bnkr. M.D. Tenn. 1993). Because Wyndham paid no consideration to Humphrey or The Owners'

---

[1] Humphrey strongly disputes that he was, or is, engaged in the unauthorized practice of law. Because this is a motion to dismiss, however, Humphrey's arguments in this Motion are limited to whether Wyndham can bring an unauthorized practice of law claim, and does not address the substantive merits of the claim.

[2] Indeed, if that were not the case, those who did not pay for services would be treated more favorably than those who did pay for services. Because the statute of limitations was tied to the date of payment, those who paid for services would be required to bring an action within two years, but those who did not pay for services would not be subject to any limitations period.

Advocate, and because neither Humphrey, nor The Owners' Advocate, provided services to Wyndham, they had no need of protection from Humphrey. Accordingly, because Wyndham did not pay Humphrey, or The Owners' Advocate, for any services, it cannot bring a claim against him.

Therefore, Wyndham's second claim, for the unauthorized practice of law, fails to state a claim for relief, and Humphrey moves this Court to dismiss the claims for the unauthorized practice of law pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### D. Count Four of the Complaint for Intentional Interference with Business Relations should be dismissed because it lacks any merit.

The tort of interference with business relations only protects existing *noncontractual* relationships or *prospective* contractual relationships. To state a claim for intentional interference with business relations, a complaint must allege that: (1) there was an existing business relationship between the plaintiff and specific third persons; (2) the defendant had knowledge of the relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant intended to cause the breach or termination of the business relationship; (4) the defendant acted with an improper motive or by improper means; and (5) the plaintiff sustained damages resulting from the tortious interference. *Trau-Med of Amer., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002); *Freeman Management Corp. v. Shurgard Storage Centers, LLC*, 461 F. Supp. 2d 962, 968-69 (W.D. Tenn. 2004).

The tort of intentional interference with business relations is an extension of the tort of intentional interference with contractual relations. *Trau-Med*, 71 S.W.3d at 699. As such, it provides an avenue of relief for one whose *noncontractual* business relationship

14

with another has been wrongfully interfered with by a third party. *Id.* at 701n.4; *Watson's Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 175 (Tenn. Ct. App. 2007).

> **1. The existence of valid contracts between plaintiff and third parties entitles Humphrey to dismissal of the Complaint or to a judgment as a matter of law on the claim for interference with business relations.**

In *Trau-Med*, the Tennessee Supreme Court observed that the "tort of interference with *noncontractual* business relationships had emerged as an extension of the well-known principles establishing liability for interferences with *contractual* relations." *Trau-Med*, 71 S.W.3d at 699 (emphasis added)(citing *Nelson v. Martin*, 958 S.W.2d 643, 645 Tenn. 1997), *overruled by Trau-Med*, 71 S.W.3d at 701).[3] In *Nelson*, the court reiterated that the policy consideration underlying the tort of interference with contractual relationships is the importance of protecting the integrity of the contracts, which is fundamental to the preservation of a sound market economy. *Nelson*, 958 S.W.2d at 645-46. In *Nelson*, the court concluded that this policy reason did "not support a tort designed to protect *prospective* contracts and relationships." *Id.* at 646 (emphasis added).

In both *Nelson* and *Trau-Med*, the court expressed concern that extending to noncontractual relationships the same protection afforded by law to contractual relationships would impede free competition by chilling the business activities of those individuals engaged in legitimate competition. *Trau-Med*, 71 S.W.3d at 699; *Nelson*, 958 S.W.2d at 646. To address this concern, the court in *Trau-Med* required that one asserting a claim for interference with "an existing business relationship" or "a prospective relationship" prove that the defendant acted with an improper motive or by improper

---

[3] *Trau-Med* did not expressly overrule *Nelson*, but is recognized as having implicitly done so. Watson's *Carpet and Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 174 (Tenn. Ct. App. 2007).

means. *Trau-Med*, 71 S.W.3d at 701; *Watson's Carpet*, 247 S.W.3d at 176; *Freeman Management*, 461 F. Supp. 2d at 640.

