**Larry and Jamecia Jorenby**
**5606 Hopewell Road**
**Springfield, TN 37172**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

*Coded CAD*
*2/24/10*

February 18, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00026-0643622, dated 10-23-2006 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Larry and Jamecia Jorenby

**EXHIBIT**
Composite

GENERAL AFFIDAVIT

State of _TN.
County of _Robertson

Before the undersigned, an officer duly commissioned by the laws of **Tennessee**, on this _____ day of _____, 2010, personally appeared **Larry Jorenby**, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

In October of 2006, we received an invitation to Wyndham Resorts in Williamsburg, Virginia. We attended a timeshare presentation, and were subject to numerous material misrepresentations during the presentation. We were told that because we held VIP status, we could go anywhere at any time we desired, without advance notice. This was a material misrepresentation. We have never been able to use our timeshare despite repeated attempts at booking reservations. We have attempted to book reservations many times, at many different desirable locations, and each time we have been told that there is no availability at our desired resort, at the time we wish to travel. This harsh reality is in stark contrast to the false promises of vacation flexibility made by the sales representatives during the timeshare presentation.

We were also told during the presentation that our maintenance fees would remain low. However, they have risen in an exorbitant fashion, annually, since our purchase. We wouldn't have made the purchase if we had known that the maintenance fees would be subject to such dramatic inflation.

During the presentation, we were told that we were purchasing a timeshare in Williamsburg. However, months after our purchase we discovered that we had purchased a timeshare in Atlantic City, New Jersey. We wouldn't have agreed to purchase a timeshare in Atlantic City.

We were falsely promised bonus points which we later found to be limited in use and that became invalid before we could use them, despite many attempts to utilize them for vacations.

There are numerous clerical mistakes in the contract as well. Several times in the contract, the contract states that we reside in New Jersey, and not Tennessee. The contract wasn't properly executed, which should enact the rescission of the contract, along with the many material misrepresentations applied to the presentation by Wyndham sales representatives.

_Larry Jorenby_
Signature of Affiant

Sworn and subscribed before me this _12_ day of _Feb_, 2010.

_Kellie Saylor_
Notary Public

My Commission Expires:

_7-25-12_

KELLIE SAYLOR
STATE OF
TENNESSEE
NOTARY
PUBLIC
ROBERTSON COUNTY



**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

February 18, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

      RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00123-0803751, dated 02-21-2008 and no longer intend to make further payments on same.   The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party. We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Ronald and Candace Lawson

GENERAL AFFIDAVIT

State of Arizona
County of Maricopa

Before the undersigned, an officer duly commissioned by the laws of ARIZONA, on this 12TH day of FEBRUARY, 2010, personally appeared Ronald L. Lawson and Candace K. Lawson, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

In April 2007, I attended a NASCAR Race event in Avondale, Arizona. While there I filled out a request to participate in what was represented to me to be a drawing for a chance to take a ride in a NASCAR race car that was called "The Richard Petty Driving Experience". In May of 2007 I was contacted by phone and told I had won the opportunity for an all expense paid trip to Las Vegas. As a condition of accepting this "gift" I was told that my wife and I must attend a presentation described as an opportunity to hear about a resort in Las Vegas.

I was told the presentation would be approximately ninety minutes. The actual meeting actually took over four hours. We were picked up at the hotel by a limo and taken to the timeshare location in Las Vegas. After being paired with a sales representative, Mr. Michael A. Gallo, and touring the resort facility in Las Vegas, my wife and I expressed that we were firmly disinterested in the purchase of a timeshare.

Mr. Gallo then proceeded with his sales presentation which included numerous deliberate misrepresentations, exaggerations and untruthful statements. These will be listed below. In addition to Mr. Gallo, we talked to at least two of his superiors, one of which claimed to be a regional Vice President. We felt immense and undue pressure to make a purchase because of high-pressure sales tactics, and eventually, after trying to leave several times, felt as if we couldn't leave the presentation without making a purchase.

When we explained that we owned summer home in Oceanside, California he said that Wyndham Resorts had a brand new resort on the beach in Oceanside. Mr. Gallo claimed that while this resort was in very high demand, he may be able to get us in a unit there. After leaving the room and consulting with his Vice President we were told they had contacted their Headquarters seeking permission to sell us a Timeshare at the Oceanside resort. After about a half hour they reported back that they had permission. This was a material misrepresentation; there are many available units at this timeshare resort, and no HQ permission is needed to sell a customer a timeshare there. Similar units are available daily to those interested. The "call to headquarters" was a deliberate sales ploy designed to make us feel as if we had the opportunity to purchase something that was of high value and in short supply.

We were told that the Oceanside property was a very good investment because it was on the beach in California. Furthermore, we were told that the value would increase because of an imminent and aggressive revitalization plan for the beachfront area in Oceanside. We relied on these material misrepresentations when making the decision to purchase the timeshare. We later discovered that timeshares do not gain value, they lose value; our timeshare is worth only a fraction of our original purchase price, and many similar timeshares are listed on the open market for incredibly low amounts.

We explained that we have a small dog with which we enjoy traveling. We were told by Mr. Gallo that bringing a small dog to our Wyndham timeshare would be acceptable. We later found out that this is absolutely untrue. No Wyndham resort anywhere will allow us to stay with a dog regardless of its size.

We were falsely assured that it would be easy to sell our unused points for a profit. We later

discovered that this is incredibly difficult (if not impossible). We were also told that if we didn't purchase on that day, the offer would expire. We later found this to be a material misrepresentation, as similar deals are offered daily.

We were told that we could use our points to purchase airfare, cruises, and car rentals. When we pressed the representatives to explain the conversion ratio, we were told not to worry, as we would be presented with considerable discounts when converting our points towards the purchase of these travel methods. However, after our purchase, we discovered that it was far cheaper to book these travel forms independent of our timeshare ownership than it was to convert points and pay fees on top of that conversion.

We were told that purchasing more points, which we did, would grant us easy access to any date we wanted, as well as granting us more additional benefits. However, when trying to book reservations, we were amazed to discover that while we were forced to book reservations many months in advance in order to be able to secure reservations (or else be subject to a claim of no availability), non-owner friends of ours and all other non-owners could book reservations at the same resort with less than a week's notice. We wouldn't have purchased the timeshare if we had known our ownership would limit our vacation flexibility instead of enriching it.

We have attempted to sell our timeshare, but have not had any offers. We have received calls from timeshare resellers who want a non-refundable commission before they attempt to sell our timeshare, but when we have offered to lower the asking price of our timeshare by $10,000 and not pay the commission fee (allowing them to keep the supposed $10,000 extra profit), they have hung up the phone. There is no market for the resale of timeshares at anything close to the purchase price.


_____
Signature of Affiant


_____
Signature of Affiant


Sworn and subscribed before me this _12_ day of _Feb._ , 2010.

_____
Notary Public

My Commission Expires:

_12/03/2010_

OFFICIAL SEAL
PATRICIA WEGEHAUPT
Notary Public - State of Arizona
MARICOPA COUNTY
My Comm. Expires Dec 3 2010

**Julia C. Mason**
**216 Dixon Street**
**Marion, SC 29571**

*Coded C+D*
*2/24/10*

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

February 17, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

   RE: **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that I seek to terminate purchase agreement # 00028092763, dated 04/05/2008 and no longer intend to make further payments on same. The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to me by your sales staff AND upon these representations I reasonably and justifiably relied. Later, to my detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999). When fraud occurs, a contract is rendered voidable by the defrauded party. I am that defrauded party.

Therefore and in light of these circumstances, I demand that you do the following:

- Contact me immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, I will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved I, in addition to the above, will begin my intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. I will also seek a voice in both the Media and on the World Wide Web. I will not give up and am determined to prevail.

**Govern yourself accordingly.**

/s/Julia C. Mason

GENERAL AFFIDAVIT

State of _South Carolina_
County of _Marion_

Before the undersigned, an officer duly commissioned by the laws of **South Carolina**, on this
_17th_ day of _Feb_, 20_09_, personally appeared **Julia Christina Mason**, who
makes this his/her statement upon oath and affirmation of belief that the following facts set forth are
true and correct to the best of his/her knowledge:

In April of 2008, I had recently flown in from Phoenix, Arizona, where I had spent a grueling weekend
in 3rd year residency for my Doctoral program with the University of Phoenix. I arranged to go to
Myrtle Beach the following weekend to relax and try and refocus on my studies. Ultimately, I just
wanted to be alone with no family other than my parents or friends contacting me. I knew beforehand
that I would be in this frame of mind and made arrangements to accept an invitation from Wyndham
Vacation Resorts via the mail. When I arrived in Myrtle Beach I was treated very well by the resort
staff and given all the privacy I wanted and needed. I went to their presentation and toured their
properties.

I gave into their pressures, which, by the way, felt really positive. I felt really good about being there.
I felt like these people (the resort staff and sales personnel) really wanted me there and I had never
felt that before. I agreed to the monthly payment of approximately $360 for the $13,000 mortgage
on the timeshare. All of a sudden, after making the purchase, I was offered apple juice in a
champagne glass, cheese and fruit, as well as all kinds of well wishes. I felt I had done something
really special. I wanted the timeshare to use for my graduation celebration with my family. I wanted
to give my family something back for all they had sacrificed for me over the years.

The representatives told me I was investing in an endless vacation for myself, as well as for family
and friends. I was promised the best deal because I was 'in the right place at the right time.' I was
assured that I could rent or sell my timeshare for profit. These were material misrepresentations
made to me, which I later found to be untrue. After researching timeshare values, I have found that I
can not possibly rent or sell the unit for any amount of money, much less at a profit.

In November of 2008, I planned for a weekend getaway alone for some peace and quiet. At
the last minute I had to cancel, so I gave my weekend to an acquaintance. She came back raving
about what a wonderful time she and her children had. So I made plans to go between Christmas and
New Year's Eve. When I arrived to the resort, I was placed in an isolated tower. I saw no one until
after I had been there for two days. I remember the stench of garbage and maintenance personnel
knocking about and shouting at each other during the early morning hours. The cushions on the sofa
were warped, the mirror in the master bedroom was cracked.

I went to the front desk to complain about the condition of the suite. I was directed to what I later
realized was a sales presentation. Only the representative did not take me to the presentation: he
took me to look at some suites. I must have followed this man all over the resort before we finally sat
down to talk. I made my complaints, and he told me I deserved much better treatment than this. It
was then he told me that he would have my mortgage reduced by decreasing my points because I had
not used enough of them that year. This would also decrease my payments. He also told me he
would personally see about repairs being done to my suite after I signed the complaint forms. When I
arrived home, I realized that the forms I signed were a second timeshare mortgage, and not the
reduction in points I had been told. The sales person had lied outright about what I was signing. This
was a material misrepresentation made to me at the time of sale, upon which I had relied when I
signed these documents. I would not have signed the papers if I had been aware that I was
purchasing more points, and not reducing my current number of points.

