# The Owners' Advocate
TOA, LLC
3905 State Street
Suite 341
Santa Barbara, CA 93105
**1-866-644-7776**

EXHIBIT E

# Instructional Checklist

Congratulations, once again, for standing up for your rights and saying "NO!" to deceptive trade practices. Your voice, together with hundreds of others, will now be heard loud and clear and collectively contribute to the much needed changes within the timeshare industry.

Let's get started! You are only 7 simple steps away from being finished.

You should have received 2 attachments that are yours to print and keep for your records: One labeled "INVOICE" and one labeled "CONTRACT." The invoice should show the amount you have paid us to date and any outstanding balance. The contract is a complete description of the tasks we are agreeing to perform on your behalf.

Next, open the zip file labeled "Follow These Steps." Steps 1, 5, 6, and 7 should be completed by everyone. Steps 2-4 may or may not apply to your specific case. Please read the steps carefully.

## STEP 1
Open the attachment labeled "Step 1 Dispute Notification." Fill this out in Microsoft Word. Fill in the **bold** capital letters or <u>underlined</u> parts with your own information. You will find the necessary information in your timeshare contract. After you have completed the letter, send it immediately to the timeshare company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received.

*Why do this?* Because in order to protect your credit and your rights under the Fair Credit Billing Act and/or the Fair Credit Reporting Act, while we are preparing your case, the timeshare company must be notified in writing that you are beginning a dispute process.

## STEP 2  If you signed up for Automatic Withdrawal:
Open the attachment labeled "Step 2 Revoke Auto Withdrawal Authorization." Fill this out in Microsoft Word. Fill in the **bold** capital letters or <u>underlined</u> parts with your own information. After you have completed the letter, immediately fax it or send it to the timeshare company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received. The address or entity you must send it to is located on your contract on the same page where you authorized automatic withdrawal (using a voided check or credit card).

*Why do this?* If you are disputing and canceling a purchase it does not make any sense to allow them to continue to take your money. If they are currently withdrawing your money automatically, by law, they must stop after receiving this notice. If they fail to stop, that action may be reported to the police.

## STEP 3  If you want to dispute the credit card charge:
Open the attachment labeled "Step 3 Template for Client Initial Contact CC Company." Fill this out in Microsoft Word. Fill out the **bold** capital letters or <u>underlined</u> parts with your own information. After you have completed the letter, immediately fax it or send it to the Credit Card

Company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received.

*Why do this?* If you made the purchase with a credit card you have the right to report this as a billing error. This letter will start the dispute process. After receiving this notice of dispute from you, the Credit Card Company will request your supporting documentation. **Wait for the documentation that we are preparing to present to the timeshare company. This is the documentation that YOU will present to the Credit Card Company.**

**NOTE: If you are uncomfortable executing any part of this process, The Owners' Advocate (TOA, LLC) does offer this service for an additional $399.00. For this fee, TOA, LLC will complete the credit card dispute process for you. Call our helpline if you would like to sign up for this additional service: 1-866-644-7776.**

**STEP 3a**
Open the attachment labeled "Step 3a Template for TOA, LLC Initial Contact CC Company." Fill this out in Microsoft Word. Fill out the **bold** capital letters or underlined parts with your own information. After you have completed the letter, immediately fax it or send it to the Credit Card Company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received.

*Why do this?* If you made the purchase with a credit card you have the right to report this as a billing error. We have you send this as an extra "heads up" to the Credit Card Company. It lets them know that you are not working alone and appropriate settlement procedures are, in fact, required. We have found them more co-operative when a third party steps in to help consumers exercise their rights. Otherwise, it seems they roll right over you!

**STEP 4 If you have already started a credit card dispute:**
Open the attachment labeled "Step 4 Template for Client Response to Reopen Dispute with CC Company." Fill this out in Microsoft Word. Fill out the **bold** capital letters or underlined parts with your own information. After you have completed the letter, immediately fax it or send it to the Credit Card Company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received.

