IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| WYNDHAM VACATION RESORTS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 09-00899 |
| TOA, LLC d/b/a THE OWNERS' ADVOCATE, DAVID HUMPHREY a/k/a SCOTT DAVIDSON, KURT W. BARTLETT, and KAY METKO, | ) Judge Haynes |
| Defendants. | ) |

### DEFENDANT HUMPHREY'S AMENDED RESPONSE TO PLAINTIFF'S MOTION TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CONTEMPT

Comes now Defendant David S. Humphrey ("Defendant" or "Humphrey") and for his Amended Response to Plaintiff's Motion to Show Cause (Docket Entry No. 114), why Defendants Should Not Be Held in Contempt state as follows:

There is absolutely no merit to Wyndham's claim that this Court should hold Defendant Humphrey in contempt of court for Defendants alleged noncompliance with the temporary restraining order (the "TRO") issued by this Court on September 29, 2009, the preliminary injunction (the "Injunction") issued by this Court on October 13, 2009, and the Order Amending Preliminary Injunction (the "Amended Injunction") entered on November 16, 2009.

Defendant Humphrey respectfully requests the opportunity to present proof and testimony that will show:

1.  Neither David Humphrey nor anyone associated with him has contacted, communicated with, or assisted any Wyndham "Owners" in violation of this Court's orders;

2.  Neither David Humphrey nor anyone associated with him has referred Wyndham "Owners" to other businesses in violation of this Court's orders; and

3.  Neither David Humphrey nor anyone associated with him has continued to reference Wyndham on any website controlled by David Humphrey, or his agents, in violation of this Court's orders.

## ALLEGATIONS OF WYNDHAM VACATION RESORTS, INC.

1.  While it is obvious that Wyndham, through its continued use of a "Show Cause" type Motion and request for Hearing, desires to shift the burden of proof of compliance away from it and onto the Defendants, it has offered absolutely no proof of *any* violation of this Honorable Court's Orders. Instead it continues, as it has from the beginning, to knowingly mislead this Court with "facts" tailored to suit its purposes rather than support the truth.

2.  Wyndham, in its Motion, Memorandum of Law and accompanying Declaration, has alleged the Defendants have "continued to engage in incessant conduct in violation of the TRO, Injunction, and Amended Injunction." Defendant Humphrey will show this court that not only has he respected this Court's Orders but he has done so at his own peril. Defendant Humphrey will show that the creation of the original scenario presented to this Court by Wyndham in order to obtain the TRO, Injunction and Amended Injunction was knowingly fabricated by Wyndham and purposefully misleading.

3. Wyndham, in its Motion, Memorandum of Law and accompanying Declaration, has unnecessarily filed over a hundred pages of "nearly identical" letters and sworn testimonies from angry Wyndham customers in a feeble attempt to create some sort of connection between Defendant Humphrey's (as President of TOA, LLC) past business activity and that of any number of other copycat companies or self help forums currently in existence designed to assist throngs of dissatisfied Wyndham "Owners". (*See* Plaintiff's Memorandum of Law, Docket Entry No. 115, Composite EXHIBIT A and Collective EXHIBIT A.) Clearly, Wyndham thinks that this Court is as easy to mislead as its customers and that by making statements like "the letters are essentially identical" must think that this Court will not look at the exhibits. These documents are obviously, even to a lay person, completely different in font, language and format. Additionally, these letters are clearly individually **written, signed, notarized and sent from Wyndham customers**; any argument to the contrary defies rational thinking. Perhaps Wyndham is going to allege that Defendant Humphrey has "ghostwritten", "ghost-signed", "ghost-notarized" and "ghost-sent" them also. The only similarity in the letters, other than a commonly formatted cover page, downloadable from any number of websites including the Federal Trade Commission, is that they all allege Wyndham's repeated violation of Consumer Protection Laws. Interestingly enough, this material was intended to bolster Wyndham's position as a legitimate business, but to the contrary, evidences the level of dissatisfaction of their customers, or "Owners". As to the similarities between the 55 letters themselves and the notion that it is "inconceivable" that Wyndham would receive 55 similarly styled complaints, not only would Defendant Humphrey argue it is very conceivable but will provide proof that it is probable. *See*

similarly styled sample letters as EXHIBIT A, attached to Joint Response filed 4/08/10, Docket Entry No. 123. Therefore, it is highly speculative that Defendant Humphrey, as alleged by Wyndham, has been "ghostwriting" letters on behalf of defrauded Wyndham "Owners" in violation of this Court's orders; Quite simply, there is no proof of this. In sum, Defendant Humphrey denies having written these letters.

