IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WYNDHAM VACATION RESORTS, )
INC., )
 )
    Plaintiff, ) NO. 3:09-00899
v. ) JUDGE HAYNES
 )
TOA, LLC d/b/a THE OWNERS' )
ADVOCATE, DAVID HUMPHREY )
a/k/a SCOTT DAVIDSON, )
KURT W. BARTLETT and KAY METKO, )
 )
    Defendants. )

# MEMORANDUM

    Plaintiff, Wyndham Vacation Resorts, Inc., filed this action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants: TOA, LLC[1] doing business as The Owners' Advocate, David Humphrey also known as Scott Davidson, Kurt W. Bartlett, and Kay Metko. With the filing of its complaint, Plaintiff also filed an emergency application for a temporary restraining order based upon Defendants' theft of Plaintiff's trade secrets, including its customer lists, as well as Defendants continuing contacts with Plaintiff's customers advocating breaches of their contracts with Plaintiff. On September 29, 2009, the Court granted Plaintiff's application, enjoining the Defendants from utilizing Plaintiff's confidential information to defame Plaintiff and from contacting and interfering with Plaintiff's customers, as well as barring destruction of any evidence of Defendants' unlawful conduct. (Docket Entry No. 6).

    On October 9, 2009, the Court held a hearing on Plaintiff's motion for a preliminary injunction at which Defendants were represented by counsel. After that hearing, the Court found

---

[1] TOA filed for bankruptcy, but the Bankruptcy Court granted Plaintiff's motion for relief from the statutory stay. (Docket Entry No. 114-1).

1

the need for further injunctive relief necessary and enjoined the Defendants from: (1) continuing any misappropriation of trade secrets and confidential information in violation of Tennessee's Trade Secrets Act and Defendants' contracts with Wyndham; (2) using or disclosing any trade secrets, confidential information, or proprietary information of Wyndham; (3) continuing to publish false and defamatory statements about Wyndham and its business practices through the Defendants' internet site www.theownersadvocate.com or any other internet site utilized by Defendants; and (4) attempting to delete, modify, alter, or otherwise destroy, intentionally, inadvertently or automatically, any potentially relevant information located on any business operated servers, laptops or other computers, cellular phones, handheld devices (i.e., Blackberry or similar), personal computers, or any other devices capable of storing electronic information belonging to any and all of the identified likely custodians or any other person not specifically identified by Wyndham.

On October 28, 2009, Plaintiff filed a motion to show cause for the Defendants' violations of the TRO and Preliminary Injunction Order, citing correspondence from TOA to Plaintiff's continuing customers that TOA had been retained by five individuals with whom Plaintiff has a contractual relationship to assist those individuals with the termination of their contracts with Plaintiff.

After a hearing on October 28th motion to show cause and based upon Plaintiff's proof of Defendants' continuing violations of its Orders, the Court amended its Injunction Order so that if a customer of the Plaintiff or a party to a contract with Plaintiff contacted Defendants, Defendants were ordered to inform the customer that the Court prohibited the Defendants from speaking with the customer and to direct the customer to contact Plaintiff directly. The Amended Injunction Order also required Defendants to remove any references to Plaintiff from

any website owned, controlled, or affiliated with any Defendant, and prohibited Defendants from into or continuing any relationships with any customers of Plaintiff or parties who had contracts with Plaintiff. The Court barred Defendants from assisting any customers of Plaintiff or parties to contracts with Plaintiff or preparing correspondence or communications to Plaintiff's customers. The Defendants were ordered not to refer any customers of Plaintiff or parties to contracts with Plaintiff to any other business, regardless of whether the business was owned or associated with Defendants. Finally, the Court enjoined the Defendants' from engaging in the unauthorized practice of law. If Defendants continued to violate the original and amended injunctions, for each such violation, the Defendants would be liable to Plaintiff for liquidated damages in the amount of $5,000, plus attorneys' fees. (Docket Entry No. 63).

Plaintiff then filed its second motion to show cause and the Court set another show cause hearing based on Plaintiff's proof that Defendants TOA and Humphrey continued to engage in conduct in violation of the TRO, Injunction Order and the Amended Injunction by continuing to contact, communicate with, and assist Plaintiff's customers; (2) by referring Plaintiff's customers to other businesses; and (3) continuing to refer to Plaintiff on TOA's website. Set forth below are the Court's findings after the second show cause hearing.