These decisions reflect that the Tennessee Supreme Court has historically viewed contractual and noncontractual relationships involving substantively separate issues and policy considerations, and as requiring different treatment. *Watson's Carpet*, 247 S.W.3d at 174 ("The question presented to the Supreme Court in *Trau-Med* was whether Tennessee would recognize a claim based on interference with *non-contractual* business relationships and, if so, what proof was necessary to sustain such a claim.")(emphasis added); *Freeman Management*, 461 F. Supp. 2d at 640 ("[T]he Tennessee Supreme Court has long held that, in the absence of an actual contract, a competitor is privileged to attempt to advance its own business interests at the expense of a competitor's, so long as the method of such competition is not improper.")(citing *Polk & Sullivan, Inc. v. United Cities Gas Co.*, 783 S.W.2d 538, 543 (Tenn. 1989)).

Accordingly, the tort of intentional interference with business relations does not extend to existing *contractual* relationships, but only to "prospective contractual relations" and any *"continuing business or other customary relationship not amounting to a formal contract." Trau-Med*, 71 S.W.3d at 701 n.4 (adopting and quoting Restatement (2d) Torts § 766B comment c) (emphasis added by court in *Trau-Med*).[4]

---

[4] Section 766B states: "One who intentionally or improperly interferes with another's *prospective* contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the *prospective* relation or (b) preventing the other from acquiring or continuing the *prospective* relation" (Emphasis added).

The complaint alleges that "Wyndham had existing contractual relationships with third parties that were affected as a result of Defendant's actions" (Compl. ¶ 65.)[5] Therefore, the complaint fails to state a claim for intentional interference with a noncontractual business relationship with third parties, or, alternatively, it is clear from the face of the complaint that Humphrey is entitled to a judgment on this claim as a matter of law.

### 2. The complaint fails to allege facts giving rise to a claim for intentional interference with business relations.

#### a. Intent

To prove that Humphrey engaged in activity designed to induce third parties to terminate their relationships with plaintiff, plaintiff must show that Humphrey's "state of mind" was to cause this result. *JIT Concepts, Inc. v. Shelby County Healthcare Corp.*, 358 F. Supp. 2d 678, 686 (W.D. Tenn. 2005); *see Amerigas Propane, Inc. v. Crook*, 844 F. Supp. 379, 389 (M.D. Tenn. 1983)(the requisite intent existed because defendants knew or should have known that breach was substantially certain to occur)(citing Restatement. § 766 comment j). *See also* Restatement (2d) of Torts § 766 comment h ("the essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.")[6]; Restatement (2d) of Torts § 766B comment d (cross referencing to § 766, comment j, for standard for establishing intent to interfere with a prospective contractual relationship). *See generally*, Stephen W. Feldman, Tortious

---

[5] While there are 2 paragraph 65's on page 13 of the Complaint, Humphrey refers here solely to the first paragraph 65, and not to the second.

[6] No Tennessee court has expressly adopted the standard for "intent" set forth in § 766, but, in *Willard v. Claborn*, 220 Tenn. 501, 502, 419 S.W.2d 168, 169 (1967), the Tennessee Supreme Court held that "[t]he law prohibiting the unlawful interference with contractual relations is set forth in Restatement of Torts § 766."

Interference with Contract in Tennessee: A Practitioner's Guide ("Feldman"), Memphis L. Rev. 281, 301 (2001)("[A] defendant acts intentionally when he desires the act to cause the breach or when he is substantially certain that his actions will result in a breach.")[7]

The complaint alleges that by "willful actions", Humphrey interfered with the relationships between Plaintiff and third persons. (Compl. ¶ 67.) Liberally construed, the complaint alleges that third persons whom contacted Humphrey seeking his services had the effect of interfering with the relationship between these persons and Plaintiff. The complaint does not allege or acknowledge, however, that these existing third persons with valid contracts with Plaintiff were often already in breach of their contractual responsibilities with Plaintiff, and were simply seeking information and assistance from Humphrey. *See Overnight Transp. Co. v. Teamsters Local Union No. 480*, 2004 WL383313 at *13 (Tenn. Ct. App. Feb. 27, 2004), *application for perm. to appeal granted on other grounds and aff'd*, 172 S.W.3d 507, 508 (Tenn. 2005)(complaint alleging that defendants' conduct 'was intentional and interfered with' the business relationship, but which did not allege that defendants "intended to cause" the interference, failed to state a claim for relief pursuant to Tenn. R. Civ. P. 12.02(6), the counterpart to Fed. R. Civ. P. 12(b)(6)).