When I talked to resort staff regarding this, I was told I had signed a binding document which I could not legally walk away from. There was no mention of my legal right to rescind this contract. I was in college and the only income I had was from substitute teaching; I was stuck with a $35,000 timeshare mortgage and no idea where to turn for help. I kept thinking that if I got a full-time teaching position then maybe I could handle the mortgage payments.

I called Wyndham in May of 2009 and explained my situation; their solution was to combine the two mortgages into one payment. I agreed to it because I saw no other options. I procured a job in the summer of 2009 teaching special needs children, but was invited to resign one month after the first day of school. By November of 2009, I had no more money. I am living with my parents and if not for them, I would be in a homeless shelter somewhere, or possibly worse. It feels like I have been living just for this timeshare. This is a nightmare and it must end somewhere.

Signature of Affiant

Sworn and subscribed before me this _17th_ day of _feb_ , 2009.

Notary Public

My Commission Expires:
My Commission Expires December 28, 2016

**Heidi and Randy Zechzer**
**North 101 Englehardt Road**
**Watertown, WI 53098**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

*Codeel C4D*
*2/24/10*

February 16, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00019-0724302, dated 10-25-2007 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.    Later, to our detriment, these very representations were found to be completely untrue.  *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Heidi and Randy Zechzer

GENERAL AFFIDAVIT

State of _____Wisconsin_____
County of __Dodge____

Before the undersigned, an officer duly commissioned by the laws of **Wisconsin**, on this _11___
day of _February_____, 2010, personally appeared **Randy and Heidi Zechzer**, who makes this
his/her statement upon oath and affirmation of belief that the following facts set forth are true and
correct to the best of his/her knowledge:

We bought into the Wyndham timeshare in 2006 after purchasing 105,000 biennial points. When we
arrived at our initial ninety minute meeting at the Wilderness Resort in Wisconsin Dells, Wisconsin, we
were there for four hours. We felt immense pressure due to inappropriate comments concerning the
future welfare of my children, who were in attendance at the meeting. We were told that if we wanted
the best for our children, we would purchase the timeshare. We wanted to leave the presentation, but
felt that we couldn't leave the presentation without making a purchase.

We were told that it would be easy to pick up and leave for a short vacation at any time by simply
calling the reservations department and booking a vacation. However, we later found that we would
have to call months in advance to be eligible for booking vacations. We also discovered that there are
fees attached to phone reservations. We relied on the material misrepresentation of the ease with
which we might make reservations. Since we are both business owners who can only plan a few
weeks in advance, this was paramount to our decision to purchase the timeshare.

We were told at the time of purchase that our home resort was new. However, we later discovered
that it was merely remodeled. We went on our first family vacation to Nashville in October, 2007. We
had barely settled in when a representative came to our room to speak with us. She said that they
wanted to meet with us to see how everything was going; she never once mentioned that we were in
the midst of another sales presentation. We would have asked her to leave had we known that it was
a sales presentation.

Our Nashville representative told us that we would be able to rent out our timeshare if we were not
able to use it at any given time and that we should charge $10 for each 1,000 point we rented.
However, we've never been successful in renting our time for even close to that amount. We were
also told that we would be able to let family and friends use our timeshare in our stead. However,
when attempting to do so, we found that there were applicable fees to this action of which we hadn't
been informed.

During the presentation, we showed concern about the maintenance fees. We were told to open up a
Wyndham Rewards Credit Card, which we were told would eliminate some of the fees if used to pay
the fees each month. However, this card hasn't saved us anything. We relied on these material
misrepresentations when making the decision to purchase the timeshare.

We were told that we could roll our points over from one year to the next. However, when I called to
do this, I was told that the points had to be transferred before the year started, meaning that we
would have to know a year in advance whether we would be able to use our timeshare. We wouldn't
have purchased the timeshare if we had known of this aspect of the rollover program. We were
falsely assured that we would be able to refinance our timeshare loan for a lower interest rate when
we returned home. However, we found that banks will not refinance timeshare loans.

We were never told at the presentation that during certain weeks, our ability to book reservations for
a short period of time would be limited. When attempting to book reservations for a "prime week" I
was told that I would have to book reservations for four-seven days instead of one-two days. Each
time I attempt to book mini-vacations at nearby resorts, I am told that there is no availability. We

wouldn't have purchased the timeshare if we had know~~~~~~~~uld have the effect of limiting our
vacation options instead of expanding them.

*Heidi · Zeulzer*

*Randy Zudgu*

Signature of Affiant

Sworn and subscribed before me this _10th_ day of _Feb._, 2010.

*Lois E Kohleske*

Notary Public   _Lois E Kobleske_

My Commission Expires:

_5/9/2010_

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

December 29, 2009

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that I seek to terminate purchase agreement # 00087-0506813, dated 08-04-2005 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to me by your sales staff AND upon these representations I reasonably and justifiably relied.   Later, to my detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  I am that defrauded party.

Therefore and in light of these circumstances, I demand that you do the following:

- Contact me immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, I will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved I, in addition to the above, will begin my intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. I will also seek a voice in both the Media and on the World Wide Web.  I will not give up and am determined to prevail.

**Govern yourself accordingly.**

/s/Todd Eastin

State of A̶r̶i̶z̶o̶n̶a̶
County of M̶a̶r̶i̶c̶o̶p̶a̶

Before the undersigned, an officer duly commissioned by the laws of Arizona, on this 12ᵗʰ day of
N̶o̶v̶e̶m̶b̶e̶r̶, 2009, personally appeared Todd Eastin, who makes this his/her statement upon oath and
affirmation of belief that the following facts set forth are true and correct to the best of his/her
knowledge:

In August of 2005, my wife and I took a weeklong vacation on the island of Maui in Hawaii. In return
for several "discounted" island activities, such as parasailing, jet-skiing, snorkeling, etc., we agreed to
attend a 90-minute timeshare sales meeting. At the presentation in Lahaina, Fairfield was trying to
sell out the next phase of development at their Kona Hawaiian Resort. We were intentionally misled,
by James Ziskend, to believe they were selling limited timeshare opportunities at this exclusive resort
in Hawaii. If we purchased at this Fairfield property, we would be guaranteed, at the very least, a
week at this resort each year. They intentionally exaggerated the resort's availability and what we
could do with 300,000 points per year. We were told it was enough to go wherever we would like to
at whatever time of the year we wanted. We later found that this claim was false, yet at the time we
relied on it in making the decision to purchase. We were still hesitant to purchase because we did not
fully understand the process of reservations or trading points (which actually meant sometimes paying
a fee to trade or bank) with a larger timeshare organization like RCI. At this point during the end of
the presentation process, four hours later, Mr. Ziskend offered up his business card and personal cell
phone number in order to act as our personal vacation consultant. He stated that he uses his
timeshare points for him and his wife all year long at resorts all over the world and that he would have
no problem helping us organize our vacations. We relied on this promise when making the decision to
purchase the timeshare. We would never have purchased had we not been confident that Mr. Ziskend
would aid us in our use of the timeshare. Yet, when we contacted him a month later, for assistance in
planning a trip to the Kona Hawaiian Resort, Mr. Ziskend did not remember who we were and told us
to call the Fairfield reservations number and give our Member ID number. To expedite the process,
Ellie Lasarevic saw us to finalize the sale. She went over what we were told and falsely promised
everything we were told was true before we signed the paperwork.

My wife and I were skeptical about the process of financing our timeshare contract purchase. Mr.
Ziskend and Ms. Lasarevic assured us that the purchase was the same as a mortgage on a house. I
had questioned the length of the loan, 10 years, as well as the interest rate of 9.99% (which seemed
to be a little high for a "mortgage"). I was intentionally misled that I could easily go to my personal
bank in my hometown and refinance the loan to a lower rate. However, when I contacted Bank of
America, the Loan Consultant said they could not refinance an item that has no real value and they
did not have a product that would allow me to refinance a timeshare. I would never have purchased
the timeshare if I had known I would be stuck with such an exorbitant interest rate. I asked Mr.
Ziskend about all the interest we were going to pay, and was told that we could just write-off all the
interest on our yearly taxes. We were shown many charts and diagrams, displaying the future value of
our timeshare investments and stagnant monthly maintenance fees. Mr. Ziskend falsely promised my
wife and me that our maintenance fees would remain the same throughout the life of our contract, yet
the maintenance fees have gone up and apparently never go away, even for the unlucky individual
that I would burden with my contract after I pass on.

One of the convincing factors in our decision to purchase the timeshare contract was that the
salesman, Mr. Ziskend explained that the timeshare was a piece of real estate, therefore we were told
we could rent or sell the timeshare for profit, if we were not going to use it. Also, like real estate, he
misled us to believe the timeshare would appreciate in value and we could obtain the best possible
deal by purchasing in these early stages of development. Mr. Ziskend had falsely explained that if we

did not want to use the timeshare, that we would not have a problem renting our week or points to cover the cost of ownership. My timeshare has been advertised for sale and rent (with two different organizations) for the past three and a half years, without so much as one inquiry. We have discovered that there is no market for the resale of timeshares. There are many similar timeshares listed for $1.

About seven days after purchasing the timeshare contract, my wife and I called Mr. Ziskend to cancel our purchase of the timeshare, realizing the total and never-ending cost would far surpass our intended vacation spending each year. Mr. Ziskend reinforced the notion that the timeshare is a valuable asset and that we would never again spend on the cost of vacations, falsely misrepresenting that we would be able to use our remaining points each year to purchase airfare and rental cars. We were also told that we could "give" unwanted points to friends and family members at no cost.

I got a divorce from my wife in May of 2006, was designated the timeshare by the courts, and have since been deeded the timeshare contract, solely in my name. In 50 months of ownership, I have not been able to secure a reservation at the Kona Hawaiian Resort, with one exception when I was notified by a Wyndham Representative of a "cancellation" from another owner. However, I was not able to attend the one week in December that was available over a 50 month period! The only way I have been able to use any Fairfield reservation points is through other "less-desirable" destinations or giving away weeks to family members. This was not what was promised when purchasing a timeshare at the Kona Hawaiian Resort.


_____
Signature of Affiant

Sworn and subscribed before me this _12_ day of _Nov_, 2009.

_____
Notary Public

My Commission Expires:

_11Nov11_

EMILY MOCK
NOTARY PUBLIC - ARIZONA
MARICOPA COUNTY
My Commission Expires
November 11, 2011

JAN 1 1 2010

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

December 28, 2009

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

            RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 0028-0712100, dated
04/02/2007 and no longer intend to make further payments on same.    The reasons for this
cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your
sales staff AND upon these representations we reasonably and justifiably relied.   Later, to our
detriment, these very representations were found to be completely untrue. *See attached affidavit in
support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation
which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY
(7th ed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are
that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality
Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to
the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General,
Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek
a voice in both the Media and on the World Wide Web.  We will not give up and are determined to
prevail.