*Why do this?* If you made the purchase with a credit card and prior to retaining TOA, LLC you attempted to dispute it on your own without success, you have the right to reopen the dispute and involve us in the settlement process. This letter lets the Credit Card Company know that you are reopening the dispute and will be supplying new information to support your case.

**STEP 5**
Open the attachment labeled "Step 5 Cease-Desist Template." Fill this out in Microsoft Word. Fill out the **bold** capital letters or underlined parts with your own information. After you have completed the letter, immediately fax it or send it to the Collections Company CERTIFIED MAIL, RETURN RECEIPT REQUESTED. You must be able to prove that the letter was received.

*Why do this?* If you have stopped making your payments prior to retaining TOA, LLC and are currently in Collections, this notice will stop them from calling or harassing you further.

The next steps all require information we need from you in order to prepare your case. All of the requested documents must be emailed to our Documents Department at documents@toa.me. Please complete steps 6 and 7 as soon as possible. Your testimony is extremely important to the closing of your case.

## STEP 6 Client Questionnaire

Open the attachment labeled "Step 6 Client Questionnaire." Fill out this questionnaire in Microsoft Word. Email it to the Documents Department at documents@toa.me. You may include your testimony in the client questionnaire or you may attach the testimony *in a Microsoft Word document* to the email.

Open the attachment labeled "Sample Testimony." You can use this as an example of a possible testimony. When writing your testimony focus on the misrepresentation that occurred during the most recent sales presentation at which you made a purchase. Details about previous purchases are also important but please focus your narrative on the most recent purchase.

Please include the following information when writing your personal story: when and where you were first solicited; sales representatives' names; where the contract was signed; how long the presentation lasted; any incentives that were offered to purchase; and all instances of misrepresentation (see Possible Misrepresentation list). Use phrases that you believe apply to your situation such as "falsely promised," "intentionally exaggerated," "intentionally misrepresented," and /or "intentionally misled." Also, include correspondence or descriptions of any contact you may have had with resort personnel, or their affiliates, after the time of sale.

Open the attachment labeled "Possible Misrepresentation." This is a list of misrepresentation allegations that we have collected from previous cases. Feel free to utilize this information if it applies to you. Make sure that you elaborate on each point and be explicit about details specific to your experience. Often it is the details that help resolve your case quickly.

When you have completed your questionnaire and testimony, send it to our Documents Department at documents@toa.me. After review, it will be returned to you in the form of a General Affidavit. You will also receive an Authorization Letter at this time. Both of these documents need to be notarized by a licensed notary public. All parties who signed the contract must also sign the Authorization Letter. Once completed, send the notarized Affidavit and Authorization Letter back to the Documents Department and make a copy for your records. We will be working on your case in the meantime.

*Why do this?* Your personal testimony is the key to your release from your contract. The fact that you are willing to put your sworn testimony, corroborated by as many witnesses as possible, in the form of a General Affidavit speaks volumes in terms of providing credibility to your allegations. It also allows our Advocates to build a case utilizing statutes that were allegedly violated during the sales presentation.

Also, because we are not attorneys you need to give us legal authority to act as your agent in pursuing the settlement of your case. The Authorization Letter is a Limited Power of Attorney that grants The Owners' Advocate the right to speak on your behalf.

## STEP 7 Contract

Fax or email us a copy of your entire timeshare sales contract. This includes all the paperwork that you signed at the closing of the sale. Fax it to our Documents Department at 866-998-9796 or email it to documents@toa.me. Don't worry about the size. Information such as bank account numbers, social security numbers, and credit card information should be blacked out for your protection.