4. Defendant Humphrey will show this Court that there have been dozens of "timeshare relief" companies pop up on the Internet in the past few years as a result of the pervasive fraud that occurs during timeshare sales presentations worldwide. *See* screen grabs of similarly styled websites as EXHIBIT B, attached to Joint Response filed 4/08/10, Docket Entry No. 123. Many of these upstart companies have blatantly taken (from the public domain of the Internet) past media and material created by Defendant Humphrey (as President of TOA, LLC) and used it for their own business purposes. This, as will be shown, could also be the very material in question.

5. It will also be shown that several of these companies have, in the past, gone so far as to copy verbatim the "www.theownersadvocate.com" website and related consumer assistance documentation. As a result, this material has become public domain and Defendant Humphrey has been powerless to stop the intellectual property thefts that have occurred since the inception of this action. *See* file sharing web pages as EXHIBIT C, attached to Joint Response filed 4/08/10, Docket Entry No. 123. Therefore, contrary to Wyndham's argument, it is highly conceivable that many dissatisfied timeshare customers would continue to be drawn to the Internet seeking the assistance of these aforementioned copycat relief companies or "owner"

driven self-help forums, and ultimately would use a similarly formatted letter and affidavit of dissatisfaction. For example, a simple *Google* search for "Wyndham Complaints" resulted in 1, 520,000 postings. A search of "Fairfield Complaints" resulted in 620,000 postings.[1] *See Google* search results as EXHIBIT D, attached to Joint Response filed 4/08/10, Docket Entry No. 123. One of those postings is entitled "How to write a Complaint Letter that Gets the Results You Want".

      6.     Regarding Defendant Humphrey's Internet postings, it will be shown that all of TOA's clients, at the time of their contracting with The Owners' Advocate, and as relating to those clients defrauded by Plaintiff Wyndham prior to issuance of the Temporary Restraining Order, were provided with documentation and a checklist to further their case absent any additional assistance from TOA. *See* welcome packet of the former The Owners' Advocate as EXHIBIT E, attached to Joint Response filed 4/08/10, Docket Entry No. 123. Defendant Humphrey began blogging on www.timesharetrap.com/forums in response to some negative postings from anonymous bloggers regarding the services provided by The Owners' Advocate. Defendant Humphrey stated that The Owners' Advocate was continuing to assist all of the clients it was able to assist, even through bankruptcy proceedings, despite postings to the contrary. This is the entire meaning of Defendant Humphrey's Internet blog posting (attached to Plaintiff's Memorandum of Law, Docket Entry No. 115, as EXHIBIT B) and, absent proof to the contrary, constitutes the "HANDLED" part of that remark. (*See* Plaintiff's Memorandum of Law, Docket Entry No. 115, paragraph 9.) It should be noted that Plaintiff has attached as an exhibit only portions of the blog that support its claims when taken out of context

---

[1] Fairfield is the former name of Wyndham Vacation Resorts, Inc.

and Defendant Humphrey often refers to this Court's Orders when explaining why he is enjoined from further assisting WVO clients. (*See* page 24, of page 3 of 9, of EXHIBIT F, attached to Joint Response filed 4/08/10, Docket Entry No. 123.) The entire blog has been attached to the Joint Response filed 4/08/10, Docket Entry No. 123, as EXHIBIT F. Accordingly, it is pure speculation on the part of Wyndham to forward any other theory regarding this issue and given the paucity of its proof, it is clear that it has failed to support its claims.