### 1. Findings of Fact

After the injunctions were entered in this action and during October 2009, TOA and Humphrey continued to contact and assist Plaintiff's customers encouraging them to terminate their contracts with Plaintiff. Defendants TOA's and Humphrey's correspondence after the issuance of the injunctions reflect that TOA and Humphrey assisted Plaintiff's customers in an attempt to terminate their contracts with Plaintiff. (Docket Entry No. 115-1). In some correspondence, TOA's name removed from the heading of the first page of the letters, but the

3

letters are otherwise identical to TOA's earlier correspondence in its language citations to Black's Law Dictionary and format. (Docket Entry No. 115-1 and 115-2). These striking similarities in font, language and format with TOA's and Humphrey's prior correspondence lead the Court to find that these more recent letters are from TOA and Humphrey.

In addition, Humphrey posted on the website *www.timesharetrap.com/forums* the status of TOA's assistance to its clients. (Docket Entry No. 115-2). In a March 3, 2010 correspondence, Humphrey wrote that "all the client cases that had contracted with TOA prior to March 1, 2010 ARE STILL BEING HANDLED!" and "Every client who paid is still being assisted…" (Docket Entry No. 115-2 at 10) (emphasis in original). In addition, the TOA website (www.theownersadvocate.com) continues to contain references to Plaintiff, as reflected in a March 3, 2010 printout from that website listing Plaintiff as one of "TOA's Dirty Dozen" with other references to Plaintiff on the website. Humphrey's postings on the Internet evidence about his and TOA's active assistance to Plaintiff's customers are in direct violation of the original TRO, Injunction Order and Amended Injunction Order.

Plaintiff's proof included its customers, Wayne and Leah Wagner, who provided Plaintiff with a copy of their contract with TOA and Timeshare Sales Today/IA Vacations, under which the Wagners paid TOA $3,500 after TOA representatives promised that TOA would contact Plaintiff to get the Wagners released from their timeshare contract with Plaintiff. (Docket Entry No. 115-3). The Wagners were since contacted by Timeshare Sales Today/IA Vacations, for a transfer of the Wagners to Timeshare Sales Today/IA Vacations.

After the April 8th hearing, Plaintiff issued subpoenas to two entities providing website domain hosting services: (1) eNom, Inc. and (2) Whois Privacy Protection Services (the "Website Subpoenas"). (Docket Entry Nos. 126 and 127). The subpoenas were to ascertain the

4

ownership and control of the website. (Docket Entry No. 129). This website is identical to the previous website operated by Defendants Humphrey and TOA, ww.theownersadvocate.com, including solicitation of customers seeking to breach their timeshare contracts and multiple disparaging references about Plaintiff. Documentation from eNom, Inc. reflects that the domain name www.takingontimeshare.com is registered to and owned by an entity called "Data Networking Solutions" and Humphrey is the president of that entity. (Docket Entry No. 129-2). These exhibits shows that the bills for the domain name, including the April 15, 2010 bill, are sent to David Humphrey at the same address used on Defendant Humphrey's own filings with this Court – 5318 Tidwell Hollow Road, Nashville, Tennessee 37218. Id. The website www.takingontimeshare.com continues to solicit Plaintiff's customers for the same services that TOA provided. The Court finds that Humphrey continues his efforts under a different name to obscure his conduct and violate the Court's Orders.

In his pleading filed in this Court, Humphrey stated unequivocally that, "[N]either David Humphrey nor anyone associated with him has continued to reference Wyndham on any website controlled by David Humphrey, or his agents, in violation of this Court's orders." (Docket Entry No. 125 at 2). Based upon the responses to Plaintiff's subpoenas, the Court finds that Humphrey's statement is false and Humphrey continues to mislead the Court about his conduct and compliance with this Court's Orders.