### b. *Improper Motive or Means*

Assuming that Wyndham can prove that Humphrey intended to cause third persons to terminate their relationship with Plaintiff, it *must allege and prove* that Humphrey acted with an improper motive or improper means. *Trau-Med*, 71 S.W.3d at 701; *Watson's Carpet*, 247 S.W.3d at 176; *Freeman Management Corp.*, 461 F. Supp. 2d at 640. (emphasis added).

---

[7] This standard is consistent with *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 900 (Tenn. 1992), where it was held that a person acts "intentionally" for the purposes of awarding punitive damages when he has the "conscious objective or desire to engage in the conduct or cause the result." *See* Feldman at 302.

The requirement that the defendant have acted with an improper motive or caused the termination of the business relationship by improper means is "[t]he most significant difference between this tort and that of inducement of breach of contract". *Freeman Management*, 461 F. Supp. 2d at 640.

To prove that Humphrey acted with an improper motive, Plaintiff must establish that Humphrey's "predominant purpose" in assisting these third persons was to injure it. *Trau-Med*, 71 S.W.3d at 701 n.5. To prove, alternatively, that Humphrey acted by improper means, Plaintiff must establish that Humphrey's act of assisting these third persons was "illegal", "independently tortious", violated "an established standard of trade or profession, or otherwise involved "unethical conduct, such as sharp dealing, overreaching, or unfair competition[]". *Id.*; *Atchley*, 224 F.3d. at 540. Wyndham has not pleaded nor can they prove any of these elements.

In *Freeman Management*, the district court determined that a complaint alleging that the defendant's actions "caused" the third party to "breach its fiduciary duties" to the plaintiff, were "motivated by malice", and "were taken solely for [the] purpose of coercing" conduct which resulted in the interference failed to allege that the defendant's "predominant motivation" was to interfere with the plaintiff's business relationship with the third party. *Freeman Management*, 461 F. Supp. 2d at 641. The district court reasoned that "the only reasonable inference to be drawn" from these allegations was that the defendant "was motivated purely by its own business interests, *in the pursuit of which it caused incidental harm to Plaintiffs.*" *Id.* (emphasis added).

As for improper means, the district court in *Freeman Management* determined that none of the complaint's allegations amounted to "statutory violations, violence, bribery,

fraud, misrepresentation, breach of a fiduciary relationship or any other overtly unethical conduct of the type the Tennessee Supreme Court seemed to have in mind in *Trau-Med.*" *Id.* Accordingly, the district court dismissed the claim pursuant to Rule 12(b)(6). *Id.* at 642.

Since this complaint alleges that valid contracts existed between the Plaintiff and third parties, it fails to state a claim for interference with noncontractual business relations as a matter of law, or, alternatively, the face of the complaint establishes that Humphrey is entitled to a judgment on this claim.

Therefore, Humphrey moves this court to dismiss the claim for Intentional Interference with Business Relations pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### E. Count Five of the Complaint for Libel should be dismissed because it lacks any merit.