**Govern yourself accordingly.**

/s/Arlynn and Timothy Miller

State of Minnesota
County of Benton

Before the undersigned, an officer duly commissioned by the laws of Minnesota, on this 29th
day of December, 2009, personally appeared Arlynn & Tim Miller, who
makes this his/her statement upon oath and affirmation of belief that the following facts set
forth are true and correct to the best of his/her knowledge:

In March 2001, my husband and I took a vacation to Florida on a promotion with the
understanding that we would have to listen to a 90 minute timeshare presentation. We went
to Fort Lauderdale, Florida. The presentation lasted nearly 5 hours. The sales representative
we spoke to was trying to get us to buy into Palm Aire, which at the time wasn't yet built.
We kept telling the representative that we were not prepared to buy into a timeshare at that
time. The sales representative kept telling us that we needed to act now or we would lose
out on this great opportunity. After several hours of pressuring us, the sales representative
stated that her manager had just found out they were able to make us a deal on Fairfield
(Wyndham) by purchasing a vacation spot for every other year; they just found out they
had some extra points that they could do this with. We bought the every other year package
that was "real estate" with a deed of ownership. We would have an account manager that
would call us at home and walk us through how to use our points to the fullest and even be
able to pay maintenance fees by renting out our timeshare if we wanted to. No such person
ever called.

We took our next vacation in 2002 in Las Vegas. We again went to the "welcome breakfast"
and were told that we should get rid of our Florida property and buy in Vegas. They told us
the Grand Desert was the best place to own because they were constantly having
conferences and businesses would pay top dollar for rooms if we wanted to rent our points.
We were then told they couldn't get rid of the Florida property for us but could give us a
wonderful deal on buying into Grant Desert. We were told we would own property and would
have so much power in booking that we would never be turned away; if we owned property
there we would always be able to get a room. However, we were always told when we called
to book a room that the resort was full. The availability of rooms and our purported trading
power were material misrepresentations made to us at the time of sale, which we heavily
relied on but later to be completely false.

On our next trip to Orlando, Florida, in 2003, we attended another timeshare meeting that
we were promised would not take over 30 minutes. We were promised tickets to a theme
park if we attended. We went to the presentation which lasted several hours. We were told
that we if we upgraded our package we would have more "power" in getting into vacation
spots when we wanted them. We had questions about how to fully utilize our points and
were told again that we would have an account manager contact us. When we told them that
no one ever called us, they told us that they would personally look into it and have someone
call us. We bought enough points to be considered Gold status. Again we were promised
reservations powers, a material misrepresentation made to us that we relied upon in making
our decision to upgrade. This was completely false, as we had no reservations power
whatsoever.

The next vacation we took we went to Branson, MO. We had some questions since no one had contacted us yet on how to fully utilize our points, and so attended the "welcome breakfast." We spoke with a sales representative that told us "I believe that." He said that if we wanted to get the most bang for our buck we should be putting our points at the new Wisconsin resort that was being built. He told us that "water over land" didn't make any difference in timeshare property. He intentionally misled us. He stated that if we wanted to save money on our maintenance fees, we should buy into Wisconsin because it would be closer to where we live and if we wanted to go for a long weekend it would be more convenient. The sales representative then changed our ownership to Wisconsin and we no longer owned in Las Vegas or Fort Lauderdale. We were misled to believe that owning property on the water meant nothing. We were told how we could use our points for car rental or airfare and how it was a wonderful way to be able to utilize points without having to pay for cars or airfare while on vacation. We later found out this to be false.

In 2006 we had a vacation planned to South Padre, Texas, through points we had to roll over to RCI. Due to a hospitalization we were unable to go on vacation so we gave a family member our vacation to use in our place. Not only did we have to pay to get the points out of RCI we were also charged for our family members to use the facilities in our absence. We had been led to believe that family members could use our timeshare without paying extra which is untrue. This was another material misrepresentation made to us when we purchased the timeshare points.

In 2007 we went to Myrtle Beach, South Carolina. While we were there we received several calls about meeting at the "welcome breakfast." My husband and I really didn't want to attend but we did. While we were there we were told that we had been given false information, and that owning at the water was by far the best place to own and the Branson sales representative should have never told us to sell our Florida or Las Vegas property. We were livid. We had asked why no one had called us yet to explain how to use the points to the fullest and why we couldn't get into the hotels we wanted with our Gold Status. We were told that "they oversold the Gold Status" and now having gold status basically put you on the bottom of the totem pole for having the "power" to book rooms when you want them. If you wanted to be able to book when you want then we should get to Platinum Status. We were still being misguided because when I asked about using the points for airfare and cars they told us "oh no that is not a good way to use your points."

We were told that if we hadn't canceled on coming to one of the meetings they held in a different state we could have had that cleared up AND we could have gotten a really great deal on points that would take us to Platinum status. We told them we never declined any meeting and we knew nothing about it. We had not been notified of that by phone or mail. Our sales representative talked to her manager and told us how they felt so bad for the misunderstanding and that if we bought enough points that day to get us to Platinum status, they could sell us those points at the old price rather than the new price which was considerably higher. They stated it would be better for us to get our property back by the water because that is where prime real estate is. We ended up going to Platinum Status to try and straighten out the mess of getting our "deeded land" back on the water where it held higher value and the booking status we were promised when we bought our Gold Status. However, Platinum status still did not grant us the promised booking power. This so-called reservations power was just a material misrepresentation, used consistently to lure us into upgrading our ownership.

We were told we could roll over any unused points at the end of the year. When I called to roll over my points I was told I couldn't do that because I had to call two months prior. I ended up using my points to pay for maintenance fees. We are told conflicting stories each time we talk to a Wyndham representative.

_____

Signature of Affiant

Sworn and subscribed before me this 27th day of December 2009.

_____
Notary Public

My Commission Expires:

1-31-10

BONNIE ZULKOSKY
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

**Shane and Coley Coulon**
**904 Cedar Street**
**Colorado City, TX 79512**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

December 28, 2009

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 001010143485, dated 07-01-2007 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Shane and Coley Coulon

GENERAL AFFIDAVIT

State of ⎯⎯⎯⎯⎯⎯
County of ⎯⎯⎯⎯⎯⎯

Before the undersigned, an officer duly commissioned by the laws of TX, on this _21_ day of
_November_, 2009, personally appeared **Coley Coulon**, who makes this his/her statement upon oath
and affirmation of belief that the following facts set forth are true and correct to the best of his/her
knowledge:

On June 30, 2007 our family decided to take a vacation to San Antonio, TX. While visiting the mall
we were offered tickets to Sea World if we would attend a time share briefing at the Wyndham
Vacation Resort in the area. The briefing was on the 7th of July at 8:00am. We met with Jason Hill
who spoke to us about all of the wonderful benefits of owning this timeshare. Initially we told Mr.
Hill that we did not have great credit and that we probably wouldn't qualify for the loan anyway. He
told us that this was no problem and that buying this timeshare would improve our credit because it
acts the same as a mortgage. He told us that this timeshare is just like buying and owning any
other housing property. If we were not happy with the resort we could sell it as we would sell any
other housing property. We later found that timeshares have no real value on the open market, and
that selling the timeshare would force us to lose any investment we had made. We told him that we
would go ahead and listen to what he had to say.

Mr. Hill told us that Wyndham is the best timeshare property you can buy because you can vacation
at any spot around the world, whenever you desire. He told us that a full VIP timeshare was
154,000 points. While going over the many supposed benefits of a Wyndham vacation ownership,
we were promised that we could book a stay at our "home" hotel at almost any time up to one week
before our desired vacation. Since that time, we have tried to book rooms at our "home" resort only
to be told that there were no rooms for members at the present time—even when I called 2 or 3
months ahead of time—there were, however, rooms available if I wanted to purchase them online
for an additional amount. We would never have purchased this timeshare if we had not relied on
the false claims of the sales representatives during the sales presentation.

Mr. Hill also told us that our hotel was one of the safest places our family could stay because outside
people would not be allowed into our resort—only people who owned a share of the resort were
allowed to stay at the resort—therefore the resort was safer than any other hotel because
"everyday" people were not allowed in. We later found out that the hotel is rented to anyone who
books a room online. This not only belied their claim that the hotel was for resort owners but
prevented us from every being able to book a room.

Mr. Hill also told us that if we failed to use our points they would roll over for our use during the
next year—which my twelve year old son was very excited about because with my husband's
military schedule we don't get to vacation every year. This was very misleading as our points have
never carried over but expire at the end of every year; unfortunately we were lead to believe that
our points expired with our purchase contract date but were moved from July to December 31st. We
were also told by Mr. Hill that if we didn't use our points they would be used to pay for our monthly
maintenance fees or that we could use them to transfer over to a partnership RCI resort or used
toward airline points or cruises. We were able to transfer some of our points over to RCI for a fee
(that we were unaware of until we actually transferred the points) but none of the other options
have been made available to us unless we agreed to attend an extra weekend to show us how to do
this—which we have to pay for. We would never have purchased the timeshare if we had known
that all of these aspects, explained by the sales representatives, were false. We finally left the
resort at about 4:00 that afternoon after approximately 7 hours in the resort.

During our time with Wyndham I had tried to book 2 or 3 vacations at our home resort in San

Antonio, TX. During each phone call to try to book rooms I was told that there were no rooms available and that we would have to call back at a later time land pick different dates. We tried transferring some of the points to the RCI partner resort to book a room at a sister resort. We were told by RCI that they did not book rooms for that resort during the times that we requested. We were unaware that there were times that no rooms could be booked nor was any understandable answer given as to why this was. During the time in which we owned this timeshare and were unable to book rooms I did get several calls from Wyndham offering our family a vacation package ranging from $159 to $399 from the resort. These packages, I was told, would show us how to better use our points and make sure we were taking full advantage of our VIP membership. I was never able to book one of these packages because of my husband's work schedule. Plus we were unaware that there were other ways to use our Wyndham package.

Finally, we were able to book a vacation. We had wanted to take a trip to Las Vegas. We were able to get a room at the Grand Desert resort about 2 months before the trip in October, 2009. We were promised a room with a jet spa tub with our VIP membership. When we got to the hotel, we checked in and were shown to the "booking" area where we were told by Lea, our agent, that it was necessary for us to complete a customer satisfaction survey in order to stay at the resort; in exchange for this we would be offered breakfast. The survey was scheduled for the next morning at 9:00. When we arrived in our unit we had 3 small rooms, a living room with a fridge, a bedroom and a bathroom. None of the amenities, except the washer and dryer and mini dishwasher were in the unit. The room was nothing like the pictures shown of the resort room. We were also promised free wireless internet on the website. When we arrived at the resort we were told that in order to use the internet in our room we would be charged per hour. We were also told that we had not accumulated enough housekeeping credits to have our room cleaned except when we checked out so in order for housekeeping to come to our room it would be an additional fee of $80 per housekeeper visit.