**The Owners' Advocate**
TOA, LLC
3905 State Street
Suite 341
Santa Barbara, CA 93105
**1-866-644-7779**

**Date**

**PUT CREDIT CARD COMPANY HERE**

**PUT ADDRESS HERE**

**Account #**_____

To whom it may concern:

We are authorized to notify you that **YOUR NAME** intends to make no further payments to **TIMESHARE COMPANY NAME** as **NAME** alleges the terms of **Contract #** were fraudulently represented.

For the purposes of your investigation, [pursuant to THE FAIR CREDIT BILLING ACT (FCBA)

Public Law 93-495 93rd Congress - H.R. 11221, settlement procedures], this dispute would fall under the 161st Statute "Billing Errors." Specifically, unauthorized charges and/or charges for goods and services unaccepted or undelivered as agreed.

In this case, our clients allege that consumer protection laws and fraudulent acts were committed through deceptive and misleading practices at the time of sale. Our clients reasonably relied on material misrepresentations made by timeshare agents. It is therefore our clients' position that this **contract #**_____ is fraudulent in nature.

Additionally, because of the alleged misrepresentation of **NAME OF THE TIMESHARE SELLER HERE**, our clients allege it would be impossible for **NAME OF THE TIMESHARE SELLER HERE** to execute service or delivery as agreed thus entitling our client to cancel the transaction and expect a full refund.

Our client has been instructed to forward the documents to you once we have prepared them. In the meantime the dispute should remain open and unresolved.

Regards,

The Owners' Advocate

1

YOUR NAME
YOUR ADDRESS
YOUR CITY, STATE, ZIP

DATE

**CREDIT CARD COMPANY**
**C/O Billing Enquiries**
**ADDRESS**
**CITY, STATE, ZIP**

Account #:_____

**Re: Billing Error**

Dear Sir or Madam:

I recently contacted you regarding fraudulent charges made to my account. Despite sending you the requested information to reverse these charges, you stated you were unable to issue a credit based on the fact that there was missing information. Nowhere in your response did you state what was missing in order to issue the credit. Please disclose why you believe the information I sent to you was not sufficient.

I have recently retained the services of The Owners' Advocate, (TOA, LLC), a consumer rights protection group, and they have provided me with documentation that I believe supports my allegations that I was a victim of fraudulent and deceptive trade practices resulting in charges classified as a billing error made by **NAME OF THE TIMESHARE SELLER**. I wish to reopen this dispute, as I am not satisfied with the outcome. I will soon be forwarding the necessary documentation supporting my dispute prepared by TOA, LLC.

I will no longer be making payments towards this bill. I have the right under the FCBA to sue or assert defenses against the credit company instead of the actual merchant in a dispute about the quality of the goods or services received, to the dollar amount of the charges involved if I feel your investigation wasn't thorough or if I believe it was biased.

Thank you in advance for your cooperation.

**YOUR NAME HERE**

**CLIENT NAME
CLIENT ADDRESS
CITY, STATE, ZIP**

**COLLECTION COMPANY NAME HERE
COLLECTOR'S ADDRESS HERE
CITY, STATE, ZIP**

**DATE:**

RE: Account # **WRITE YOUR ACCOUNT NUMBER HERE**

Dear Sir or Madam:

This will serve as your legal notice pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. section 805, to cease and desist all further communication with me in regard to the above referenced debt or debts. You are hereby instructed to cease collection efforts immediately or face legal sanctions under applicable Federal and State law.

If you fail to heed this notice, I will file a formal complaint against you with the Federal Trade Commission who is responsible for the enforcement of the FDCPA and the Attorney General's office.

I have decided that I will not work with your collection agency or any other collection agency under any circumstances. I am disputing this charge with the original creditor. By sending this letter, it is my intention to stop all your calls and collection activity from this day forth.

I also reserve the right to file suit against you for any future violations of this law. I may utilize telephone recording devices to document any telephone conversations that we may have in the future if you fail to comply with this cease and desist letter. You are also notified that should any adverse information be placed against my credit reports as a result of this notice that appropriate actions will be taken. I intend to keep a log of any contacts you make with me after you receive this letter. In addition, you may not contact me at my place of employment as my employer forbids such communication. Please give this very important matter the utmost attention.