7. Relating to Wyndham's argument that "TOA and Humphrey are also referring Wyndham Owners to other businesses – specifically an entity called Timeshare Sales Today/IA Vacations", Defendant Humphrey will show that he has never referred a single Wyndham Owner to the entity known as Timeshare Sales Today/IA Vacations, and more importantly, immediately ended his relationship with the entity known as Timeshare Sales Today/IA Vacations on November 16, 2009 when this Court amended the Preliminary Injunction to specifically preclude Defendants Humphrey and TOA from:

    a.    any contact or communications with any customers of Wyndham or parties to contracts with Wyndham. If a customer of Wyndham or party to a contract with Wyndham contacts Defendants, Defendants are required to inform the customer that they are prohibited from speaking with the customer pursuant to a court order and that the customer should contact Wyndham directly.

    b.    Defendants were required to remove any references to Wyndham from any website owned, controlled, or affiliated with any Defendant.

    c.    Defendants were enjoined from entering into or continuing any relationships with any customers of Wyndham or parties to contracts with Wyndham.

d.  Defendants were enjoined from communicating with Wyndham directly or indirectly and/or assisting any customers of Wyndham or parties to contracts with Wyndham in preparing correspondence or communications to Wyndham.

e.  Defendants are enjoined from referring any customers of Wyndham or parties to contracts with Wyndham to any other business, whether or not such businesses are owned or associated with Defendants.

f.  Finally, Defendants are enjoined from engaging in the unauthorized practice of law.

Additionally, Plaintiff alleges that Wayne and Leah Wagner paid money to TOA and that representatives of TOA contacted them directly. To support this assertion, Plaintiff has attached to their Motion as EXHIBIT C, a contract for services between the Wagners and Timeshare Sales Today/IA Vacations. The Plaintiff goes on to say the Wagners have been contacted by "an entity they have never heard of" known as Timeshare Sales Today/IA Vacations, yet produced a contract signed by both of them.[2]

8.  Based upon the documents provided by the Plaintiff, the Wagners were contacted by and entered into a contract with Timeshare Sales Today/IA Vacations on or about September 29, 2009. (*See* Plaintiff's Memorandum of Law, Docket Entry No. 115, EXHIBIT C.) Accordingly, it will be shown that on October 1, 2009 that Timeshare Sales Today/IA Vacations sent the case over to TOA for handling. *See* client information forms as EXHIBIT G, attached to Joint Response filed 4/08/10, Docket Entry No. 123.

9.  And finally, as it relates to Plaintiff's argument that the "www.theownersadvocate.com" website contains references to Wyndham as one of

---

[2] It is of note that the date of the contract, offered as evidence of this relationship in "Plaintiff's EXHIBIT C", is September 29, 2009, the very date this Honorable Court issued the Ex-Parte Injunction against the Defendants. (See Plaintiff's Memorandum of Law, Docket Entry No. 115, EXHIBIT C.)

7

Case 3:09-cv-00899  Document 125  Filed 04/26/10  Page 7 of 9 PageID #: 1312

their "Dirty Dozen", it will clearly be shown that this website is neither controlled nor operated by Defendant Humphrey and has not been for quite some time. Perhaps it is inconceivable to the Plaintiff that someone might develop and control a website of similar design and purpose as that of the former TOA, LLC. *See* screen grabs of similarly styled websites as EXHIBIT B, attached to Joint Response filed 4/08/10, Docket Entry No. 123. In fact, there have been instances where other websites have completely copied verbatim both in style and format the former TOA, LLC website. This, however, will be made very clear when this Honorable Court gets the opportunity to hear these matters first hand.

In Sum, there is simply no proof that Defendant Humphrey has violated this Court's Orders. Accordingly, this Court should deny Wyndham's Motion and admonish them for wasting the Court's valuable time and resources.

**Respectfully Submitted,**

_____
DAVID S. HUMPHREY
5318 Tidwell Hollow Road
Nashville, Tennessee 37218

*Pro Se*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26 day of April, 2010, a true and exact copy of the foregoing Response has been forwarded by regular US Mail, postage prepaid, to the persons listed below:

Courtney H. Gilmer, Esq.
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Baker Donelson Center
211 Commerce Street
Suite 1000
Nashville, Tennessee 37201

Kurt W. Bartlett
127 Rural Avenue
Nashville, Tennessee 37209

Kay Metko
879 Dortch Lane
Nolensville, Tennessee 37135

_____
DAVID S. HUMPHREY