### B. Conclusions of Law

In Roslies-Perez v. Superior Forestry Service, Inc., 2009 WL 2254961 (M.D. Tenn. July 28, 2009), this Court cited the standards for civil contempt:

> "The inherent powers of federal courts are those which 'are necessary to the exercise of all others.' The most prominent of these is the contempt sanction, 'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the

court...." Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (internal citations omitted); Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). "While the contempt power should not be used lightly, it is 'a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed.'" Southern Elec. Health Fund v. Bedrock Serv., No. 3:02-0309, 2005 U.S. Dist. LEXIS 43999, at *21, 2005 WL 3108461 (M.D. Tenn. Nov. 18, 2005) (quoting Gomvers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911)).

"[A]ll orders and judgments of courts must be complied with promptly," Maness v. Meyers, 419 U.S. 449, 458 (1975), and failure to comply can result in contempt findings. Southern Elec., 2005 U.S. Dist. LEXIS 43999, at *21, 2005 WL 3108461 ("Contempt proceedings are used 'to enforce the message that court orders and judgments are to be complied with in a prompt manner.'") (quoting Gomvers, 221 U.S. at 450)).

"In a civil contempt proceeding, the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." Glover v. Johnson, 934 F.2d 703, 704-707 (6th Cir. 1991) (citing NLRB v. Cincinnati Bronze, Inc., 829 F.2d 585, 590 (6th Cir.1987)). See also Electrical Workers Pension Trust Fund of Local Union # 58, IBEW v. Gary's Electric Sew. Co., 340 F.3d 373, 379 (6th Cir. 2003) ("IBEW"). Any ambiguities in the order must be resolved in favor of the alleged contemnor. Grace v. Center for Auto Safety, 72 F.3d 1236, 1241 (6th Cir.1996). The order must be "read in light of the issues and the purpose for which the suit was brought," Cohn v. Kramer, 136 F.2d 293, 295-96 (6th Cir.1943) (quoting Terminal R.R. Ass'n v. United States, 266 U.S. 17, 29, 45 S.Ct. 5, 69 L.Ed. 150 (1924)), and evidence of noncompliance "must constitute a plain violation of the decree so read." Id.

Good faith is not a defense to civil contempt. Peppers v. Barry, 873 F.2d 967, 969 (6th Cir. 1989). Upon proof of a violation, the respondent may defend with a showing of impossibility. IBEW, 340 F.3d at 379; Glover, 93 4 F.2d at 708 n. 2. The test is whether "'the [respondents] took all reasonable steps within their power to comply with the court's order." Id. at 708 (quoting Peppers, 873 F.2d at 969). "Substantial compliance" is not a defense to a contempt motion. Maness, 419 U.S. at 458. Under Peppers, "the defendants [must take] all reasonable steps within their power to comply with the court's order," 873 F.2d at 969.

Id. at *7-*8.

Given the clear and convincing evidence of TOA's and Humphrey's continuing violations of the TRO, the original Injunction Order and Amended Injunction Order, the Court

first directs that the Defendant Humphrey cannot associate in any manner with the website www.takingontimeshare.com, solicit Plaintiff's customers or disparage Plaintiff. The Court concludes that TOA and Humphrey continued to engage in the conduct that this Court ordered them to cease in the TRO, the Injunction Order and the Amended Injunction Order. Humphrey has misrepresented the true facts of his conduct in his filings with this Court. By filing TOA's response, (Docket Entry No. 123), Humphrey is engaging in the unlawful practice of law that the Court enjoined.

Based upon violations of this Court's Amended Injunction Order, the Court awards Plaintiff $5,000 for each of the 55 letters to Plaintiff's customers for which Defendants TOA and Humphreys were the ghostwriters, for a total of $275,000. In addition, Plaintiff is awarded $5,000 for the letter referring the Wagners to another business, $5,000 for Defendants' continuing references to Plaintiff on the TOA website, and $5,000 for registering other websites that either contain disparaging statements about Plaintiff or solicit Plaintiff's customers as clients. Pursuant to the Amended Injunction Order, Plaintiff is entitled to its attorneys' fees of $3,500 incurred for this second motion.

For the above reasons the Court awards total liquidated damages of two hundred ninety thousand dollars ($290,000) against the Defendants TOA and Humphrey for which these Defendants shall be severally and jointly liable. Additionally, Defendant Humphrey shall be enjoined from any further representation of TOA, LLC in this action. To effect this award, execution may issue.

An appropriate Order is filed herewith.

ENTERED this the 12th day of October, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge

7