To establish a claim for defamation, a plaintiff must show that the defendant published a statement that caused injury to the plaintiff with knowledge that the statement was false, with reckless disregard for the truth of the statement, or with negligence in failing to ascertain the truth of the statement. *Hibdon v. Grabowski*, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005). Additionally, if the plaintiff is a public figure, such as Wyndham, in addition to the basic elements of defamation, one *must also prove by clear and convincing evidence that the actionable statement was made with "actual malice,"* which requires that the statement was made with knowledge that it was false or with reckless disregard of its accuracy. *Id.* at 58. (emphasis added). A plaintiff bears the burden of proving that a false and defamatory statement was made. *Wagner v. Fleming*, 139 S.W.3d 295, 302 (Tenn. Ct. App. 2004); To state a cause of action, the declaration must set out the words and aver such extrinsic matter as may be necessary to show they are actionable. *Lackey v. Metropolitan*

*Life Ins. Co.*, 174 S.W.2d 575 (Tenn. Ct. App. 1943, cert. den.); *see also*, *Millsaps v. Millsaps*,

1989 WL 44840 (Tenn. Ct. App. 1989) at 4; *see also*, *Street v. National Broadcasting Co.*, 512

F. Supp. 398 (E.D. Tenn. 1977)(appealed 645 F.2d 1227)(6th Cir. 1981): "Tennessee law

requires a plaintiff in a libel action to set forth the exact language claimed to be defamatory,

to put the publisher of it on notice of that which he is called upon to defend." *Id.* at 411. In

any case, one's right of recovery is limited to the words sued for and set out in the

declaration. *Lackey* at 581. Although *Lackey* specificity requirements have been relaxed,

the substance of the slanderous utterance *must still be pleaded. Handley v. May*, 588 S.W.2d

772 (Tenn. Ct. App. 1979, perm. app. den.)(emphasis added). The complaint must also

allege the time and place of such utterance. *Millsaps, supra* at 4.

To state a claim for libel in Tennessee, one must establish that: (1) a party published

a statement; (2) with knowledge that the statement is false and defaming to the other; (3)

with reckless disregard for the truth of the statement or with negligence in failing to

ascertain the truth of the statement. *Sullivan v. Baptist Memorial Hosp.*, 995 S.W.2d 569, 572

(Tenn. 1999); *See*, Restatement (2d) of Torts § 580B (1977); *Press, Inc. v. Verran*, 569

S.W.2d 435, 442 (Tenn. 1978). "Under Tennessee law, a plaintiff is required to prove actual

damages in all defamation cases." *McWhorter v. Barre*, 132 S.W.3d 354,366 (Tenn. Ct. App.

2003)(*quoting, Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997)).

"In defamation law only statements that are false are actionable, truth is, almost

universally, a defense." *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 645 (Tenn.

2001). In making the determination of whether a communication is capable of being

understood as defamatory, "the courts of this state have consistently followed prevailing

common-law practice of construing the allegedly libelous words in their 'plain and natural'

import." *McWhorter v. Barre*, 132 S.W.3d at 364 (Tenn. Ct. App. 2003)(*quoting, Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 n.7 (Tenn. 1978)). When the truth is so near to the facts published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain the charge of libel, no legal harm has been done. *Windsor v. Tennessean*, 654 S.W.2d 680, 686 (Tenn. Ct. App. 1983), cert. denied 465 U.S. 1030 (1984).

> [F]or a communication to be libelous, it must constitute a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element 'of disgrace'. *McWhorter*, 132 S.W.3d at 364 (Tenn. Ct. App. 2003)(*citing, Stones River Motors, Inc. v. Mid-South Publ'g Co., Inc.*, 651 S.W.2d 713, 719 (Ten. Ct. App. 1983)(*quoting*, W. Prosser, *Law of Torts*, § 111, p. 739 (4th Ed. 1971)).

Having said all of this, the complaint is completely devoid of any substance of the alleged defamatory writings let alone any actual statements made by Humphrey. Far from including any language believed to be defamatory, Plaintiff does not even provide a general description of the language. Wyndham's complaint has asserted insufficient grounds for any alleged defamation on the part of Humphrey. Apart from the questionable reliability of whether or not any assertion of fact was allegedly made, there are no actual or provable damages to Wyndham in this matter as required by Tennessee law. In addition to the absence of damages, we should evaluate the alleged specific statements. Wyndham alleges that Humphrey has posted "statements on TOA's website [that] concern the business practices of Wyndham" and that these statements are "false and defamatory" (Compl. ¶ 72.) Wyndham has failed to describe these statements or attach any evidence to the pleadings, and there is no proof of actual malice. Therefore, since there is no proof of any intentional