We arrived to the survey on time and were led into another sales briefing. The sales briefing was set up to try to get us to purchase more Wyndham points and to sign up family and friends. During this second briefing we asked first why our room was not like it was listed on the internet. We were told it was because we are not officially VIP members. In order to become a VIP member you must have 300,000 points not the 154,000 points we were previously told. We would never have purchased this timeshare if we thought we wouldn't be VIPs. We were told that we would be, and these representatives claimed that we weren't. The gentleman, whose name I don't remember, who helped us told us that we could buy an additional vacation club package and we would be able to get that VIP status so we could have the rooms better rooms that were available—but if we decided to buy more this time It would not be a deed but rather a vacation club package that we would own for the next 20, 50, or 100 years. We asked why this was because we were previously told that we owned a deed in Wyndham. He stated that this was no longer the case Wyndham felt that it was more beneficial to us to purchase a vacation club package because Wyndham would still be able to own a part of their resort rather than lose all of their properties to investors. We stated to the man that our ownership should include the VIP package and we didn't need the extra club package. He told us that if we were really VIP's our room would be upgraded to the promised size and we would receive all the other benefits.

When we asked what these benefits were we were told that the customer service manager would be happy to explain those benefits to us. She told us that at the current time we only owned half of a Wyndham vacation package. In order to purchase the full vacation package we would need to pay another $20000 for the vacation package plus an additional $58 per month In maintenance fees for as long as we owned the resort package. She then explained that we were no longer eligible to buy a deed in the Wyndham resort because we had supposedly been contacted by phone and did not return their call so we could only purchase the vacation club package. We explained to her that we had never been contacted except to attend vacation membership planning sessions. She said that the paperwork said Wyndham had tried to contact us via telephone so there was nothing she could do about it. We told her that we were not interested in doubling our vacation package at that time because none of our benefits had been given to us as they were promised; she stated that this was

because we only owned half of a membership—If we would go ahead and purchase the rest of the points we would be given more benefits. These benefits included extra vacation points every year (on top of the 300000 we were purchasing), automatic room upgrades and priority booking. When I asked if we could take the paper that she showed us these numbers on she refused saying that it could not leave the building. We told her that we were not at all interested in doubling our membership and she told us that we were paying for something that offered us no benefits until we decided to double our points.

Another of the supposed benefits of our doubling our points would be for us to be able to rent out the points that we purchased. In order to rent these points out however we had to double our points. *If we purchased this and rented out our points this benefit would be able to offset the costs of our maintenance fees and possible even pay toward our vacation package and make us a little money.* The example that was given to us was that during New Years Eve, a one bedroom hotel room on the strip books for $900. We would be able to book that room with our points and then rent it out to someone for $900 through the resort. This is one of the ways that the resort makes extra money. During our initial briefing we were told that only members of the resort could book rooms at this particular hotel making it much safer than every other hotel that allowed anyone with a credit card. This was a misrepresentation of the facts as anyone with a credit card who is willing to sit through the briefing would be allowed to stay at the resort. Unfortunately we learned that in order to do this you have to actually "own" the Las Vegas Grand Desert Resort because you have to book for New Years 13 months in advance in order to actually get the room. If you do not own the Las Vegas resort you cannot book during this early period. We were led to believe we could do this renting if we would just double our original purchase even though we did not own in the Las Vegas resort and therefore would not be able to book the early rooms. We would not have purchased the timeshare *had we known the truth about our ability to make reservations.*

We have had our timeshare for sale since September 11, 2008 after we had tried several times to book a room at our resort in San Antonio. As we had been told from our initial briefing this is a real estate investment and could be sold as a property to other interested buyers, unfortunately this is not a real estate property and there seem to be no other interested buyers. We feel that we were misled by the entire process. We have not been able to sell the property, our maintenance fees continue to increase, and we have managed to book one room in 3 years. This investment has not been what we were led to believe it was in any way, shape or form.


_Celuy Colon_
Signature of Affiant

Sworn and subscribed before me this _21_ day of _November_, 2009.

_(signature)_
Notary Public

My Commission Expires:

_Aug. 30, 2012_

RICKY E. GRISSAM
Notary Public, State of Texas
My Commission Expires
AUGUST 30, 2012



JAN 2 6 2010

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 21, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

      RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 440843407, dated 09-14-2008 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7[th]ed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Brenda Roberts and James Terry

GENERAL AFFIDAVIT

State of Georgia
County of Barrow

Before the undersigned, an officer duly commissioned by the laws of Georgia on this 7th day of January, 2010, personally appeared James & Brenda Roberts, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

In September 2008, we went to the Smoky Mountains Resort for a few days and we were asked to attend a ninety minute update meeting about Wyndham purchasing Fairfield Resorts. Our member representative was Jerry Watchorn. He started his sales pitch to us about purchasing more points. We told him we could not buy any more points as we already had a previously purchased timeshare that we wished to sell. Jerry claimed that he had many interested clients that would gladly purchase our timeshare, but that he couldn't make the resale in that office. We relied on this material misrepresentation when making the decision to purchase the timeshare. Our previously purchased timeshare was never sold, and we were never contacted by Jerry Watchorn. We were told that we could rent our timeshare for a profit and that it could be used by our families and friends in our place, devoid of additional fees.

In May of 2009, we met with Jesse Pierce. Jesse offered to combine our three contracts into one, making us a Platinum member. We asked if the other contracts were any good on their own, and he said that they weren't. We weren't aware that we were purchasing another timeshare, but when we got home, we discovered that the mortgage had doubled in price. We immediately sat down and wrote a cancellation letter, since we were never informed of this action or an additional purchase during the presentation. This letter was sent within the rescission period, and should have constituted our definitive cancellation. However, Jesse Pierce received the letter and called us and stated that when you cancel a new contract, your old contract picks back up and you will have to continue with the monthly mortgage payments. We are still being charged for our ownership, even though we have canceled the contract, in writing, within the rescission period.

James Jerry Roberts

Brenda Sue Roberts
Signature of Affiant

Sworn and subscribed before me this 7th day of January 2010.

Heather A. Camp
Notary Public

My Commission Expires:

10/31/11



JAN 26 2010

Codeed C+D 1/26/10

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 20, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

  RE:  **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00005-07-07900, dated 08-22-2007 and no longer intend to make further payments on same. The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied. Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999). When fraud occurs, a contract is rendered voidable by the defrauded party. We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**



/s/Gregory and Beverly Leonti

State of __Pennsylvania_____
County of __Berks_____

Before the undersigned, an officer duly commissioned by the laws of **Pennsylvania**, on this $14^{T}$ day of January, 2010, personally appeared **Gregory A. Leonti & Beverly M. Leonti**, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

We feel Wyndham Vacation Resorts, as well as its predecessor, Fairfield Resorts, made multiple misrepresentations to us over the years. In addition to the email between us and Daniel Luke, a representative at Wyndham Vacation Resorts, some of the other areas of misrepresentation are included in the following paragraphs.

We were told that purchasing a timeshare was an investment and would appreciate just like real estate. However, we found the opposite to be true. Multiple websites show timeshares available for sale at bargain basement prices. If timeshares are an investment, there should not be a multitude of properties for sale. I even asked at one of the presentations how many properties they had on their resale inventory list. I was told none, yet easily found many properties that people were desperate to get rid of on the open market.

We were told we could rent our timeshare for a profit, getting hundreds of dollars a night for the unit. We could then use that money to pay for our maintenance fees. By checking multiple websites, we found that we couldn't even get $100 a night for the unit, even during special events, let alone hundreds of dollars per night.

We were told we could go to any Wyndham resort without any problems. During our many years of ownership, we have yet to be able to schedule anything in any of the Rhode Island resorts. During a recent "owner review" we were told that we should tell the phone representative to "unlock" the system for us since we were "VIP Gold" so that more availability would be shown. This method was also unsuccessful.

We were told that the offer presented to us was a one day deal and if we did not take advantage of it, we would lose the good pricing. We were told that rates were increasing quarterly, but they were not sure of the next rate increase date. We later discovered that deals similar to ours are offered daily.

We were told we could use our points with their "Plus Partners" for airfare, hotel stays, car rentals, etc. However, there is a fee involved with each of these transactions and with the number of points used for each "partner" there is no true value in using points with the "Plus Partners" because the cost would exceed what it would cost to book with these partners independently.

We were told that we were getting the special price because we did not get the owners invitation for Fairfield's conversion to Wyndham. We were told the reason that we did not get the invitation was that we were on the "do not call list". Yet someone within the company felt free to share our phone number with multiple companies about renting or selling our timeshare. If Wyndham has us on the "do not call list", why don't their marketing partners have us on the "do not call list" also? Each time one of these firms calls I ask where they get my information from, and they tell me from a list they buy. I never authorized my information to be shared.

We were told could refinance our timeshare elsewhere for a lower interest rate. There are no markets available other than through timeshare companies that finance timeshare ownership. We would not have purchased the timeshare if we had known the truth about our financing options. We were told that our maintenance fees were the highest around and that in order to reduce them we have to move

our ownership to a different resort. Of course, the only way to change to a different resort is to purchase more points.

We were told that a timeshare purchase would not appear on our credit report. Upon ordering one of the three major credit reports, it does indeed show on there. This could have hampered our ability to apply for credit elsewhere.

We were told that the PIC program was going to be going away sometime in the near future, yet nobody is able to give us a date when this will happen. Therefore, they keep trying to get us to buy more points to be "permanent" "VIP Gold" since we have only reached this status through the PIC program. In this way, the resort threatens to rescind benefits which we purchased along with the timeshare, benefits which influenced our decision to purchase the timeshare.

We were told that our PIC would allow 154,000 points to be transferred every year, instead of 308,000 points every other year. When we called the Wyndham customer service line, they informed us that we missed the deadline for transferring the points into our account. The 308,000 points every other year was only recently discovered when we reviewed our PIC contract.

Each salesperson had no problems degrading the location we owned at. This was especially true during the Fairfield Resorts ownership. We were told stories of mold at our resort, maintenance fees almost doubling next year, that the newest resort was already sold out and that we should do everything possible to get out of our current location. These claims are completely fabricated.

At our last "owner review" we were told that even if we did purchase we could not move from our current resort. We would have some points at one resort and some points at another resort. This was explained because we had excellent credit and that we were bundled in with a large book of financial contracts that could not be separated. Since we are current on our payments and others that were in this book of business have either cancelled or defaulted, we have been penalized. I asked them to show me where in my contract it stated I could not get out of the current contract, and they circled a code on our owner paperwork, but nothing in the actual contract itself.

Each of these items alone constitutes misrepresentation, but combined signify a serious distortion of facts. We relied on these material misrepresentations when making the decision to purchase the timeshare. We would not have made the purchase if we had been aware of how false these claims were, since many of these mistruths were integral to our decision to purchase.

Signature of Affiant

Signature of Affiant

Sworn and subscribed before me this 14th day of January, 2010.

Notary Public

My Commission Expires PENNSYLVANIA
Notarial Seal
Lori Ann Showalter, Notary Public
City Of Reading, Berks County
My Commission Expires March 24, 2011

Member, Pennsylvania Association of Notaries



JAN 2 6 2010

**Elizabeth Zachariah**
**1791 Ivy Oak Square**
**Reston, VA 20190**

Coded C+D 1/26/10

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 20, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that I seek to terminate purchase agreement # 00032-0717762, dated 06-03-2007 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to me by your sales staff AND upon these representations I reasonably and justifiably relied.    Later, to my detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).    When fraud occurs, a contract is rendered voidable by the defrauded party.  I am that defrauded party.