Sincerely,

**YOUR NAME HERE**

# CLIENT QUESTIONNAIRE

Please answer the following questions so that we can build the best case possible for you.

Best way for us to contact you:

Phone:
E-mail address:

Date and location of timeshare purchase:

State/Country:
Date:

Names on contract:

Contract #:

Timeshare company you purchased with:

What is your your ultimate resolution or outcome? In other words, how can the Timeshare company best resolve this situation for you? (Example: cancellation of contract; reversal of upgrades; refund of part or all of monies paid, etc.)

Please explain, in your own words, your experience during the timeshare sales presentation. Please be as specific and detailed as possible. Please refer to the 'Sample Testimony' and the 'Possible Misrepresentations' documents for assistance. Be sure to include dates, sales reps names, and any other details you think might be important. When you have finished your testimony, email it to us in the form of a word document, or copy and paste it into the body of an email.

# Possible Misrepresentations

This is a list of possible misrepresentations that could have happened at the time of sale. We have gathered these from previous clients. If any of these apply to you, feel free to use them in your testimony. Please elaborate on each point and provide examples specific to your experience. Possible counts of misrepresentation are as follows:

- You were told the timeshare was an investment and would appreciate like real estate.
- You were told the timeshare was real estate or that you were purchasing something other than a timeshare (like a vacation plan).
- You were told the area in which you were purchasing would soon be a new development property and that by purchasing now you obtain the best deal.
- You were told the meeting would last a specific time (i.e. 90 minutes) but it lasted far longer.
- You were told that new waterpark/themepark/retail development was being built next to your property, which would increase the value of your timeshare exponentially.
- You were told you could rent the timeshare for a profit.
- You were told you could sell the timeshare for a profit.
- You were told that the company would buy back the timeshare if you were not satisfied.
- You were told that friends and family could use your timeshare in your place.
- You were told that you would be able to exchange property locations at any time and go anywhere (with or without fees).
- You were told that the maintenance fee would never increase.
- You were told that the maintenance fee would increase, but only in small increments.
- You were told that you could eliminate maintenance fees with owner referrals.
- You were told to lie about your income on your credit application.
- You were told to lie and say you were a homeowner on your application.
- You were told (or not told) the prices and terms of membership that later turned out to be untrue. (How?)
- You were told that you would be attending an update to discuss questions when it was actually a timeshare sales presentation. (Also called a policy change meeting, owners update meeting, owners dinner, or policy change meeting.)
- You were told that if you did not purchase that day the offer would expire.
- You were shown hand-written charts or diagrams to support false rental increases, low maintenance fees, future value, etc.
- You were told that previous timeshares you owned could be traded in for equity or the resort would sell those timeshare on your behalf. (Please elaborate.)
- You were told that if you were unhappy with the timeshare for any reason you could simply give it back to the resort or stop payments altogether and it would be taken away.
- You were told that you could use your points to purchase airfare, cruises, car rentals, and other amenities.
- You were told you would be assigned a personal account manager-coordinator who turned out to never be available.
- You were told that you had to buy more points because your weeks system (PIC) was converting to points and your weeks would now be useless.
- You were told that you had missed or turned down an invitation to an event or an opportunity to upgrade that had been offered (through mail or phone) to all current owners.
- You were told you could write off the interest on your taxes.
- You were told you could write off the timeshare itself on your taxes.
- You were told you could refinance your timeshare with your personal bank and get a lower interest rate.
- You were told that by using a rental program you would be able to pay for ownership.
- You were told that you could earn a living using a rental program.
- You were told that the maintenance fees at your specific resort would increase and you