22

misrepresentation on Humphrey's part and the statements which Wyndham alleges Humphrey made, yet failed to provide, could be found by a reasonable finder of fact to be truthful, Humphrey moves this court to dismiss the claim for libel pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

### F.  Count Six of the Complaint for Misappropriation should be dismissed because it lacks any merit.

Plaintiff has alleged that Humphrey "utilize[d] Wyndham's name and likeness on [TOA's] website". (Compl. ¶ 81.) And, that Humphrey has misappropriated the Wyndham name and likeness for his "commercial advantage". (Compl. ¶ 84.) Although these allegations are stated in the complaint, there is not a single pleaded fact to support this.

The common-law right of privacy protects against four types of invasion of privacy: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) *appropriation, for the defendant's advantage, of the plaintiff's name or likeness.* (Restatement (2d) of Torts § 379)(emphasis added). With respect to the fourth of these causes of action, which Defendant has pleaded, Humphrey contends that his use of the Plaintiffs name, if at all, is protected as free speech under the First Amendment to the Constitution because it concerns a matter of legitimate public concern. Humphrey has stated that he maintains the TOA website for both commercial and informative purposes. All of the information presented on the site is either opinion of Humphrey, or facts which are provable as true.

The tort of appropriation has, in the past, become so far reaching, that other courts (that recognize this tort) have uniformly held that the First Amendment bars appropriation liability for the use of a name or likeness in a publication [or website] that concerns

matters that are newsworthy or of legitimate public concern. *See Battaglieri v. Mackinac Center for Public Policy*, 680 N.W.2d 915 at 919 (Mich.App. 2004); *see, e.g., Dickerson & Assoc., LLC v. Dittmar*, 34 P.3d 995, 1003 (Colo., 2001); *Haskell v. Stauffer Communications, Inc.*, 26 Kan.App.2d 541, 545, 990 P.2d 163 (1999); *Lane v. Random House, Inc.*, 985 F. Supp. 141, 146 (D.D.C., 1995). "If a communication is about a matter of public interest and there is a real relationship between the plaintiff and the subject matter of the publication, the matter is privileged." *Haskell, supra*, at 545, 990 P.2d 163. The privilege exists because dissemination of information regarding matters of public concern is necessary for the maintenance of an informed public. *Pierson v. News Group Publications, Inc.*, 549 F. Supp. 635,639 (S.D.Ga., 1982). Wyndham is a seller of timeshares and therefore has a direct connection to the newsworthy topics discussed on the TOA website.

Additionally, to be actionable, a defendant's use of plaintiff's likeness must be "for a predominantly commercial purpose . . . The use must be mainly for purposes of trade, without a redeeming public interest, news, or historical value." *Battaglieri*, 680 N.W.2d at 920 (citations omitted). "The question whether a publication is sufficiently a matter of public interest to be protected by the privilege is ordinarily decided by the court as a question of law." *Id.* at 920 (citations omitted). A publication, such as a website, that has "commercial undertones" may still be protected if it concerns a legitimate matter of public concern. *See e.g., Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 883 (C.A.9, 1988). Humphrey freely admits that he has reposted widely circulated news articles and videos relating to timeshare on the TOA website for the purposes of informing site visitors and potential customers.

Furthermore, this cause of action is similar to a defamation claim and, as with such a claim, the First Amendment requires that public figure plaintiffs, such as a world-wide corporation like Wyndham, *must* prove actual malice with "convincing clarity", or by clear and convincing evidence. *See Brasfield v. Dyer*, 2010 WL 98880 (Tenn. Ct. App 2010)(citations omitted). Stating that "the law in Tennessee . . . [is that] the proof of the basis of defamation . . . *must be made by clear and convincing evidence*[]". *Id.* (emphasis added).