Therefore and in light of these circumstances, I demand that you do the following:

- Contact me immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, I will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved I, in addition to the above, will begin my intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  I will also seek a voice in both the Media and on the World Wide Web.  I will not give up and am determined to prevail.

**Govern yourself accordingly**.

/s/Elizabeth Zachariah



GENERAL AFFIDAVIT

State of Virginia
County of Fairfax

Before the undersigned, an officer duly commissioned by the laws of **Virginia**, on this __l b__ day of
**January** 2010, personally appeared **Elizabeth Zachariah**, who makes this his/her statement
upon oath and affirmation of belief that the following facts set forth are true and correct to the best of
his/her knowledge:

In June 2007, I was invited to Alexandria VA to receive a free weekend package in exchange for
spending 60-90 minutes presentation with Wyndham Vacation Resorts. The representatives were
offering properties at Bonnet Creek and they claimed that because it was within range of the Disney
theme parks, these properties were going fast and would not remain available if I did not purchase
that day. I relied on this material misrepresentation of the time-sensitivity of my timeshare purchase.
Additionally, they assured me that this timeshare was an investment and that it would appreciate like
real estate. I was told that there were only a limited number of slots; however when I was there this
December I was told they were expanding, and found that they had many available timeshares for
purchase. I was also told that I could use my points to purchase airfare, cruises and many other
amenities and it was very simple to use this system. This was yet another material misrepresentation.

I was intentionally misled to believe that there were limited slots and these representatives
intentionally exaggerated what I could do with 192,000 points at a GOLD VIP level which is what I was
told I would be purchasing that day. After the purchase, I was told that the GOLD VIP status was only
because I added PIC points from an older timeshare, which is not what I was told in 2007. I was told I
could combine the old timeshare for convenience and they intentionally misled me to believe that
consolidating it was a good idea. In Dec 2009 I was told I am not longer a VIP (my old timeshare has
been sold), and that I have been paying maintenance fees through Wyndham for this old timeshare
(Eagle Trace) all this time.

Since I did not have my paperwork with me as I was on vacation I couldn't verify anything they were
telling me. After I returned home I looked at my contract and I saw I was 'purchasing ' GOLD VIP, the
PIC points were there for the old timeshare but they intentionally misled me to believe this was in
addition to the GOLD VIP I was purchasing at 192,000 points. I wouldn't have purchased the
timeshare if I had known the truth about what I was purchasing.

I was told that I could go wherever I would like to, and whatever time of the year I wanted with a
Gold VIP Wyndham ownership. I was told there I could rent the timeshare for a profit when I wasn't
going on vacation and exchange property locations at any time. I was also told that since Bonnet
Creek was such a desirable property, I could sell this timeshare anytime I chose for a profit, and with
ease.

I was told what an investment I would be making to re-sell and profit from the resale of my
timeshare. This was a major reason for my purchase, and it was a false claim. I have tried to sell this
property with two different timeshare resale companies over the past year, spending over $2,000 and
have not been successful in selling this "highly desirable" property. At the presentation, I was told
that it would sell easily, and for a profit. Yet similar timeshares are listed online for $1 or for free,
making the open market for timeshares virtually nonexistent.

In December 2009, I attended a family reunion and spent 3 days at Bonnet Creek as part of the time
in Orlando. I was told I had a welcome gift waiting as first time visitor at Bonnet Creek. I was already
annoyed because I had to make an 'appointment' and they only had a 11:30a.m. opening which
meant that I had to skip my morning engagements, so they said to come around 10:30 a.m. to
receive my gift. I was shocked when the woman who welcomed me begun to present and 'show' me

Case 3:09-cv-00899 Document 116 Filed 03/26/10 Page 29 of 61 PageID #: 800

around the timeshare upgrade units. I made it clear I wasn't interested in purchasing anything and I did not want to spend 45 minutes. They rushed to pull my account up; this is when they said I am no longer a GOLD VIP without the PIC points. I was incredibly surprised and frustrated. They claimed that I shouldn't worry because there were many foreclosed properties available for very cheap rates, and if I purchased it that day I could buy some and bring my position back to VIP GOLD. I would never have purchased enough points to become a GOLD VIP member if I had known that I could lose that status.

During the presentation, they convinced me I could use any Wyndham resort at any time; to date I've never been able to book at places I've wanted to during the time I've wanted to because you have to book years in advance, which is literally the opposite of what they told me during the presentation. I wouldn't have purchased the timeshare without the false assurances of the sales representatives.

Signature of Affiant

Sworn and subscribed before me this ___16___ day of _January_ 2010.

Notary Public

My Commission Expires:

___0 | 6 1 | 2013___


**James Hunt and Mary Antunes**
**1816 Stevens Ave.**
**Evansville, IN  47714**

JAN 2 6 2010

*coded C +D*
*1|26|10*

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 21, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL  32819

     RE:   **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement #00020-0928836, dated 09/29/209 and no longer intend to make further payments on same.  The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7[th]ed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

Govern yourself accordingly.



/s/James Hunt and Mary Antunes

GENERAL AFFIDAVIT

State of _INDIANA_
County of _VANDERBURGH_

Before the undersigned, an officer duly commissioned by the laws of **_IN_ STATE**, on this _30TH_ day of _DECEMBER_, 2009, personally appeared **YOUR NAME HERE**, who _JAMES L. HUNT & MARY ANTUN_ makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

Verbal Promises made by Chad Black, Wyndham sales manager.

September 29, 2009, Jim Hunt and I went to the Wyndham Resort in Branson, MO. We met with sales manager Chad Black. He told us it would be to our advantage to change Jim's "Weeks" into points and combine our accounts since I already had a time share. Nothing, but _nothing_ was ever mentioned about buying more points. The sales talk kept going and we were promised that the cost of doing this would be offset by the points that we had already accumulated. At no time were we told that another week of points had been figured into this cost. We were told over and over and promised that the points would take care of all the cost with the exception of $700.00. We were told also that our points would take care of our maintenance fees for as long as we owned the timeshare. We were led to believe that all costs associated with this transaction would be covered using points we already owned. This was a material misrepresentation made to us that we heavily relied upon, but later found to be completely false.

We asked over and over for assurance that this would be done. Chad promised that it would be simple and that all we had to do is get a rewards card. We acquired the rewards card: it was actually a Wyndham MasterCard credit card. We called Chad Black with the number on our rewards card and told him to transfer those points immediately so we could get everything squared away. A follow up e-mail was sent to him with this same information.

Having heard nothing from Chad Black, I went on-line to check to see if I could find out how to transfer the points to pay this bill off. I accidentally got into the Club Wyndham Plus site and the next thing we knew we were being billed $58.63 every month on my credit card. I called Club Wyndham immediately and told them to cancel this membership. I was told I could not cancel it. To this day, they are still charging my credit card for that amount. I never provided them with this credit card number, nor did I authorize this monthly charge.

Several days went by and we heard nothing. We called everyday to see what the status was – calls were never returned. I contacted their quality assurance chief and told him what was going on and that we couldn't get Chad to return our calls or answer our e-mails. We made calls from each of our cell phones just in case he was trying to avoid my phone. He avoided both of us.

We finally received a return call from Chad, but were not able to accomplish anything in speaking with him. Chad gave us the excuse that he had been out of town. A month had passed by this time. We were getting bills from Bill Me Later for the supposed down payment of $3590.00. In the meantime, we are still trying to get Chad to do what he had promised he would do – transfer our points so the $14,000.00 would be paid. They have been trying to get us to pay interest and finance charges of over 21% monthly and we have refused to do so. The last call I got from them was on 12/15/09 and I told them we had turned this over to a lawyer and they would be hearing from them soon.

Many more calls and e-mails only resulted in stalling tactics. Chad sent us a packet of papers to sign to allow Wyndham to rent our timeshare when we are not using it. He said that would get us more points. We refused to do this. We have had no further contact with Chad since then.

We have just realized that he charged us for an extra week of points. Jim had a biennial unit and wanted it to stay that way, but Chad Black added a week without our knowledge. That is not what we wanted. We wanted to change his weeks to points without adding anything and to combine our timeshares. This did not get done. Chad Black has lied to us about points taking care of these charges which were unauthorized in the first place.

The closing cost and cost of an extra weeks' points would be covered by points that we already had – 238,000. We suggested that he apply as many points as he could to our card so we could pay off (using our points) the amount owed.

Last call from Nov 27th at 10:00 am – I was told that we needed to sign up for extra vacation days by signing for Wyndham to rent our timeshares when we weren't using them. NO MENTION OF how he planned to pay off my credit card. Chad only stated that by getting Extra Holidays, that we could pay Bill Me Later off.

Nov 30 – nothing from Chad Black!!

James L. Hunt and Mary Antunes.

*Mary Ruth Antunes*

Signature of Affiant

Sworn and subscribed before me this __30TH__ day of __December__ 2009.

*Denise Boullie*

Notary Public  DENISE BOULLIE

My Commission Expires:

__3/23/16__



**Jason and Hilda Lopez**
**180 Chambers Street, #7**
**El Cajon, CA 92020**

COPY

JAN 2 6 2010

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 21, 2010

Coded C+D
1/26/10

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00104-0703720, dated 11-26-2007 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.   Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Jason and Hilda Lopez



**GENERAL AFFIDAVIT**

State of _CALIFORNIA_
County of _SAN DIEGO_

Before the undersigned, an officer duly commissioned by the laws of _CALIF_ on this _10th_ day of _DECEMBER_ 2009, personally appeared _JASON & HILDA LOW_ who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her (THEIR) knowledge:

My wife Hilda and I went to a sales presentation on our honeymoon in St. Thomas. The sales staff informed us that our current vacation timeshare plan would only allow us to take a vacation once every other year. They claimed that we could trade up because the San Diego property we owned had equity to be put towards a new purchase. They told us that a Bonnet Creek timeshare would have the lowest maintenance fees and property taxes, making our timeshare ownership more affordable in the long run. The representatives claimed that the proximity of the Bonnet Creek Resort to Disney World would guarantee that I could sell the Bonnet Creek timeshare at any point for a profit. We were also told we could always rent our time for a profit if we could not use it. However, I later discovered that these were material misrepresentations of the profit potential. We found that if we rented our timeshare, we would actually lose money instead of making it because of how little the points were worth on the open market. At the presentation, we were told we could call at any time and find openings at any resort we wished to visit. However, after making the purchase, every resort we called was booked solid. We were told at this point that we needed to make reservations six months in advance to make sure we had reservations. When calling as a non-owner, we found that there actually was availability at these resorts, just none for timeshare owners. We would never have purchased the timeshare if we knew we would be subject to a lack of availability at our desired locations due to our timeshare ownership.