needed to purchase elsewhere and upgrade in order to keep a lower maintenance fee.
- You were told that in order to have reservation power you would need to own a certain level of membership (VIP, Platinum, Presidential Reserve).
- You were told that the point amount you purchased would give you more amenities than it actually did. (How did you find this out?)
- Your sales representative offered to pay your fees for you in order to get you to sign the contract.
- You were told that you were not enrolled in programs that you really were in order to make a bigger purchase.
- You were told that you could place your timeshare in a trust.
- You were told that you could not cancel the contract.
- Your contract was not canceled within the legal rescission period even after you turned in the correct cancellation paperwork.
- You were told to wait for a membership package (with identification or membership number) before using your timeshare, thus delaying your possible cancellation.
- You were told that you could purchase land with your points.
- You were told that you were buying a timeshare at a resort that does not exist.
- You were told you were purchasing a timeshare in one location when you were actually purchasing in another location.
- You were told that the resort would accommodate your specific physical needs and they did not.
- You were subjected to high pressure sales or felt that you could not leave the presentation without purchasing the timeshare.
- A line of credit was opened in your name without your knowledge.

**SAMPLE TESTIMONY**

In September 2003, my husband and I took a long weekend to the Smokey Mountains in Tennessee on a promotional we purchased from Fairfield. We attended a sales meeting, which we had agreed to when we purchased the trip. They were not selling Smokey Mountains at that time, which is what we were interested in, but were selling Myrtle Beach. We were intentionally misled to believe they were only selling lots of 105,000 points and there were not that many left. They intentionally exaggerated what we could do with 105,000 points. We were told it was enough to go wherever we would like to at whatever time of the year we wanted. Janice Smith saw us to finalize the sale. She went over what we were told and falsely promised everything we were told was true before we signed the paperwork.

In October 2004, we took a vacation at Fairfield at Smokey Mountains. They had scheduled a meeting for us with a member representative, a Mr. George Jones, to tell us the changes in Fairfield policies. This was our first meeting of this type and soon found it was an intentional misrepresentation. It was a sales meeting. We told him we were not interested in buying somewhere else. We were leaving when we were intentionally misled to believe they had just gotten some Smokey Mountain points from an elderly gentleman who wanted to sell. Since buying the first time we had learned we needed more points to do some of the things we wanted to do. We bought 105,000 points. Amy Wilson finalized the paperwork after falsely promising my husband that everything we had been told was true.

In August 2005, we took a trip to Branson, MO, where another meeting was scheduled for us. We decided to go to it because we had some questions. We had learned that some Fairfield owners had account manager-coordinators to help them better utilize their points. We wanted to know why we did not have one. I was told owners were matched with account manager-coordinators at a meeting held at the Hotel Pere Marquette in Peoria, Illinois. I was told I had declined the invitation. We had never been notified of the meeting by mail or phone. We spoke to a Fairfield representative who told us that they would allow us an account manager-coordinator if we purchased 105,000 points. We were told they were not selling Branson but were selling Destin, Florida. We were falsely told Destin was a better buy than Branson. Mr. Small and his boss intentionally exaggerated the ease of selling Destin if we ever wanted to sell. Mr. Small's boss falsely promised us that if we bought, Mr. Small would be our account manager-coordinator. We purchased another 105,000 points. After arriving back home, we were talking to another owner of Destin and learned we had been misled about several things. This was after asking Mr. Small if maintenance fees were the only thing we would be responsible for. He had falsely promised it was. This owner was trying to sell Destin because she had been sent a bill for a special assessment for hurricane damage. She also said she was billed for property taxes. I tried to call Mr. Small regarding these fees and could never reach him by phone. He never returned my calls.