It is clear from the pleadings and the facts already known to the Court that Humphrey has not published any facts or opinions specifically regarding the Plaintiff on the TOA website and Plaintiff cannot prove otherwise. Plaintiff has failed to show this Court with any level of proof or in its pleadings that Humphrey has done so and, therefore, the complaint fails to state a claim for misappropriation and, as a matter of law, or, alternatively, the face of the complaint establishes that Humphrey is entitled to a judgment on this claim. Therefore Humphrey moves this Court to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6) or , alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

G.      **Count Seven of the Complaint for Trespass should be dismissed because it lacks any merit.**

While Plaintiff does allege the legal elements of trespass, it fails to allege any *facts* giving rise to a reasonable "knowledge and belief" that the Defendant entered onto property owned by Plaintiff. It is well settled that an "invasion" must constitute an interference with possession in order to be actionable as a trespass. Plaintiff alleges that Defendant "entered Wyndham's property in order to distribute brochures to parties with whom Wyndham has a contractual relationship." (Compl. ¶ 89.) While it is plausible that

this brochure was distributed by an agent of TOA, there is absolutely no mention or proof that Humphrey actually entered onto the property to accomplish this. Consequently, absent any proof to the contrary, the trespass claim should be dismissed. Therefore, Humphrey moves this court to dismiss the claim for trespass against him pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**H.     Count Eight of the Complaint for Conspiracy should be dismissed because the Defendant has immunity under the Intracorporate Conspiracy Immunity Doctrine.**

The Tennessee Supreme Court defines an actionable civil conspiracy as "a combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." *Trau-Med*, 71 S.W.3d at 703(citing *Dale v. Thomas H. Temple Co.*, 186 Tenn. 69, 87, 208 S.W.2d 344, 353 (1948). In addition, civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy. *Morgan v. Brush Wellman, Inc.*, 165 F. Supp 2d 704, 721 (E.D. Tenn. 2001)(citing *Tenn. Publ'g Co. v. Fitzhugh*, 52 S.W.2d 157, 158 (Tenn. 1932)). Plaintiff in this case alleges that Humphrey acted in concert with co-defendants TOA and Metko to "interfere with Wyndham's business relations and inducing their customers to breach their contractual agreements." (Compl. ¶ 97.) However, the court in *Trau-Med* has made it clear that "there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, *each acting within the scope of their employment. Id.* at 703-4 (emphasis added by court in *Trau-Med*). "As long as the agent is acting within

the scope of his or her authority, the agent and the corporation are not separate entities and cannot be the sole parties to a conspiracy. *See Day v. General Elec. Credit Corp.*, 15 Conn.App. 677, 546, A.2d 315, 318-19 (1988). "Therefore, for a claim of intracorporate conspiracy to be actionable, the complaint *must allege that corporate officials, employees, or other agents acted outside the scope of their employment and engaged in conspiratorial conduct to further their own personal purposes* and not those of the corporation." *Trau-Med*, at 704 (emphasis added).

Nowhere in Wyndham's complaint does it allege that anyone, including Humphrey, acted outside the scope of his employment. The court in *Trau-Med* clearly reiterates the requirement of a complaint to at least "contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial". *Donaldson v. Donaldson*, 557 S.W.2d 60, 61 (Tenn. 1977). Because all acts of the corporation's agents are attributed to the corporation itself, the intracorporate conspiracy immunity doctrine applies in this case as well. Wyndham has failed to make one single allegation that Humphrey acted outside the scope of his employment with TOA and therefore, based on this, the complaint fails to state a claim for civil conspiracy and should be dismissed, or alternatively, it is clear from the face of the complaint that Humphrey is entitled to a judgment on this claim as a matter of law.

## V.    CONCLUSION

For the reasons set forth herein, Counts One, Two, Four, Five, Six, Seven, and Eight of the Plaintiff's Complaint must be dismissed.

DATED this _29_ day of January, 2010.

Respectfully submitted,

*/s/ David S. Humphrey*
David S. Humphrey
5318 Tidwell Hollow Road
Nashville, Tennessee 37218
Tel: (866) 644-7776, ext. 212

*Pro Se*