We were also promised at the sales presentation that the maintenance fees on our timeshare would never go up. They went up the next year. We were told we could go anywhere with our points, yet the next year we were told that point values decreased and the same points would buy us less time. One of the major reasons for our purchase was that they continually stressed how the inflation of vacation costs would cause vacations to be harder to afford without timeshare ownership. They told us that purchasing a timeshare would guarantee us locked-in prices on vacations for the duration of our ownership. However, the value of our points decreased the following year! Their claims about this aspect of ownership were material misrepresentations that we relied upon when making the decision to purchase.

_(signature)_   _(signature)_
Signature of Affiants

Sworn and subscribed before me this _10th_ day of _DECEMBER_, 2009.

_(signature)_
Notary Public

My Commission Expires:

_11-29-2013_

L. BODENSTADT
Commission # 1870170
Notary Public - California
San Diego County
My Comm. Expires Nov 29, 2013



COPY

JAN 2 6 2010

*Coded CtD 1/26/10*

**Stanley A. Marczak**
**105 Hanshire Drive**
**Yoder, IN 46798**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 22, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE: **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that I seek to terminate purchase agreement # 1787-53661, dated 04-18-1987 and no longer intend to make further payments on same. The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to me by your sales staff AND upon these representations I reasonably and justifiably relied. Later, to my detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999). When fraud occurs, a contract is rendered voidable by the defrauded party. I am that defrauded party.

Therefore and in light of these circumstances, I demand that you do the following:

- Contact me immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, I will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved I, in addition to the above, will begin my intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. I will also seek a voice in both the Media and on the World Wide Web. I will not give up and am determined to prevail.

**Govern yourself accordingly.**

/s/Stanley A. Marczak



GENERAL AFFIDAVIT

State of Indiana
County of Allen

Before the undersigned, an officer duly commissioned by the laws of Indiana, on this **21st** day of **January**, 2010, personally appeared S. A. Marczak, Jr, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

In 1986 while stationed at Fort Sill, Oklahoma; I received an invitation to participate in a free three-day ski trip to Fairfield Pagosa, a new resort in Pagosa Springs, Co. I discovered that my name had been given to the local sales representatives as part of an ongoing effort to sell Fairfield Pagosa timeshares to the Oklahoma and North Texas market. One of my civilian counterparts had just completed a "three day vacation" at Fairfield and would get future discounts if his recommended names purchased a timeshare. I was offered the same option.

In February 1987, we attended a three day vacation replete with a two hour introduction and a scheduled interview with Ron Stickler, a sales representative, to discuss the advantages of owning a timeshare. The sales representatives made many promises and claims, many of which we later found to be material misrepresentations of the characteristics of our timeshare ownership. We were told that owning a timeshare would allow us to deduct the interest of any loan from our tax return and that we could rent or sell the timeshare at a profit later on. We were also told that we could trade our week for other weeks at other resorts and get equivalent lodging, or that we could surrender the timeshare back to Fairfield. In addition, the representative falsely claimed that the 'Red' weeks (most expensive) placed me higher on the waiting list for inter-resort exchanges. Ron claimed that he would take care of any fees for the 1988. We later discovered that the loan interest could not be deducted from our taxes and that our timeshare would not appreciate in value, making a later profitable resale extremely unlikely. In fact, similar timeshares are available online for next to nothing, a fraction of our purchase price.

I declined Ron's offer due to the price. Within the week, Ron called and offered a 'newly acquired red timeshare week' during high season (the forth of July every third year or so) for only $7000 and I accepted since Ron promised that I could opt out or sell it back to the resort if necessary. Ron agreed to pay for all fees associated with this transaction. The purchase was completed on 11 April 1987 and the first maintenance fee would be due in 1989.

When I showed up for our ski trip (traded weeks) in January 1988 I had to pay the maintenance fee of $225. Ron misled me back in April by claiming that he would pay the fees and then left the company and could not be contacted. I wouldn't have purchased the timeshare if I had known that I would be responsible for the fees, which is why Ron offered to pay them. Eventually, these maintenance fees began to increase annually.

During the "Get Acquainted" parties held at the start of each week in the mid 90's, more and more pressure was exerted to get me to buy into the points system. These meetings were to sell more timeshares. I wasn't interested and offered to sell out but the offer was rebuked and I was told to retain the service of a realtor. This was in contrast to Ron's claims that I could return or sell back the timeshare for any reason, at any time, and for a profit! I offered to trade straight out for equivalent points and was again rebuked. No local realtors were interested in attempting to sell the timeshare for me. The maintenance fee had grown to $376. By 2000 I had stopped using the week and put it in the rental pool to pay for the fees and pocket the remainder, but realized that I had been misled again when the annual maintenance fee bill arrived in December. My timeshare was never successfully rented, debunking Ron's claim that the timeshare would rent easily if I couldn't use it in a given year. I would never have purchased the timeshare without the assurances that there were safeguards

against not using the timeshare, like resale, opt-outs and successful rental pools.

_Signature of Affiant_

Sworn and subscribed before me this 21st day of Jan, 2010.

_Notary Public_

My Commission Expires:
10. 05. 2011

JULIA M. WIARD
NOTARY PUBLIC
STATE OF INDIANA
My Commission Expires Oct. 05, 2011



**William and Joan Yanky**
**3324 Red Tailed Hawk Drive**
**Port St. Lucie, FL 34952**

JAN 2 6 2010

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

*ceded c+p 1/26/10*

January 21, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

     RE:   **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00028-0934472, dated 06-29-2009 and no longer intend to make further payments on same. The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied. Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999). When fraud occurs, a contract is rendered voidable by the defrauded party. We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/William and Joan Yanky



## GENERAL AFFIDAVIT

**STATE OF FLORIDA**

**COUNTY OF PALM BEACH**

Before the undersigned, an officer duly commissioned by the laws of FLORIDA, on this 19 day of January, 2010, personally appeared William S. Yanky, who makes this his statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his knowledge:

In July 2009, we spent one week at the Fairfield Myrtle Beach at Ocean Boulevard resort. Upon our arrival, the resort scheduled for us an owner's update meeting to explain recent benefit charges. We were told that the meeting would only last forty-five minutes, but this was a material misrepresentation, as was the claim that the meeting was regarding benefit changes. The meeting was a lengthy timeshare sales presentation.

We met with Fairfield sales representative Steve Spadaccini, who told us that the timeshare would be an investment which would appreciate in value like a real estate investment. He explained that Myrtle Beach is the most valuable timeshare location, and that it could easily be sold, rented, or exchanged per our desire. He claimed that we would be able to sell the timeshare at a later date for a profit, or rent the timeshare for additional income. We later found these to be material misrepresentations as well, but at the time we relied on his false assurances when making the decision to purchase. In reality, our timeshare is only worth a fraction of the price we paid for it, and renting the timeshare is extremely difficult to do. Renting the timeshare for a source of additional income is impossible. We would never have purchased the timeshare for a if we had known that it was not a real estate investment as promised by our sales representative.

**Signature of Affiant**

Sworn and subscribed before me this 19 day of January, 2010.

**Notary Public**

**My Commission Expires**

TRACEY C. PORRO
MY COMMISSION # DD 711027
EXPIRES: October 26, 2011
Bonded Thru Notary Public Underwriters

RECEIVED

JAN 28 2010



**Ronda McClinton and Jacalyn Prahl**
**E5265 N State Highway 52**
**Wausau, WI 54403**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 25, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00113-0811490, dated 05-19-2008 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.   Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY ($7^{th}$ed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**



/s/Ronda McClinton and Jacalyn Prahl

GENERAL AFFIDAVIT

State of   Wisconsin
County of   Marathon

Before the undersigned, an officer duly commissioned by the laws of Wisconsin, on this 20th day of
November 2009, personally appeared Ronda Mc Clinton and Jacalyn Prahl, who makes this
his/her statement upon oath and affirmation of belief that the following facts set forth are true and
correct to the best of his/her knowledge:

In May 2008, my sister Jaclyn Prahl and I, Ronda McClinton, took a couple of days down to Wisconsin
Dells. The reason was we were to receive an overnight stay in a Hotel at the Dell's if we listened to a
presentation for about an hour and a half on Wyndham Vacation Resort.

Our representative was Bradley S. Lehman at the Inn at Glacier Canyon, located in Wisconsin Dells.
At this time we informed Bradley that we were not going in invest in anything we were only here for
the free stay. As Bradley kept talking we still said no even though it was sounding so great, such
things as we could rent the timeshare to help us pay it off faster and we could make a profit. We
relied on this material misrepresentation, and others, when making the decision to purchase. We
were also told friends and family could use our timeshare anytime in our place.

Bradley then had us watch a movie on all the great places, plus he took us on a tour on the
Wilderness Resort to let us see what was offered on the premises. When we got back he was shaking
our hands and congratulating us, but we still hadn't agreed that we were going to buy it. Before we
could blink he brought another person a lady by us, we don't remember her name. She was
congratulating us, we still said we were not sure, and because we told them we were not sure they
kept pressuring us more with Bonus points and with these we would then become VIP.

We told her and Bradley our biggest concern was that if we invested and if we decided not to keep our
investment, we wanted to be sure that they would SELL it for us. Bradley said, unequivocally, that
they would. Had it not been for this claim, we would not have purchased the timeshare. So after we
signed the papers with the smallest print on them and of course they never expected us to read them
before we signed. They never told us we had so many days or hours to cancel. They knew our main
concern was if we didn't want it, they would sell it for us.

So after a time we called Bradley to see if we could cancel or have them sell it for us. We were told at
this time we only have three to five days to cancel after we signed. Bradley also then revealed that
Wyndham would not, in fact, sell our timeshare for us. He told us that we would have to find a third
party to sell the timeshare for us. This was in stark contrast to his claims at the presentation.

_(signature)_                    _(signature)_
Signature of Affiant

Sworn and subscribed before me this 20th day of November 2009.

_(signature)_
Notary Public

My Commission Expires:
10/13/13



JAN 28 2010

COPY

**George and Judy Ann Davis**
**10724 SW Oriole Circle**
**Beaverton, OR  97007**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 25, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL  32819

RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement #000060531738, dated 10/01/2005 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7[th]ed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/George and Judy Ann Davis



## GENERAL AFFIDAVIT

**State of Oregon**
**County of Washington**

**Before the undersigned, an officer duly commissioned by the laws of Oregon on this 8th day of January, 2010, personally appeared, George M. davis and Judy Ann Davis, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge.**

**Davis WVO**

**The first part of the timeshare presentation was scheduled to last 90 minues, however, it lased over 2 hours. The second part of the presentation (at individual tables) lasted over 3 hours.**

**There were two to to three sales representatives at our table at all time. They would switch to new people during the sales process. They wore us down with the parade of one sales person after another.**

**We asked them if we couldn't use the 'Club' or didn't like it, could we return the membership to Wyndham or sell it. They said we could not return it but we could sell the membership easily and for more than we purchased it for originally. Of course, this was a lie. We found we could not even give the membership away. This was a material misrepresentatiion made to us at the time of sale which we relied on, but found later to be untrue.**

**I would like to address the 'Owner Understanding' checklist they had my wife and I initial. When we went into sign paperwork we were rushed through. The woman held onto the top of each page as we were signing: she did this intentionally to rush us through and not allow us to read the pages we were signing.**

**When we said that we did not understand the 'Owner Understanding' paperwork, we were instructed to sign anyway and simply call their office in 7-10 days to arrange an ownerss meeting for clarification. Of course, we did not realize until later that this would be after our rescission period ended. The contract was not explained fully to us at the time of sale.**

**My wife and I were subjected to very high pressure sales tactics and we felt as if we could not leave without make a purchase.**

**There were times that we inquired about some reservations and the dates/locations we requested were not available. To add insult to injury, we have never used the timeshare points they said would always be available to us as owners. On one**

occasion, we tried to book a Las Vegas, but nothing was available until months after the date we requested. The open availability to owners of reservations was a material misrepresentation made to us at the time of sale. We later found that this was falsity, as we could never find availability of resorts when we requested them.