In April, 2008, we attended another informational meeting in Illinois. They were telling us how our maintenance fees were really going to escalate in the future. They showed how we could offset or pay our maintenance fees. We could take our points and rent them out. Fairfield would rent them for us for 35% of the amount the unit rented for. However, we would have to buy 105,000 points to be able to join Club Wyndham Access. We were intentionally led to believe if we belonged to the club we would be able to rent our points and possibly make enough to cover our maintenance fees and extra to use for other things. The intentionally left out the fact that resorts that make the highest rent or are the easiest to rent are given to the owners of those locations first. The also neglected to tell us that only 5% of each resort is allowed to be rented through Club Wyndham Access. We were again falsely promised that if we purchased the additional 105,000 points, we would be given an account manager-coordinator. This of course never happened.

We have had to deal with losing points because Fairfield changed our use year dates without our knowledge. In 2004 the date change left us with points we didn't have time to use. We banked them with RCI and paid the fees. We had two years to use them. The 2nd year I called RCI to use them and was told that Fairfield had not exchanged them. We lost the points and the money.

**SAMPLE TESTIMONY**

In September 2003, my husband and I took a long weekend to the Smokey Mountains in Tennessee on a promotional we purchased from Fairfield. We attended a sales meeting, which we had agreed to when we purchased the trip. They were not selling Smokey Mountains at that time, which is what we were interested in, but were selling Myrtle Beach. We were intentionally misled to believe they were only selling lots of 105,000 points and there were not that many left. They intentionally exaggerated what we could do with 105,000 points. We were told it was enough to go wherever we would like to at whatever time of the year we wanted. Janice Smith saw us to finalize the sale. She went over what we were told and falsely promised everything we were told was true before we signed the paperwork.

In October 2004, we took a vacation at Fairfield at Smokey Mountains. They had scheduled a meeting for us with a member representative, a Mr. George Jones, to tell us the changes in Fairfield policies. This was our first meeting of this type and soon found it was an intentional misrepresentation. It was a sales meeting. We told him we were not interested in buying somewhere else. We were leaving when we were intentionally misled to believe they had just gotten some Smokey Mountain points from an elderly gentleman who wanted to sell. Since buying the first time we had learned we needed more points to do some of the things we wanted to do. We bought 105,000 points. Amy Wilson finalized the paperwork after falsely promising my husband that everything we had been told was true.

In August 2005, we took a trip to Branson, MO, where another meeting was scheduled for us. We decided to go to it because we had some questions. We had learned that some Fairfield owners had account manager-coordinators to help them better utilize their points. We wanted to know why we did not have one. I was told owners were matched with account manager-coordinators at a meeting held at the Hotel Pere Marquette in Peoria, Illinois. I was told I had declined the invitation. We had never been notified of the meeting by mail or phone. We spoke to a Fairfield representative who told us that they would allow us an account manager-coordinator if we purchased 105,000 points. We were told they were not selling Branson but were selling Destin, Florida. We were falsely told Destin was a better buy than Branson. Mr. Small and his boss intentionally exaggerated the ease of selling Destin if we ever wanted to sell. Mr. Small's boss falsely promised us that if we bought, Mr. Small would be our account manager-coordinator. We purchased another 105,000 points. After arriving back home, we were talking to another owner of Destin and learned we had been misled about several things. This was after asking Mr. Small if maintenance fees were the only thing we would be responsible for. He had falsely promised it was. This owner was trying to sell Destin because she had been sent a bill for a special assessment for hurricane damage. She also said she was billed for property taxes. I tried to call Mr. Small regarding these fees and could never reach him by phone. He never returned my calls.

In April, 2008, we attended another informational meeting in Illinois. They were telling us how our maintenance fees were really going to escalate in the future. They showed how we could offset or pay our maintenance fees. We could take our points and rent them out. Fairfield would rent them for us for 35% of the amount the unit rented for. However, we would have to buy 105,000 points to be able to join Club Wyndham Access. We were intentionally led to believe if we belonged to the club we would be able to rent our points and possibly make enough to cover our maintenance fees and extra to use for other things. The intentionally left out the fact that resorts that make the highest rent or are the easiest to rent are given to the owners of those locations first. The also neglected to tell us that only 5% of each resort is allowed to be rented through Club Wyndham Access. We were again falsely promised that if we purchased the additional 105,000 points, we would be given an account manager-coordinator. This of course never happened.