During this meeting with Wyndham, we were never informed that we would have to pay maintenance fees in perpetuity. Had we known we would have annual maintenance fees for the lifetime of this contract, we never would have made this purchase.

In conclusion, we felt this transaction was deceitful and that we were purposely misled. We want this contract cancelled immediately, and a refund of $ 1051.90 (our down payment), plus the money we have paid on this contract for the past four years.

_____          _____
George M. Davis                                        Judy Ann Davis

Sworn and subscribed before me this ___8___ day of __Jan__ , 2010.

_____
Notary Public

My Commission Expires:
___12 - 18 - 2012___

```
OFFICIAL SEAL
DAVID AARON HERTIG
NOTARY PUBLIC-OREGON
COMMISSION NO. 435178
MY COMMISSION EXPIRES DECEMBER 18, 2012
```



**John and Beth Wennihan**
**17706 State Highway YY**
**Burlington Junction, MO 64428**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 25, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00020-0526523, dated 08-08-2005 and no longer intend to make further payments on same. The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied. Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7[th]ed. 1999). When fraud occurs, a contract is rendered voidable by the defrauded party. We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web. We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/John and Beth Wennihan



GENERAL AFFIDAVIT

State of _Missouri_
County of _Nodaway_

Before the undersigned, an officer duly commissioned by the laws of Missouri, on this _11_ day of _January_, 2010, personally appeared John Wennihan and Beth Wennihan, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

In the spring of 2005, my wife received a phone call from a representative inviting us to a free three-day, two-night stay in Branson, Missouri. One day of our stay in Branson we had to attend a 90 minute sales meeting. During the tour of Branson Meadows we were subjected to high pressure sales and felt that we could not leave the presentation without purchasing a timeshare. We were led to believe by our representative Mr. Matt Primo that we were purchasing real estate; something of value and significance that we could pass on to our children to use as a vacation resource. We were told that we could rent our timeshare out for a profit. We were also told that if we ever wanted to sell it, we could easily do so for a profit. We have been attempting to sell the timeshare for some time now, and have realized that it is worth only a small fraction of the purchase price, and that many similar timeshares are listed on the open market for $1, meaning we will never be able to sell this timeshare for a profit. We relied on the claims of our sales representative when making the decision to purchase the timeshare, and wouldn't have purchased it without his false assurances. We were told by Mr. Matt Primo that the more points you acquire, the better off you are; not realizing the maintenance fees scale with the number of points you own. We were finally pressured into signing a contract just 30 minutes before closing hours on June 4, 2005. Mr. Marc C. Williams handled our acquisition of 189,000 points.

On August 8, 2005, we booked a vacation at Branson Mt. Vista, a Fairfield Resort; we were unable to book at our _home_ resort Branson Meadows. We were visited in our room by Mr. James M. Gosa (Jamie). He welcomed us and asked us to a meeting where we could become more familiar with our recent purchase. During the meeting he pledged to be our account manager-coordinator; providing service and knowledge for bookings and other ownership related questions. After reviewing our status, he recommended we purchase an additional 154,000 points, which would move us up to VIP status. We were also told that with VIP status we would have better reservation power. Unfortunately, this has not been the case. It is still extremely difficult to make reservations at the time and location of our choosing.

Mr. Gosa told us that we could eliminate our maintenance fees with referrals. We were also told that we could use our points to purchase airfare, cruises, car rentals, and other amenities, finding out a year later this wasn't true when we tried to purchase a rental car with points and couldn't. In order for us to buy these extra points, he told us that we would be enrolled in additional programs, in which we later found that we were not enrolled. After being subjected to another high pressure presentation, Mr. Gosa told us that this would be the only chance for us to buy this amount of points for this reasonable amount. We later found out that this was a material misrepresentation, and that similar deals are offered daily.

_Beth Wennihan_
Signature of Affiant

Kathy L. McPherson
Commission #06434766
Notary Public - Notary Seal
State of Missouri, Nodaway County
My Commission Expires May 24, 2010

Sworn and subscribed before me this _11_ day of _Jan_ ., 2010.

_Kathy L. McPherson_
**Notary Public**

My Commission Expires:

_5-24-10_



JAN 2 8 2010

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 25, 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:     **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00064-0915708, dated 04-06-2009 and no longer intend to make further payments on same.     The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.     Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7thed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**



/s/Marvin and Patricia Whitcomb

## GENERAL AFFIDAVIT

State of South Carolina
County of Greenville

Before the undersigned, an officer duly commissioned by the laws of **South Carolina**, on this _23rd_ day of _January_, 2010, personally appeared **Marvin F. Whitcomb and Patricia J. Whitcomb**, who makes this his/her statement upon oath and affirmation of belief that the following facts set forth are true and correct to the best of his/her knowledge:

On April 4, 2009, the sales representatives at Wyndham Bonnet Creek in Florida told us that we needed to meet with a salesperson to update our timeshare information so that we could take advantage of new programs. They said that the meeting would take about an hour, and we would get a discount to a Disney World park. On April 6, 2009, at 8 a.m., we met with Michael Abramowitz at Wyndham Bonnet Creek in Florida. He told us about Club Wyndham Plus and Leisure Plan. He intentionally misled us by failing to mention that it would cost us $138.00 annually and $81.33 monthly for Club Wyndham Plus.

The pressure began to mount, and we wanted to leave the presentation. However, Michael intentionally exaggerated the need for us to purchase 200,000 points (to make our total ownership 500,000 points) in order to book a 4-bedroom presidential suite at Bonnet Creek with a central living area. He took us to one of these suites, and we noticed that almost all of the people that were at timeshare meetings or updates were at these presidential suites. We were extremely impressed with this suite because it was so elegantly furnished; each bedroom had an adjoining bathroom, and there was a nicely furnished deck with a gorgeous view. We stated that we could not afford it. He left and came back with a cheaper program at a different location—Cypress Palms. We told him that we still could not afford it. He left again and came back with a 50% discount at Cypress Palms: $40,000 for only $20,000. He left us again and came back with a promise of 200,000 points extra for this purchase.

We still didn't believe we could afford it, but he intentionally misled us with a solution. He said that we could actually pay all of our bills—grocery, pharmacy, gas, etc., with that card, and we would receive bonus points that you can convert to pay your mortgage and maintenance fees. After reading the fine print of Wyndham Rewards program several weeks later, we discovered that you cannot pay bills with this Wyndham Bank of America card and receive points. We tried to change cards from RCI Master Card to Wyndham Bank of America, but they would not change or give us a new card with Wyndham points. We wouldn't have purchased the timeshare if we had been told the truth about the Wyndham Rewards card.

As further intentional misrepresentation, he mentioned another Wyndham Rewards Program where we could get bonus points for friends or relatives that looked at a unit. Even if they didn't buy, we would get reward points, which would pay off our maintenance fees. Of course, we gave him a list of friends and relatives that they could contact, yet were not awarded any Wyndham Rewards.

Michael intentionally misled us again when he stressed about all the family vacationing together (which we told him we do annually) and enjoying a 4-bedroom presidential suite; he was still enticing us to buy 200,000 points. We were never invited to see Cypress Palms (intentional misrepresentation), where he offered us the 200,000 point contract. That would have stopped us from buying because it didn't fit his description, which was a material misrepresentation of the quality of the timeshare unit. Michael exaggerated the quality of the timeshare unit which we purchased, and we relied on his material misrepresentations. The largest units were only two bedrooms, not four-bedrooms.

He intentionally misled us again by failing to mention to us that we must pay property taxes in Florida

of approximately $175 annually.  We were shocked when we received a property tax bill in September of 2009.  We wouldn't have made the purchase if we had known about this bill.  We were told that we would only be responsible for maintenance fees.

Michael gave us 200,000 bonus points so that we could get a 4-bedroom presidential suite in 2010. Using intentional exaggeration, he made it sound as though it would be no problem to book this type of suite; however, when we booked 10 months in advance for Daytona Beach for April 3-10, 2010, we could only get a 3-bedroom unit.  We were both extremely disappointed about this because we purchased the 200,000 Wyndham timeshare points in order to book a 4-bedroom presidential suite.

Signature of Affiant

Sworn and subscribed before me this 23rd day of January, 2010.

Notary Public

My Commission Expires:

Nov. 14, 2016



Connie and John Cooper
1515 Preston Road
West Memphis, AR   72301

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

January 25, 2010

JAN 2 8 2010

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL  32819

RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00020-0840106, dated 10/08/2008 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;

- Cancel the referenced purchase agreement;

- Issue a refund of all monies paid to date;

- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,

- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency. We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

Govern yourself accordingly.

COPY

/s/Connie and John Cooper

GENERAL AFFIDAVIT

State of _Arkansas_
County of _Crittenden_

Before the undersigned, an officer duly commissioned by the laws of **AR**, on this _14th_ day of
_January_ 2009, personally appeared **John & Connie Cooper**, who
makes this his/her statement upon oath and affirmation of belief that the following facts set forth are
true and correct to the best of his/her knowledge:

In November of 2005, my husband, John, and I visited Branson, Missouri, on a promotion with the
agreement to sit in on a sales meeting. We were given a sales person who promised to be as close
as our phone for any help or direction we may need. We were told this would be a great way to take
free last-minute week-end trips and that we could make last minute reservations and travel to any
location. We always had trouble making reservations several months ahead much less for a weekend
get away. Availability of locations and ease of getting desired reservations were material
misrepresentations made to us at the time of sale. We would not have made this purchase had we
known that we would not be able to make last minute reservations, or get the locations we desired for
our vacations.

In October 2008, we went to Branson and met with the sales people and advised them we had been
told they would rent out our points for us. We were told points could be rented out to cover the cost
of ownership. However, we were never able to accomplish this. The possibility of renting the unit was
a material misrepresentation made to us at the time of sale, which we later found to be untrue.

At this meeting Tyler Mowe assured us that they could rent our points for us and he was just amazed
at how many of our points that we were just losing every year. This is where we were pressured into
purchasing an additional 105,000 points. He advised the only way they could rent out our points was
if we joined the Plus Partners and bought the additional 105,000 points. We could not see buying
more points when we were not able to use the ones we had. We were also under the impression that
we were already eligible to rent out points. There was no logical reason we should have to purchase
more points in order to accomplish this.