We have had to deal with losing points because Fairfield changed our use year dates without our knowledge. In 2004 the date change left us with points we didn't have time to use. We banked them with RCI and paid the fees. We had two years to use them. The 2nd year I called RCI to use them and was told that Fairfield had not exchanged them. We lost the points and the money.

YOUR NAME
YOUR ADDRESS
YOUR PHONE NUMBER

DATE:

TIMESHARE SELLER NAME HERE
TIMESHARE SELLER ADDRESS HERE


Member # _____ Contract # _____

To whom it may concern:

This letter is inform you I/We no longer intend to make payments to **TIMESHARE SELLER NAME HERE** due to a Breach of the Implied Covenant of Good Faith and Fair Dealing during the execution of Contract #_____ at the time of sale. It is clear that material facts pertaining to the contract were misrepresented to me/us during the sales presentation.

I/We have contacted The Owners' Advocate, (TOA, LLC), a consumer rights protection group providing assistance and resources to consumers battling fraud and misrepresentation within the timeshare industry, to assist me/us in the resolution of this issue. TOA, LLC monitors, investigates, and exposes timeshare companies that fail to comply with the laws governing the rights of consumers. They do not provide legal advice or represent themselves as legal experts.

I/We am/are also opting to dispute any and all charges made by **TIMESHARE SELLER NAME HERE** [pursuant to the FAIR CREDIT BILLING ACT (FCBA) Public Law 93-495 93rd Congress- H.R. 11221, settlement procedures]. Statute 161 "Billing Errors" of the FCBA allows for dispute of unauthorized charges and/or charges for goods and services unaccepted or undelivered as agreed.

Also, be advised that I/We no longer authorize **TIMESHARE SELLER NAME HERE** to make automatic withdrawals from my/our personal debit/credit card or bank account (if previously authorized to do so), and the cessation of any and all such withdrawals is effective immediately.

In light of the fraudulent acts committed by representatives of **NAME OF RESORT HERE**, I/we are exercising my/our rights under laws, prohibiting unfair and deceptive trade practices in consumer transactions to invalidate this contract.

We will be forwarding the documents to you once we have prepared them. In the meantime my/our dispute should remain open and unresolved and all charges and/or efforts to collect should cease pending a resolution.


Thank you,

**YOUR NAME HERE**

cc: The Owners' Advocate, LLC, 3905 State Street, Suite 341, Santa Barbara, CA 93105, 1- 866-644-7776

To Whom It May Concern:

I/We _____, **Member #** _____

**Contract#** _____ hereby revoke the authorization

previously granting **NAME OF TIMESHARE SELLER HERE** access to our personal

debit or credit card or bank account for automatic withdrawals. Those withdrawals

must terminate effective immediately.

Thank You in Advance,

**YOUR NAME HERE**

**YOUR NAME**
**YOUR ADDRESS**
**YOUR CITY, STATE, ZIP**

**DATE**

**CREDIT CARD COMPANY NAME**
**C/O Billing Enquiries**
**ADDRESS**
**CITY, STATE, ZIP**

**Account #:**_____

**Re: Billing Error**

Dear Sir or Madam:

I am writing to dispute a billing error in the amount of $_____ on my account. The amount is inaccurate because **NAME OF TIMESHARE COMPANY** made unauthorized charges on my credit card for services that were unaccepted because they were not delivered as agreed. I am requesting that the error be corrected, that any finance and other charges related to the disputed amount be credited as well, and that I receive an accurate statement.

We have retained a consumer advocacy group to formulate documentation supporting our position. You will be receiving that documentation shortly.

Please investigate this matter and correct the billing error as soon as possible.

Sincerely,



**YOUR NAME HERE**


Enclosures: (List what you are enclosing.)