He brought over a manager, Mike Pushefski, who just looked at us like we were crazy with his mouth
dropped open, shocked that we were not already renting out our points (which keep in mind could
only be done by purchasing these additional points). Mr. Pushefski assured us that the extra points
would more than pay for themselves through rental. I explained that I work full time and my husband
is disabled and I do not have the time to find people to rent the points. Tyler Mowe assured me that I
would have to do nothing: he would handle all the rentals for us.

This all took place in October 2008 and he did advise it would most likely be December 2008 or
January 2009 before he could actually get the points rented but promised this would take place. He
took my phone and put his phone number in my directory so I could reach him at anytime I needed
him or had questions. He also advised he needed to move our deed so our maintenance fees would
not go up and where the points would be easier to rent, such as in Washington D.C. and several other
places. He advised there were political people that were always looking for nice condos to rent. We
have not one time been contacted by anyone with Wyndham about renting out our points. This was
yet another misrepresentation made to us at the time of sale, one we heavily relied upon but later
found to be completely false. We would not have purchased the extra points had we known we would
never be able to rent them out.

Wyndham has contacted me on a daily basis (3 times a day) since we stopped payments on the last
points purchased, and advised that we do not want to lose the $101,000 in equity that we have built
up. I advised I would be glad to sell back to them and was told quickly that they don't buy back
property.

That's strange to me since the contract states they have first right to purchase the points back should we decide to sell. Wyndham representatives materially misrepresented the fact that we could sell points and led us to believe that they would purchase points back from us. We would not have purchased additional points had we known that none of these things were true.

_Signature of Affiant_

Sworn and subscribed before me this 14th day of January 2009.

_Notary Public_

My Commission Expires:

_7-12-15_

OFFICIAL SEAL
SHIRLEY A. RUDD
NOTARY PUBLIC-ARKANSAS
CRITTENDEN COUNTY
MY COMMISSION EXPIRES: 07-12-15

**Aaron and Glenda Arvin**
**1215 Howard Dickerson Road**
**Pembroke, KY 42266**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

December 29, 2009

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

      RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 000200829786, dated 08-04-2008 and no longer intend to make further payments on same.   The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.  Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999).  When fraud occurs, a contract is rendered voidable by the defrauded party.  We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.  We will also seek a voice in both the Media and on the World Wide Web.  We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Aaron and Glenda Arvin

# GENERAL AFFIDAVIT

State of <u>Kentucky</u>

County of <u>Christian</u>

Before the undersigned, an officer duly commissioned by the laws of <u>Kentucky</u>, on this
19th day of November, 2009, personally appeared <u>Aaron & Glenda
Arvin</u>, who makes this their statement upon oath and affirmation of belief that the
following facts set forth are true and correct to the best of their knowledge:

During the sales presentation, we were the victim of many material misrepresentations on
which we relied, justifiably, when making the decision to purchase. We were told that if
we ever had any points that we wanted to sell that we would just have to call someone at
the Branson resort and that a representative there would sell the points on the behalf of us
and credit that sale to lessen the amount we owed on the loan. However, when we later
called to initiate this process, we were told there was no such program. We were told that
we could book a vacation and then sell that vacation to someone we knew at whatever
price we wanted. This was not what we were promised at the sales presentation, and we
would not have purchased the timeshare if we had known that we would be responsible
for renting our timeshare in order to help pay off the loan.

We were told that we would be able to use larger units because of our large family size
and VIP status. However, when trying to do so over the course of many months, we were
told that these units were booked years in advance and that none were available for us to
use. Again, we wouldn't have purchased the timeshare had we not been confident that
our entire family would be able to attend the vacation.

_signature_

Aaron Arvin

_signature_

Glenda Arvin

Sworn and subscribed before me this    19th day of November, 2009.

_signature_

Notary Public

My Commission Expires:

April 19, 2017

*Already coded*
C +D  11/17/0⁶

**Brian and Cynthia Scott**
**9922 Chatteris Road**
**Evansville, IN 47725**

**SENT VIA CERTIFIED AND US MAIL,**
**RETURN RECEIPT REQUESTED**

December 29, 2009

Wyndham Vacation Resorts
8427 South Park Circle, Suite 500
Orlando, FL 32819

RE:    **Cancellation of Purchase Agreement**

To whom it concerns:

This letter is to notify you that we seek to terminate purchase agreement # 00064-0631339, dated 06-11-2006 and no longer intend to make further payments on same.    The reasons for this cancellation are set forth below.

This agreement to purchase was based entirely on material misrepresentation made to us by your sales staff AND upon these representations we reasonably and justifiably relied.   Later, to our detriment, these very representations were found to be completely untrue. *See attached affidavit in support.*

Fraud is defined as occurring when "one party knowingly makes a material misrepresentation which is reasonably relied upon by another party to their detriment." BLACK'S LAW DICTIONARY (7th ed. 1999).   When fraud occurs, a contract is rendered voidable by the defrauded party.   We are that defrauded party.

Therefore and in light of these circumstances, we demand that you do the following:

- Contact us immediately to acknowledge receipt of this letter;
- Cancel the referenced purchase agreement;
- Issue a refund of all monies paid to date;
- Cease-and-desist any negative reporting to any of the Credit Reporting Agencies (CRA's); and,
- Cease-and-desist any and all attempts to collect any fees or charges associated with this purchase agreement.

In exchange for your cooperation, we will agree to enter into a Mutual Release, Confidentiality Agreement, and not seek a remedy for fraud and misrepresentation through the courts.

If this cannot be achieved we, in addition to the above, will begin our intensive complaint process to the Federal Trade Commission, Real-Estate Commission (if applicable), State Attorney General, Consumer Affairs Division and any other applicable timeshare regulatory agency.   We will also seek a voice in both the Media and on the World Wide Web.   We will not give up and are determined to prevail.

**Govern yourself accordingly.**

/s/Brian and Cynthia Scott

State of __Indiana__
County of _Vanderburgh_

Before the undersigned, an officer duly commissioned by the laws of **Indiana**_____, on
this __3rd__ day of _November_____, 2009, personally appeared **Brian and Cynthia**
**Scott**, who makes this his/her statement upon oath and affirmation of belief that the
following facts set forth are true and correct to the best of his/her knowledge:

In 2004 my family took a long weekend to Gatlinburg, Tennessee as a promotion we
purchased from Fairfield. To attend the promotion we had to agree to attend a sales
meeting. We were told the meeting would be no longer than 90 minutes and we spent the
better part of 2 ½ hours attending the presentation. We declined to purchase due to
affordability and Lynn Janutolo intentionally mislead us into thinking that making a purchase
of 63,000 points would be enough points for our family of 5 to enjoy a full week where ever
we chose. We would never have purchased the timeshare if we didn't think that our entire
family of five could spend an entire week of vacation each year. He also told us we could
use referrals to make our monthly maintenance fees. He provided us his email address
village builds@aol.com, personal phone number of 865.933.7993 and his work 800 phone
number of 800.251.8736 ext 71 and invited us to contact him anytime and he would assist
us with making reservations and teaching us how to work the system. Of course Mr.
Janutolo never responded to our emails, returned our calls or returned any of the messages
we left with his wife at his home phone number.

In 2005 my family returned to Gatlinburg, Tennessee in attempts to speak with Mr. Janutolo
in person and they informed us he no longer was employed at that location. During our very
lengthy meeting (2+ hours) we explained our dilemma, and the sales representative was
more than happy to assist us. We were told the solution was to purchase a 2nd deed in
Gatlinburg. We expressed our concerns regarding the financial aspects and were told that
we could refinance with a local bank when we returned home and we were told we could use
referrals to make our monthly maintenance fees. It was also explained that this approach
would keep our monthly costs down and provide us with the appropriate amount of points
for our family to enjoy quality family time every year. We expressed our concerns with
about needing assistance with managing our points and were promised an account manager
would be assigned to us. We were told that Gatlinburg was the perfect place to become
owners because this was a highly ranked attraction place and there wasn't property left so
there would not be new developments being built. The simple supply demand approach was
taken with us. What we didn't realize was that because we had 2 separate deeds we did not
qualify for priority reservation because the points did not count together and we had 2
maintenance fees to pay in addition to the 2 deed purchases. We never were able to get a
hold of the person we spoke with who said she would be our personal account manager.

In 2006 my family and I vacationed in Florida it was here that we learned we were not
enrolled in the Leisure program as originally promised, missing out on special offers. Here
we were told that having two deeds was not in our best interest and that we should roll our
two deeds into one with them. We were told the area we were purchasing would be in high
demand due to this being the only property located in Disney and all of the property
surrounding our resort is already purchased by Disney. This was enticing because they told
us it would only raise the value of the timeshare. We wouldn't have purchased the
timeshare if we had known that the value of the timeshare was much lower than they

claimed, and that the surrounding area had no effect on the value of the timeshare. Once again we expressed our need to have a account manager and our sales representative offered to assist us. We again had financial concerns and told us we could use referrals to make our monthly maintenance fees and were told to think about annual increases and the benefits that vacationing with our family would provide. It was also suggested we refinance with a local bank when we returned home. Again, we were never able to get a hold of our sales representative who said she would be our personal account manager.

In summary, we vacationed and attended the required high pressured sales meetings and were made to feel that we could not leave without making a purchase or upgrading. These meetings were never kept to the promised 90 minutes, at one point it was pushing 4 hours which took time away from our children and our vacation. We were always told that we declined to attend owners update meetings therefore leaving us unable to take advantage of special offers and then these special offers being made to us but only for that day. When told we could use our points to purchase amenities, we were never told that the value of the points significantly decreased allowing minimal purchases, if any. We were told that the timeshare was an investment and it would appreciate like real estate, allowing us to sell it for a profit and that we could write off the timeshare interest or timeshare itself on our taxes. We relied on these material misrepresentations when purchasing the timeshare, and would not have made the decision to purchase had we known the truth about these characteristics of the timeshare. We were told that if we turned in referrals we would never have to pay a maintenance fee in our life. We explained that Indiana is a no call state and they told us they had ways around that. Of course I checked with friends and family and no one was called, making it impossible to get a referral! The representatives didn't follow up with what they promised, and we were subject to paying our maintenance fees instead of avoiding them through referrals. The suggestion of refinancing with our local bank, they neglected to tell us most banks do not finance "timeshares". VIP was a must to have reservation power; VIP only put us in line closer to the desk during check in. We attempted to cancel our contract multiple times and were told we would have to sell it ourselves. In attempting to do this we were victims of fraud registering with fraudulent companies who offered to sale our timeshare for a fee.


_Signature of Affiant_

Sworn and subscribed before me this _____ day of _Nov_ , 2009.

_Notary Public_

My Commission Expires:

_1 - 21 - 16_

DARLENE G. LONDON
Vanderburgh County
My Commission Expires
January 21, 2016